Micheline N. Fairbank, Bar No. 226038
**FENNEMORE CRAIG P.C.**
7800 Rancharrah Parkway
Reno, NV 89704
Tel: (775) 788-2200
Email: mfairbank@fennemorelaw.com

Daniel Rapaport, Bar No. 67217
Mark Bostick, Bar No. 111241
Kurt Franklin, Bar No. 172715
Thiele R. Dunaway, Bar No. 130953
**FENNEMORE WENDEL**
1111 Broadway, 24th Floor
Oakland, CA 94607
Tel: (510) 834-6600 / Fax: (510) 834-1928
Email: drapaport@fennemorelaw.com
        mostick@fennemorelaw.com
        kfranklin@fennemorelaw.com
        rdunaway@fennemorelaw.com

James Hill, Bar No. 90478
Chris V. Hawkins, Bar No. 222961
**FENNEMORE LLP**
600 B. Street, 17th Floor
San Diego, CA 92101
Tel: (619) 233-4100 / Fax: (619) 231-4372
Email: jhill@fennemorelaw.com
        chawkins@fennemorelaw.com

Attorneys for KENNETH W. MATTSON

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – SANTA ROSA DIVISION

| | |
|---|---|
| In Re:<br><br>KENNETH W. MATTSON<br><br>Respondent Debtor. | Case No. 24-10714<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONDENT DEBTOR KENNETH W. MATTSON'S MOTION TO DISMISS INVOLUNTARY PETITION**<br><br>Date: February 5, 2025<br>Time: 11:00 a.m.<br>1300 Clay Street, Courtroom 215<br>Oakland, CA 94612<br>In Person or Telephone/Video Conference<br>Judge: The Honorable Charles Novack |

# Table of Contents

INTRODUCTION ........................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 2

    I.    Legal standard applicable to this motion. ............................................................. 8

    II.    Judicial notice of the exhibits to the motion to dismiss is proper. ....................... 9

    III.    Petitioner's claim is subject to bona fide disputes. ................................................ 9

        A.    There are bona fide disputes as to liability as evidenced by ongoing litigation. ............................................................................................................. 9

            i.    The terms of the Indemnity Agreement confirm it is unconscionable. ............................................................................... 9

            ii.    Other objective facts support Mr. Mattson's challenge to the agreement. ..................................................................................... 11

        B.    There are bona fide disputes as to the amount of Petitioner's claim. ....... 11

            i.    LeFever Mattson's indemnity demand is broader than the agreement. ..................................................................................... 11

            ii.    There is a dispute about the reasonableness of the fees incurred. ....................................................................................... 12

    IV.    Mr. Mattson will request an award of fees, costs and damages under § 303(i)(1). ............................................................................................................ 13

CONCLUSION ............................................................................................................................ 14

## Table of Authorities

**Cases**

*Brown v. Grimes*,
 120 Cal. Rptr. 3d 893 (Cal. App. 2011) ............................................................................... 11

*Daniel v. M-I, LLC*,
 2015 WL 5834276 (E.D. Cal. Oct. 1, 2015) ........................................................................... 9

*Dept. of Rev. v. Blixseth*,
 942 F.3d 1179 (9th Cir. 2019) ................................................................................................ 8

*Downey Venture v. LMI Ins. Co.*,
 78 Cal. Rptr. 2d 142 (Cal. App. 1998) .................................................................................. 10

*Grafton Partners v. Superior Court*,
 116 P.3d 479 (Cal. 2005) ...................................................................................................... 10

*Higgins v. Vortex Fishing Sys., Inc.*,
 379 F.3d 701 (9th Cir. 2004) ................................................................................................ 13

*In re Busick*,
 831 F.2d 745 (7th Cir. 1987) .................................................................................................. 8

*In re Rubin*,
 769 F.2d 611 (9th Cir. 1985) .................................................................................................. 9

*In re Vortex Fishing Sys., Inc.*,
 277 F.3d 1057 (9th Cir. 2002) ............................................................................................ 8, 9

*Jackson v. Hollowell*,
 685 F.2d 961 (5th Cir. 1982) ................................................................................................ 12

*Kenneally v. Bank of Nova Scotia*,
 711 F.Supp.2d 1174 (S.D. Cal. 2010) .................................................................................... 9

*Mikhaeilpoor v. BMW of N. Am., LLC*,
 261 Cal. Rptr. 3d 679 (Cal. App. 2020) ............................................................................... 13

*Plotnik v. Meihaus*,
 208 Cal. Rptr. 3d 585 (Cal. App. 2012) ............................................................................... 11

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
 442 F.3d 741 (9th Cir. 2006) .................................................................................................. 9

*Rutherford Holings, LLC v. Plaza Del Rey*,
 166 Cal. Rptr. 3d 864 (Cal. App. 2014) ............................................................................... 11

*Sanchez v. Valencia Holding Co., LLC*,
 353 P.3d 741 (Cal. 20105) ........................................................................................... 10

*Vaugh v. Bay Env. Mgmt., Inc.*,
 567 F.3d 1021 (9th Cir. 2009)......................................................................................... 8

*Yakima Co., Inc. v. Lincoln Gen. Ins. Co.*,
 583 Fed. App'x 744 (9th Cir. 2014)............................................................................... 12

**Statutes**

11 U.S.C. § 303 .................................................................................................................... 8

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

## *Memorandum of Points and Authority*

### INTRODUCTION

This Petition never should have been filed. Given the significant harm and potential for abuse associated with involuntary bankruptcy, the Bankruptcy Code is crystal clear that a petition can only be filed if the amount owed is not subject to a bona fide dispute either as to liability or to the amount. And the test for whether a bona fide dispute exists is simple—is there an objective basis for a legal or factual dispute. If any objective basis exists, the petition must be dismissed.

Here, both Petitioner LeFever Mattson and Mr. Mattson have been engaged in litigation over the Indemnity Agreement for six months. Ignoring that <u>ongoing litigation</u>, LeFever Mattson incorrectly claims that the claimed debt owed is not subject to a bona fide dispute. In other words, it unilaterally declares that Mr. Mattson's claims and defenses are frivolous. In reality, LeFever Mattson's Petition was not filed to secure payment of an undisputed amount owed, but rather to secure an advantage in ongoing litigation, just as LeFever Mattson admitted it did with its own voluntary bankruptcy. LeFever Mattson made this abundantly clear when it improperly tried to secure a Rule 2004 exam despite that rule not applying to involuntary proceedings.

The complaints filed by both Mr. Mattson and LeFever Mattson as well as the documents referenced in the Petition more than adequately establish an objective basis for legal and factual disputes both as to the enforceability of the Indemnity Agreement and the specific amount claimed by LeFever Mattson. First, the agreement in its entirety is unenforceable. The Indemnity Agreement was drafted by an attorney who was actively representing Mr. Mattson personally in another matter and failed to identify any conflicts in representing LeFever Mattson and Mr. LeFever with respect to the Indemnity Agreement that is clearly adverse to Mr. Mattson's interests. The attorney failed to advise Mr. Mattson that he should have separate and independent counsel review the agreement. Mr. Mattson was also misled regarding the scope of the Indemnity Agreement which far exceeds the limited indemnity discussed by the parties.

Keeping with the procedural unconscionability, the Indemnity Agreement is full of unreasonably and unexpectedly harsh terms, all of which disadvantage Mr. Mattson and

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

advantage LeFever Mattson. For example, in contravention of well-established law, the Indemnity Agreement includes a predispute jury waiver and provides for indemnification of LeFever Mattson for its own criminal conduct. The agreement also places a burden on Mr. Mattson to prove indemnification is not permitted. Any determination that the company is entitled to indemnification (a decision made by the company's directors other than Mr. Mattson or by independent counsel) is binding on Mr. Mattson and cannot be subsequently challenged. However, if a determination is made that indemnification <u>is not</u> required, that determination is reviewed de novo. And the Indemnity Agreement purports to have Mr. Mattson waive any and all defenses to any claim for indemnification. Meanwhile, LeFever Mattson would be protected from its own material breaches of the agreement. In addition to being unconscionable, the agreement is void due to a lack of consideration or failure of consideration and is unenforceable due to LeFever Mattson's first material breach.

But even given the unconscionable terms favoring it, LeFever Mattson still managed to make a demand for indemnification beyond the actual scope of the agreement and, thus, subject to bona fide disputes. *First*, indemnification is limited under the agreement to specific proceedings but LeFever Mattson admits in its Petition that the amount claimed is not so limited. And, *second*, the agreement limits indemnification to reasonable fees. LeFever Mattson, however, fails to provide any evidence that could be used to evaluate the reasonableness of the amount demanded. Despite claiming over $620,000 in fees and expenses, LeFever Mattson does not identify why the attorneys were retained, what proceeding they are working on, what work is being done, who is performing that work or at what rate. LeFever Mattson's failure to justify a single penny requested establishes, under California law, a bona fide dispute as to the amount owed.

## STATEMENT OF FACTS

Kenneth Mattson and Tim LeFever co-founded Petitioner LeFever Mattson in 1989. Until late 2023, Mr. Mattson was the CEO of LeFever Mattson and still owns and controls one-half of its outstanding shares. Ex. 1 (Mattson v. LeFever Complaint), ¶ 1. Tim LeFever is a licensed attorney and has been practicing law for almost 40 years. Ex. 1, ¶ 2. LeFever Mattson is in the

- 2 -

business of owning and managing real estate properties. It invests its own funds in various residential and commercial projects and often works with other individual investors. LeFever Mattson forms limited partnerships or limited liability companies and transfers partner or member interests in those entities. Ex. 1, ¶ 6.

None of the entities have an obligation to make distributions to investors, but it was Mr. Mattson's practice to do so whenever possible. Like many real estate businesses, LeFever Mattson experienced extreme hardship during the COVID-19 pandemic due to tenant defaults, decreased demand and consequential loss of income. During this time, Mr. Mattson advanced personal funds to the entities formed by LeFever Mattson to allow individual investors to receive money to avoid financial hardship. In contrast, Mr. LeFever refused to make contributions and, unlike Mr. Mattson, always demanded and received an annual salary between $500,000 and $1,000,000. Mr. Mattson was only repaid his personal advances, without interest or fees, when the entity has a surplus allowing for reimbursement. Ex. 1, ¶ 8.

For many years, Scott Smith and attorneys at his firm, Hanson Bridgett LLP, acted as counsel for LeFever Mattson as well as counsel for Mr. LeFever, Mr. Mattson and KS Mattson Partners. In late 2023 and early 2024, Mr. Smith represented both Mr. LeFever and Mr. Mattson in ongoing matters.

In 2023, a dispute arose between Mr. LeFever and Mr. Mattson in connection with Divi Divi Tree LP, in which LeFever Mattson was a general partner. At one time, LeFever Mattson owned a significant interest in Divi. However, over the years, LeFever Mattson sold its interests to new investors and deposited investment proceeds in a separate operational account for the benefit of LeFever Mattson. These sales were documented through Purchase and Sales Agreements which are in the possession of LeFever Mattson (who has refused to provide copies to Mr. Mattson). Knowing Mr. Mattson no longer has access to relevant evidence, LeFever Mattson and Mr. LeFever began falsely claiming that LeFever Mattson did not authorize such sales and that Mr. Mattson used investment funds for personal purposes. Ex. 1, ¶ 9.

LeFever Mattson retained Mr. Smith and Hanson Bridgett regarding the Divi dispute.

- 3 -

CASE NO. 24-10714

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

Shockingly, despite currently representing both Mr. Mattson and Mr. LeFever personally, Mr. Smith and Hanson Bridgett disclaimed any conflict of interest in representing LeFever Mattson with respect to a dispute with Mr. Mattson. Because of that determination, Mr. Smith and Hanson Bridgett never advised Mr. Mattson of any conflict and never secured informed consent for the representation. At that same time, Mr. Smith (while owing a fiduciary duty to Mr. Mattson and KS Mattson Partners) drafted an unconscionable indemnity agreement. When he was drafting the Indemnity Agreement, Mr. Smith was also planning on leaving his firm and taking a part-time position as general counsel for LeFever Mattson, nominally entitling him to indemnification under the agreement he was drafting against his current client.

Initially, Mr. Mattson, Mr. LeFever and Mr. Smith discussed indemnification of LeFever Mattson from claims by Divi investors. The idea was that to the extent Mr. Mattson had made any errors in documentation, he would bear the expense of correcting such errors. Ex. 1, ¶ 12. The Indemnity Agreement drafted by Mr. Smith, however, went far beyond the agreed-upon limited indemnity and includes provisions that are unreasonably favorable to LeFever Mattson and Mr. LeFever (and, by extension, Mr. Smith) and are overly harsh to Mr. Mattson. *See* Ex. 2 (Executed Indemnity Agreement) § III.01 (extending indemnification to Mr. Smith). As an initial matter, Mr. Mattson received nothing of value in exchange for the Indemnity Agreement. The Indemnity Agreement purports to indemnify LeFever Mattson and Mr. LeFever for claims arising out of their own criminal conduct. *See* Ex. 2 § I.01(h) (defining Proceeding as any action "whether civil, <u>criminal</u>, administrative or investigative" in which Petitioner is a party of reason of "any action taken by" Petitioner) (emphasis added), § III.01(b) (extending scope of indemnity to any liabilities "in connection with any Proceeding"). The agreement purports to allow LeFever Mattson to materially breach the agreement without consequence. Ex. 2 § III.05(b) ("no act or omission" by LeFever Mattson "of any kind or at any time shall in any way impair the rights of" LeFever Mattson).

The Indemnity Agreement claims to set up a neutral determination of entitlement to indemnity, but that process is illusory. The agreement gave Mr. Smith the exclusive right to

- 4 -

CASE NO. 24-10714

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

Case: 24-10714    Doc# 24-1    Filed: 12/20/24    Entered: 12/20/24 19:36:18    Page 8 of 18

determine whether his client, LeFever Mattson, was entitled to indemnity (and, by extension, himself). Ex. 2, § V.01. At all times, the burden is on Mr. Mattson to disprove entitlement to indemnity. *Id.*, § V.03. If Mr. Smith determines that LeFever Mattson is <u>not</u> entitled to indemnification, that determination has no binding impact whatsoever. Instead, LeFever Mattson may bring suit for indemnification and the court must conduct a "de novo trial" to determine if LeFever Mattson is entitled to indemnification and the burden of proof is on Mr. Mattson to disprove entitlement. *Id.*, § VI.02. In contrast, if Mr. Smith determines that LeFever Mattson <u>is</u> entitled to indemnification, that finding can never be challenged in any proceeding. *Id.*, § VI.03 ("If a determination shall have been made pursuant to Article V of this Agreement that Indemnitee is entitled to indemnification, the Indemnitor shall be bound by such determination in any judicial proceeding[.]") And Mr. Mattson is forbidden from claiming the burden shifting, the presumption of indemnification, or the procedures are invalid. *Id.* In fact, the agreement purports to waive any and all defenses Mr. Mattson may have both at the time of contracting and any that may arise in the future. *Id.*, § III.05(a). The Indemnity Agreement also includes a predispute waiver of the right to jury trial. *Id.*, § VII.10. Finally, the Indemnity Agreement contains false recitals that are designed to protect Mr. LeFever and LeFever Mattson at the expense of Mr. Mattson. Ex. 1, ¶ 11.

Shortly after resigning from Hanson Bridgett and taking a position as LeFever Mattson's general counsel, Mr. Smith, on behalf of LeFever Mattson, demanded that Mr. Mattson execute the Indemnity Agreement protecting LeFever Mattson, Mr. LeFever and Mr. Smith from their own misconduct. Ex. 1, ¶ 10.

In February 2024, at a special board meeting called by Mr. LeFever (without an agenda), Mr. Smith and Mr. LeFever demanded that Mr. Mattson resign as CEO and amend the bylaws to make Mr. Smith a director. Ex. 1, ¶ 11. Neither Mr. Smith nor Mr. LeFever (both of whom are attorneys) advised Mr. Mattson to have the agreement reviewed by independent counsel or that the Indemnity Agreement contained recitals that could expose Mr. Mattson to liability. Nor did they advise him that the agreement was not limited to their earlier discussions. Because of their

- 5 -

CASE NO. 24-10714

Case: 24-10714    Doc# 24-1    Filed: 12/20/24    Entered: 12/20/24 19:36:18    Page 9 of 18

long standing relationship, Mr. Mattson trusted Mr. LeFever and Mr. Smith to have fairly and reasonably drafted the Indemnity Agreement based upon their prior discussions. As a result of that trust, Mr. Mattson only glanced through the agreement and did not read it completely. *Id.*

Almost immediately after the agreement was signed, Mr. LeFever and LeFever Mattson stopped making proper distributions, causing anger among the investors. They then began contacting LeFever Mattson investors making false factual statements, including that the investors' interests were invalid and that Mr. Mattson wrongfully took their money, when, in fact, the sales were regular, documented, authorized by LeFever Mattson's CEO and not hidden from Mr. LeFever. Mr. LeFever has even made attempts to encourage lawsuits against Mr. Mattson. Ex. 1, ¶ 15.

The Indemnity Agreement does provide Mr. Mattson with a right to receive information from LeFever Mattson. Ex. 2 at 1 (fifth whereas clause), § IV.03. On May 14, 2024, Mr. Mattson requested various documents necessary to document transactions and to address accusations against him. LeFever Mattson, however, refused the requested information without additional and highly unreasonable demands and conditions in violation of the Indemnity Agreement. Ex. 1, ¶ 16. Mr. Mattson subsequently wrote to LeFever Mattson rescinding the Indemnity Agreement in light of this breach. Ex. 1, ¶ 17.

On June 6, 2024, Mr. Mattson filed suit against Mr. LeFever and Petitioner LeFever Mattson seeking, among other things, a declaration that the Indemnity Agreement is invalid, unenforceable and/or previously breached by Mr. LeFever and Petitioner. Ex. 1, ¶ 19. In the alternative, Mr. Mattson seeks to limit indemnity, consistent with the plain language of the agreement, to circumstances where a transaction was not "clearly documented[.]" Ex. 1, ¶ 23; Ex. 2 at 1 (third whereas clause). Mr. Mattson also seeks recission of the Indemnity Agreement as well as claims for damages and equitable relief. Ex. 1, ¶¶ 26-57.

That same day, Mr. LeFever, Petitioner LeFever Mattson and other LeFever Mattson controlled entities sued Mr. Mattson and KS Mattson Partners to, among other things, enforce the terms of the Indemnity Agreement despite KS Mattson Partners not being a party to the

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

agreement. Ex. 3 (LeFever Mattson Complaint), ¶¶ 20 ("Plaintiffs have therefore been forced to bring this action … to ensure that Defendants abide by their obligations to indemnify and hold Plaintiffs harmless[.]"), 96-99 (asserting a breach of contract claim related to the indemnity agreement); Ex. 2.

On June 27, 2024, Mr. LeFever wrote to Mr. Mattson regarding the Indemnity Agreement despite knowing that Mr. Mattson was represented by counsel. Ex. 4 (LeFever Email). Mr. LeFever's email purported to be a demand for payment under the Indemnity Agreement. According to the attachments to that email, LeFever Mattson claimed to have spent $620,146.23 in accounting and legal expenses. Ex. 4 at 2. No details about the alleged expenses were provided except a listing of different entities with invoice dates and amounts. Ex. 4 at 3. This demand included $20,000.00 claimed due to Mr. Smith. *Id.* The demand provides no explanation of the rates being charged by the professionals, the works being done, or the nature of the proceeding for which the expenses were incurred. *Id.* Of the $620,146.23 in claimed expenses, the majority is invoices for large, round numbers that suggests the bill is not for work already done. This includes a claim for a $325,000 for charges by the law firm Keller Benvenutti Kim, LLP and $75,000 in charges by BPM LLP, without any detail. *Id.*

Given LeFever Mattson's decision to publicize inaccurate information about Mr. Mattson, it is not surprising that a number of investors have filed suit. In response, on September 12, 2024, LeFever Mattson (along with dozens of other entities controlled by LeFever Mattson) filed voluntary petitions for bankruptcy leading to multiple Chapter 11 bankruptcy cases now pending before this Court. Ex. 5 (Declaration of Bradley Sharp), ¶ 8; Ex. 6 (LeFever Mattson Monthly Operating Report). Those proceedings have been consolidated for procedural purposes so that they will be administered jointly before the Honorable United States Bankruptcy Judge Novack. From the beginning, LeFever Mattson has admitted that it filed the bankruptcy proceedings not because it was insolvent but as a way to control and manage litigation against it. Ex. 5, Dec. of Bradley D. Sharp in Support of Chapter 11 Petitions and First Day Mots. at ¶ 24 ("A primary purpose of these Chapter 11 Cases is to consolidate those [putative class action] claims—and any

similar claims against the Debtors yet to be filed—for fair and transparent resolution"). Indeed, LeFever Mattson recently admitted that, as of the end of September 2024, it had $27,651,040 in excess of its liabilities (Ex. 6 at 2),demonstrating that it is hardly the model for Chapter 11 relief.

Keeping with its approach of using the Bankruptcy Court as a tool to gain advantages in ongoing litigation, LeFever Mattson filed this involuntary proceeding against Mr. Mattson and incorrectly claimed amounts owed under the Indemnity Agreement were not subject to a bona fide dispute despite ongoing litigation over that very topic. *See* Dkt. #1. LeFever Mattson almost immediately sought Rule 2004 exams even though that rule does not apply to involuntary proceedings, as this Court determined in denying those requests. It seems at least one motivation behind filing this involuntary proceeding was to try and secure one-sided discovery related to the state court cases.

**I.     Legal standard applicable to this motion.**

A creditor does not have standing to file an involuntary Chapter 7 petition if its claim is "the subject of a bona fide dispute." 11 U.S.C. § 303(b)(1). Where a petitioner lacks statutory standing, the court must dismiss the petition for failure to state a claim. *See, e.g.*, *Vaugh v. Bay Env. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009) ("a dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim"). A bona fide dispute as to either the existence of the debt or the amount of debt warrants dismissal. 11 U.S.C. § 303(b)(1) (requiring debt not be the "subject of a bona fide dispute as to liability or amount"). As to the latter category, a bona fide dispute as to any amount of a petitioning creditor's claim strips the creditor of standing, "even if a portion of the claim amount is undisputed." *Dept. of Rev. v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019).

To determine whether a bona fide dispute exists, the court "is not asked to evaluate the potential outcome of a dispute[.]" *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1064 (9th Cir. 2002). Instead, the test is "whether there is an objective basis for either a factual or legal dispute as to the validity of the debt[.]" *Id.* (citing *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987); *see also id.* (Court is "merely to determine whether there are facts that give rise to a legitimate

- 8 -

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

disagreement over whether money is owed, or, in certain cases, how much."). The "burden is on the petitioning creditors to show that no bona fide dispute exists." *Id.* (citing *In re Rubin*, 769 F.2d 611, 615 (9th Cir. 1985)). The existence of a bona fide dispute can be determined by reference to pleadings. *Id.* at 1067 (defense raised in answer challenging enforceability of contract sufficient to show bona fide dispute).

**II.  Judicial notice of the exhibits to the motion to dismiss is proper.**

In resolving a motion to dismiss, this Court may take judicial notice of documents referenced in the Petition. *See Kenneally v. Bank of Nova Scotia*, 711 F.Supp.2d 1174, 1182 (S.D. Cal. 2010). The court may also take judicial notice of matters in the public record, including court filings. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."); *Daniel v. M-I, LLC*, 2015 WL 5834276, at *2 (E.D. Cal. Oct. 1, 2015) ("The court may take judicial notice … since the [first amended complaint] filed in state court and the Amended Summons are publicly filed documents in another court.").

Mr. Mattson attaches six exhibits to this Motion: (1) a copy of the complaint filed by Mr. Mattson against Petitioner and Mr. LeFever in California state court; (2) a copy of the Indemnity Agreement referenced in the Petition; (3) a copy of the complaint filed by LeFever Mattson against Mr. Mattson in California state court; (4) a copy of the June 27, 2024 demand referenced in the Petition; (5) a copy of the declaration of Bradley D. Sharp in Support of Chapter 11 Petitions and First Day Motions filed in Petitioner's bankruptcy proceeding; and (6) the Monthly Operating Report filed by LeFever Mattson in its bankruptcy proceedings. All of these documents are subject to judicial notice because they are either public filings (Exs. 1, 3, 5, 6) or referenced in the Petition (Exs. 2, 4).

**III.  Petitioner's claim is subject to bona fide disputes.**

　　A.　<u>There are bona fide disputes as to liability as evidenced by ongoing litigation.</u>

　　　　i.　*The terms of the Indemnity Agreement confirm it is unconscionable.*

A court may refuse to enforce an unconscionable contract or individual contractual

- 9 -

CASE NO. 24-10714
Case: 24-10714    Doc# 24-1    Filed: 12/20/24    Entered: 12/20/24 19:36:18    Page 13 of 18

provision. *E.g.*, *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 748 (Cal. 20105). The unconscionability doctrine is concerned with "terms that are unreasonably favorable to the more powerful party." *Id.* Terms that "contravene the public interest or public policy … seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms have to do with … central aspects of the transaction" support a finding of unconscionability. *Id.* Though both substantive and procedural unconscionability must be present, they operate on a sliding scale—the more substantively unconscionable terms are, the less of a showing of procedural unconscionability is required (and vice versa). *Id.*

The Indemnity Agreement contains several provisions that are clearly unconscionable. For example, it includes a predispute waiver of jury trial in contravention of California's public policy. Ex. 2, § VII.10; *see Grafton Partners v. Superior Court*, 116 P.3d 479, 482 (Cal. 2005) (presdispute contractual jury waivers are unenforceable as contrary to public policy reflected in the state constitution). Similarly, the attempt to indemnify LeFever Mattson (and its attorney) for their own criminal conduct is contrary to public policy. *See Downey Venture v. LMI Ins. Co.*, 78 Cal. Rptr. 2d 142, 164 (Cal. App. 1998). The agreement also contains unreasonably and unexpectedly harsh terms all that inure to the benefit of LeFever Mattson. This includes: (i) placing the burden of proof on Mr. Mattson; (ii) that decisions that indemnification is <u>not</u> required are not binding on LeFever Mattson and are subject to de novo view while decisions that indemnification <u>is</u> required are binding and cannot be challenged by Mr. Mattson; (iii) allowing LeFever Mattson to materially breach the agreement without losing its rights under the agreement; and (iv) barring only Mr. Mattson from asserting certain defenses. *Supra*.

Similarly, procedural unconscionability exists in this case. Namely, Mr. Mattson was misled by two attorneys (i.e. his business partner, Tim LeFever, and his personal counsel, Scott Smith) about the scope of the agreement and was pressured to sign it.

Mr. Mattson, however, does not need to prove unconscionability, just an objective basis for a dispute. The terms of the agreement provide such objective bases and this action should be dismissed.

- 10 -

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

CASE NO. 24-10714

Case: 24-10714    Doc# 24-1    Filed: 12/20/24    Entered: 12/20/24 19:36:18    Page 14 of 18

*ii. Other objective facts support Mr. Mattson's challenge to the agreement.*

"[I]in contract law, a material breach excuses further performance by the innocent party." *Plotnik v. Meihaus*, 208 Cal. Rptr. 3d 585, 596 (Cal. App. 2012); *see also Brown v. Grimes*, 120 Cal. Rptr. 3d 893, 902 (Cal. App. 2011) ("When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract. … Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact."). In his litigation over the Indemnity Agreement, Mr. Mattson specifically alleges that LeFever Mattson breached its sole obligation to Mr. Mattson under the agreement—providing information upon request. Ex. 1, ¶¶ 15-16, 18-25. Similarly, Mr. Mattson contends that the Indemnity Agreement lacks consideration because there is no benefit to Mr. Mattson in exchange for the obligations imposed upon him or, in the alternative, there was a failure of consideration in light of LeFever Mattson's refusal to provide requested information. Ex. 1, ¶ 14, 15. Either lack of consideration or failure of consideration invalidates the agreement. *E.g.*, *Rutherford Holings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 871 (Cal. App. 2014).

B. <u>There are bona fide disputes as to the amount of Petitioner's claim.</u>

In addition to a dispute as to the enforceability of the Indemnity Agreement, there are also bona fide disputes as to the amount owed if the Indemnity Agreement is enforceable. *First*, it is clear from the Petition that LeFever Mattson is seeking indemnity broader than what is covered by the Indemnity Agreement. And, *second*, there is a dispute as to the reasonableness of the fees and costs incurred by LeFever Mattson.

*i. LeFever Mattson's indemnity demand is broader than the agreement.*

Liability under the Indemnity Agreement is limited to "Third Party Transactions" which are defined as "transactions with individuals and/or entities pursuant to which Indemnitor has secured funds on terms and conditions <u>not clearly documented</u>." Ex. 2 at 1 (third whereas clause) (emphasis added), § III.01 (limiting scope of indemnification to "Liabilities incurred … <u>in connection with</u> any Third Party Transaction") (emphasis added). In the Petition, however,

- 11 -

CASE NO. 24-10714

Case: 24-10714    Doc# 24-1    Filed: 12/20/24    Entered: 12/20/24 19:36:18    Page 15 of 18

LeFever Mattson makes clear that it seeks broader indemnity than what is permitted under the agreement. LeFever Mattson claims to have incurred $620,146.23 "in legal expenses … in connection with the Mattson Transaction[.]" Dkt. #1. Attachment A. The defined term "Mattson Transaction" is broader than just transactions that are "not clearly documented." Instead, they are defined as "transactions by Alleged Respondent Debtor Kenneth W. Mattson … <u>many of which</u> were not recorded in the books and records of LeFever Mattson or its affiliates[.]" *Id.* (emphasis added).

Similarly, LeFever Mattson seeks indemnification for $325,000 paid to Keller Benvenutti Kim LLP. Ex. 4 at 3. That firm represents LeFever Mattson both in this proceeding and in LeFever Mattson's voluntary Chapter 11 proceeding. *See* Dkt. #1; Ex. 6. However, neither the voluntary filing of bankruptcy nor this action are covered by the Indemnification Agreement, which, as to court proceedings, is limited to instances where LeFever Mattson has been sued. *See* Ex. 2, §§ I.01(b), (d), (f), (h), III.01. Simply put, Mr. Mattson is not required to pay LeFever Mattson's lawyers for filing a meritless petition trying to force Mr. Mattson into bankruptcy so LeFever Mattson can secure some advantage in the parties' ongoing litigation over the Indemnity Agreement.

Because the demand for indemnification is far broader than any agreement to indemnify, there is, necessarily, a dispute about the amount of any indemnification to which LeFever Mattson may be entitled.

        *ii.*    *There is a dispute about the reasonableness of the fees incurred.*

Under the Indemnity Agreement, indemnification is only available for "reasonable attorneys' fees[.]" Ex. 2, § I.01(d). Indeed, even if the agreement were silent on that topic, "courts routinely imply [a reasonableness] limitation in contractual fee-shifting provisions—including those contained in indemnity agreements." *Yakima Co., Inc. v. Lincoln Gen. Ins. Co.*, 583 Fed. App'x 744, 746 (9th Cir. 2014) (collecting cases); *see also Jackson v. Hollowell*, 685 F.2d 961, 966 (5th Cir. 1982) ("[T]he weight of authority allows reimbursement for legal costs under the terms of an indemnity contract only … if the amount of the fees is reasonable.").

- 12 -

CASE NO. 24-10714

California utilizes the lodestar approach to determine the reasonableness of fees under which the court decides the reasonable time spent on a matter and a reasonable hourly rate. *See Mikhaeilpoor v. BMW of N. Am., LLC*, 261 Cal. Rptr. 3d 679, 684 (Cal. App. 2020). LeFever Mattson bears the burden of establishing the reasonableness of the fees for which it seeks indemnification. *Id.* at 684-85. Petitioner, however makes no effort to meet that burden. The June 27, 2024 demand only lists the amounts invoiced and the name of the firms. It does not show for what proceeding or activities the fees were (or will be) incurred in violation of the express terms of the Indemnity Agreement. Ex. 2, § IV.01 ("The written notification to Indemnitor shall include, in reasonable detail, a description of the nature of the Proceeding and the facts underlying the Proceeding or matter for which indemnification is sought."). And neither Mr. Mattson nor this Court can determine whether the $420,146.23 claimed as a debt actually reflects "reasonable attorney's fees" as required by the agreement because LeFever Mattson provides zero detail about the work performed, the lawyers who are actually billing, or their rates. Ex. 4 at 3. Instead, LeFever Mattson seems to believe that it is entitled to indemnification for any fees regardless of reasonableness in contravention of the express terms of the Indemnity Agreement.

Because the Indemnity Agreement is specifically limited to "reasonable" fees, there is an objective basis for a dispute as to the amount owed and LeFever Mattson lacks standing to bring this action.

**IV.    Mr. Mattson will request an award of fees, costs and damages under § 303(i)(1).**

The Bankruptcy Code allows the Court to award fees, costs and damages to Mr. Mattson if it dismisses the Petition. 11 U.S.C. § 303(i). There are "only two prerequisites for an award of fees, costs, or damages … (1) the court must have dismissed the petition on some ground other than consent by the parties; and (2) the debtor must not have waived its right to recovery under the statute." *Higgins v. Vortex Fishing Sys., Inc.*, 379 F.3d 701, 705-6 (9th Cir. 2004). Once the prerequisites are satisfied, Bankruptcy Courts must exercise "some form of discretion in awarding fees and costs." *Id.* at 706. In the event the Court dismisses the Petition here, Mr. Mattson preserves and does not waive his right to seek fees, costs and damages, as appropriate.

- 13 -

CASE NO. 24-10714
Case: 24-10714    Doc# 24-1    Filed: 12/20/24    Entered: 12/20/24 19:36:18    Page 17 of 18

**CONCLUSION**

For the foregoing reasons, Mr. Mattson requests the Court dismiss the Petition as LeFever Mattson lacks statutory standing to bring this action.

Dated: December 20, 2024　　　　FENNEMORE WENDEL

By: */s/ Mark Bostick*
Mark Bostick
Thiele R. Dunaway
James P. Hill
Christopher V. Hawkins
Attorneys for KENNETH W. MATTSON

- 14 -