**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (Cal. Bar No. 151445)
David A. Taylor (Cal. Bar No. 247433)
Dara L. Silveira (Cal. Bar No. 274923)
Thomas B. Rupp (Cal. Bar No. 278041)
101 Montgomery Street, Suite 1950
San Francisco, California 94104
Telephone: (415) 496-6723
E-mail: tkeller@kbkllp.com
dtaylor@kbkllp.com
dsilveira@kbkllp.com
trupp@kbkllp.com

Counsel to the LFM Debtors

**PACHULSKI STANG ZIEHL & JONES LLP**
Debra I. Grassgreen (Cal Bar. No. 169978)
John D. Fiero (Cal. Bar No. 136557)
Jason H. Rosell (Cal. Bar No. 269126)
Steven W. Golden (*pro hac vice* forthcoming)
Brooke E. Wilson (Cal. Bar No. 354614)
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Email: LFMCommittee@pszjlaw.com

Counsel to the Official Committee of Unsecured Creditors
of the LFM Debtors and KSMP

**HOGAN LOVELLS US LLP**
Richard L. Wynne (Cal. Bar No. 120349)
Erin N. Brady (Cal. Bar No. 215038)
Edward J. McNeilly (Cal. Bar No. 314588)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Email: richard.wynne@hoganlovells.com
erin.brady@hoganlovells.com
edward.mcneilly@hoganlovells.com

Counsel to KSMP

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>KENNETH W. MATTSON,<br><br>　　Debtor. | Case No. 24-10714-CN<br><br>Chapter 11<br><br>**OBJECTION OF THE LFM DEBTORS, KSMP, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO PETITIONING DEFENSE COUNSEL'S MOTION FOR RELIEF OF PRESERVATION ORDER UNDER 11 U.S.C. § 303(f)**<br><br>Date: September 19, 2025<br>Time: 11:00 a.m.<br>Place: (In Person or Via Zoom)<br>　　United States Bankruptcy Court<br>　　1300 Clay Street, Courtroom 215<br>　　Oakland, CA 94612<br>Judge: Honorable Charles Novack |

# TABLE OF CONTENTS

| | | Page |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| | A. The LFM Debtors' Cases | 2 |
| | B. The KSMP Case | 3 |
| | C. The Mattson Individual Case | 3 |
| | D. The Mattson Criminal Proceedings | 5 |
| III. | OBJECTION | 8 |
| | A. The Motion is Moot | 8 |
| | B. The Motion Cannot be Granted as a Matter of Fact and Law | 9 |
| |   1. Estate Assets Cannot be Used to Fund Mattson's Criminal Defense Counsel | 9 |
| |   2. This Court Cannot Order an "Interlocutory Sale" | 12 |
| IV. | CONCLUSION | 1 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cf. Official Comm. of Disputed Litig. Creds. v. McDonald Inv., Inc.*
  42 B.R. 981 (N.D. Tex. 1984) ............................................................................................ 10, 11

*Ferrara & Hantman v. Alvarez* (*In re Engel*)
  124 F.3d 567 (3d Cir. 1996) ..................................................................................................... 10

*In re Cmty. Home Fin. Servs.*
  2017 Bankr. LEXIS 1191 (Bankr. S.D. Miss. May 1, 2017) .................................................... 10

*In re Delk*
  27 B.R. 86 (Bankr. W.D. Okla. 1983) ...................................................................................... 10

*In re Duque*
  48 B.R. 965 (S.D. Fla. 1984) .................................................................................................... 10

*In re French*
  139 B.R. 485 (Bankr. D. S.D. 1992) ......................................................................................... 10

*In re Gherman*
  101 B.R. 367 (Bankr. S.D. Fla. 1989) ....................................................................................... 10

*In re Kearney*
  609 B.R. 383 (Bankr. D. N.M. 2019) ............................................................................. 1, 2, 10, 11

*In re Kenneth W. Mattson*
  Case No. 24-10714-CN (Bankr. N.D. Cal.) ................................................................................ 1

*In re Miell*
  2009 U.S. Dist. LEXIS 37357 (N.D. Iowa Aug. 19, 2009) ................................................. 10, 11

*In re Pajarito Am. Indian Art, Inc.*
  11 B.R. 807 (Bankr. D. Ariz. 1981) .......................................................................................... 10

*In re Southern Commodity Corp.*
  85 B.R. 892 (Bankr. S.D. Fla. 1988) ......................................................................................... 10

*In re Spurgeon*
  2008 Bankr. LEXIS 4188 (Bankr. E.D. Tenn. Sep. 18, 2008) .................................................. 10

*In re Stoecker*
  114 B.R. 965 (Bankr. N.D. Ill. 1990) ........................................................................................ 11

*In re Tashof*
  33 B.R. 225 (Bankr. D. Md. 1983) ............................................................................................ 10

*In re United Church of the Ministers of God*
  84 B.R. 50 (Bankr. E.D. Pa. 1988) ............................................................................................ 10

*United States v. Dezfooli*
  2024 WL 4150750 (D. Nev. Sep. 10, 2024) ............................................................................. 12

*United States v. Mattson*
  Case No. 25-cr-00126-JST-1, 2025 U.S. Dist. LEXIS 157101 (N.D. Cal. Aug. 13, 2025) 2, 5, 12

*Wootton v. Ravkind* (*In re Dixon*)
  143 B.R. 671 (Bankr. N.D. Tex. 1992) ............................................................................... 10, 11

**Statutes**

11 U.S.C. § 1107(a) ......................................................................................................................... 2
11 U.S.C. § 1108 ............................................................................................................................. 2
11 U.S.C. § 303(f) ........................................................................................................................... 8
11 U.S.C. § 327 ........................................................................................................................... 1, 9
11 U.S.C. § 330 ........................................................................................................................... 1, 9
11 U.S.C. § 330(a)(4)(A)(ii)(I) ....................................................................................................... 9
11 U.S.C. § 503 ............................................................................................................................... 9
11 U.S.C. § 541(2) .......................................................................................................................... 9
11 U.S.C. § 541(a)(1) ...................................................................................................................... 9
28 U.S.C. § 2001 ........................................................................................................................... 12
28 U.S.C. § 2002 ........................................................................................................................... 12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

28 U.S.C. § 2004 .................................................................................................................... 12

**Rules**
Fed. R. Civ. P. Rule G(7) ..................................................................................................... 12

LeFever Mattson and its affiliated debtors in possession (collectively, the "LFM Debtors"), KS Mattson Partners, LP ("KSMP"), and the Official Committee of Unsecured Creditors (the "Committee" and, together with the LFM Debtors and KSMP, the "Objecting Estate Fiduciaries") hereby jointly submit this objection (the "Objection") to the *Petitioning Defense Counsel's Motion for Relief of Preservation Order Under 11 U.S.C. § 303(f)* [Docket No. 123][1] (the "Motion"). In support of the Objection, the Objecting Estate Fiduciaries rely on the *Request for Judicial Notice in Support of the Objection of the LFM Debtors, KSMP, and the Official Committee of Unsecured Creditors to Petitioning Defense Counsel's Motion for Relief of Preservation Order Under 11 U.S.C. § 303(f)* (the "RJN"), filed concurrently herewith, and, in further support thereof, respectfully state as follows:

## I.

## INTRODUCTION[2]

Through the Motion, Kenneth W. Mattson ("Mattson") seeks relief from the Preservation Order (as defined below), which failed to have any legal effect as soon as the Order for Relief was entered in the Mattson Individual Case. The Motion is therefore moot and should be denied without a hearing. Regardless, the relief the Motion seeks—authority to fund Mattson's personal criminal defense counsel using assets that are property of his or KSMP's bankruptcy estates—is legally and factually untenable. Even the one bankruptcy case cited in the Motion, *In re Kearney*,[3] highlights three fatal issues with the Motion itself: (1) postpetition retention and compensation of a debtor's criminal defense counsel are governed by sections 327 and 330 of the Bankruptcy Code, respectively; (2) an individual debtor's criminal defense counsel does not benefit a debtor's estate; and (3) a debtor's Sixth Amendment rights do not supersede the "benefit to the estate" requirements of section 327 and 330 of the Bankruptcy Code.

---

[1] Unless otherwise stated, all docket references in this Objection are to the docket in *In re Kenneth W. Mattson*, Case No. 24-10714-CN (Bankr. N.D. Cal.) (the "Mattson Individual Case").

[2] Capitalized terms used but not defined in this Introduction are intended to have the meanings ascribed to them *infra*.

[3] *In re Kearney,* 609 B.R. 383 (Bankr. D. N.M. 2019).

Moreover, Mattson fails to inform this Court that the United States District Court for the Northern District of California (the "District Court") already has addressed these issues in the Mattson Criminal Proceeding. Namely, in the *Order Denying Defendant's Motion for Hearing on Motion to Modify Pretrial Asset Restraint* (the "Second Asset Restraint Order"),[4] the District Court stated that "the case law [ ] supports the conclusion that a bankruptcy court is not required to allow liquidation of an estate's assets to fund a debtor's criminal defense"[5] and, quoting *Kearney*, "a defendant's Sixth Amendment rights do not supersede the 'benefit to the estate' requirement that a bankruptcy court must consider, and **_almost all courts that have addressed the issue have held that criminal defense counsel does not benefit the estate_**."[6] On the merits, there is no actual or potential benefit to any of the LFM Debtors' estates or KSMP's estate and therefore the Motion must be denied.

## II.

## FACTUAL BACKGROUND

### A. The LFM Debtors' Cases

The LFM Debtors commenced cases under chapter 11 of the Bankruptcy Code by the filing of their respective voluntary petitions for relief in August and September 2024. The Cases are being jointly administered for procedural purposes under the lead case of LFM. The LFM Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On October 9, 2024, the United States Trustee (the "UST") appointed the Committee in the LFM Cases.[7] On November 25, 2024, the UST filed an amended Committee appointment notice.[8]

---

[4] *United States v. Mattson*, Case No. 25-cr-00126-JST-1, Docket No. 78, 2025 U.S. Dist. LEXIS 157101 (N.D. Cal. Aug. 13, 2025). A true and correct copy of the Second Asset Restraint Order is attached to the RJN as **Exhibit K**.

[5] 2025 U.S. Dist. LEXIS 157101, *5.

[6] 2025 U.S. Dist. LEXIS 157101, *6 (cleaned up) (emphasis added).

[7] *See* Docket No. 135.

[8] *See* Docket No. 368.

On August 26, 2025, the UST filed a second amended Committee appointment notice, appointing the Committee as the official committee in the KSMP Case (as defined below).[9]

### B. The KSMP Case

On November 22, 2024 (the "KSMP Petition Date"), LFM (listing a claim over $420,000) and LFM Debtor Windtree, LP (listing a claim over $1 million), as creditors, filed an involuntary chapter 11 petition against KSMP, commencing Case No. 24-10715 (Bankr. N.D. Cal.) (the "KSMP Case").[10] KSMP, through its prior counsel, moved to dismiss the involuntary petition,[11] which LFM and the Committee opposed.[12] After a hearing held on February 28, 2025, the Court denied the motion to dismiss[13] and set a deadline for KSMP to answer and briefing schedule on the involuntary petition.

After more than six months of contested proceedings, on June 6, 2025, KSMP consented to the entry of a stipulated order for relief in the involuntary case, which order was entered by the Court on June 9, 2025 (the "KSMP Relief Date").[14] The Court subsequently entered an order[15] appointing Robbin L. Itkin as the Responsible Individual in the KSMP Case, effective as of June 16, 2025.

### C. The Mattson Individual Case

On November 22, 2024 (the "Mattson Petition Date"), LFM (listing a claim on the petition of more than $420,000), as a creditor, filed an involuntary chapter 11 petition against Mattson, commencing the Mattson Individual Case.[16] Mattson moved to dismiss the involuntary petition,[17]

---

[9] See Docket No. 2104.

[10] References herein to "KSMP Docket No." are to the docket numbers in *In re KS Mattson Partners, LP*, No. 24-10715 (Bankr. N.D. Cal.).

[11] KSMP Docket No. 18.

[12] KSMP Docket Nos. 28, 31.

[13] KSMP Docket No. 55.

[14] KSMP Docket No. 131.

[15] KSMP Docket No. 172.

[16] References herein to "Mattson Docket No." are to the docket numbers in *In re Kenneth W. Mattson*, No. 24-10714 (Bankr. N.D. Cal.).

[17] See Mattson Docket No. 24.

which LFM and the Committee opposed.[18] After a hearing held on February 28, 2025, the Court denied the motion to dismiss the Mattson Involuntary Petition.[19]

On April 8, 2025, LFM, as the petitioning creditor, filed the *Petitioning Creditors' Motion for Preservation Order* [Docket No. 52] (the "Preservation Order Motion"). After conducting a hearing on the Preservation Order Motion on April 11, the Court entered the *Order Continuing Hearing on Petitioning Creditors' Motion for Preservation Order* [Docket No. 72] (the "Preservation Bridge Order"). Pursuant to the Preservation Bridge Order, which was initially effective through a continued hearing scheduled for April 18, Mattson "is prohibited from selling, transferring or encumbering any real property in which he has an interest."[20] By minute entries dated April 18, April 25, and May 2, the hearing on the Preservation Order and the effectiveness of the Preservation Bridge Order was continued, ultimately to May 9, at which time the Court granted the Preservation Order Motion.

Thereafter, on May 15, 2025, the Court entered the *Preservation Order Under 11 U.S.C. § 303(f)* [Docket No. 91] (the "Preservation Order"), granting the relief sought in the Preservation Order Motion. Pursuant to the Preservation Order, "[s]ections 363 and 364 of Title 11 of the United States Code shall apply in [the Mattson Individual Case] to the same extent as if an order for relief had been entered."[21]

After nearly seven months of contested proceedings, Mattson agreed to consent to the entry of an order for relief in the Mattson Individual Case. On July 14, 2025, the Court entered the *Order Regarding Consent of Kenneth W. Mattson to Entry of Order for Relief* [Docket No. 118] (the "Involuntary Consent Order"), which provided that "[o]n September 2, 2005, Mr. Mattson will be deemed to have consented to entry of an order for relief" and that "[t]he Preservation Order shall remain in full force and effect until entry of the Order for Relief."[22]

---

[18] *See* Mattson Docket Nos. 26, 30.
[19] Mattson Docket No. 48.
[20] Preservation Bridge Order at ¶ 1.
[21] Preservation Order at ¶ 2.
[22] Involuntary Consent Order at ¶¶ 2, 3.

In accordance with the Involuntary Consent Order, on September 5, 2025 (the "Mattson Relief Date") the Court entered the [Docket No. 127] (the "Order for Relief"). The Objecting Estate Fiduciaries understand that Mattson will imminently file an *ex parte* motion to convert the Mattson Individual Case from a case under chapter 11 to a case under chapter 7 (the "Conversion Motion"). The Objecting Estate Fiduciaries strongly support the Conversion Motion, and support it being granted without a hearing. Indeed, to the extent Mattson does not file the Conversion Motion in short order, the Objecting Estate Fiduciaries will file such a motion as Mattson cannot fulfill the fiduciary duties of acting as a debtor in possession.

**D.     The Mattson Criminal Proceedings**

On May 13, 2025, a federal grand jury returned an indictment (the "Indictment") charging Mattson with nine counts of wire fraud, money laundering, and obstruction of justice, which commenced *United States of America v. Kenneth W. Mattson*, No. CR25-00126 JST (N.D. Cal.) (the "Mattson Criminal Proceeding").[23] The Indictment also provided notice that the government was seeking Mattson's interest in certain real properties—including 62 Farragut Avenue in Piedmont (the "Farragut Property") and 1834 – 1836 Ocean Front in Del Mar (the "Ocean Front Property")—as being subject to forfeiture upon Mattson's conviction. After a series of hearings, Magistrate Judge Alex G. Tse required (among other things) that a parcel of real property located at 210 LaSalle Drive in Piedmont (the "LaSalle Property" and, together with the Farragut Property and the Ocean Front Property, the "Subject Properties"), which is presently titled in Mattson's wife's name, be posted as a condition of Mattson's bail.[24]

On June 25, 2025, Mattson filed *Defendant's Motion to Modify Pre-Trial Asset Restraints* [Mattson Crim. Docket No. 44] (the "First Modification Motion"),[25] essentially seeking the District Court's authority to sell the Farragut Property, Ocean Front Property, and LaSalle Property to fund his criminal defense. In support of the First Modification Motion, Mattson submitted a sworn

---

[23]     References herein to "Mattson Crim. Docket No." are to the docket numbers in the Mattson Criminal Proceeding. A true and correct copy of the Indictment is attached to the RJN as **Exhibit A**.

[24]     Mattson Crim. Docket No. 37.

[25]     A true and correct copy of the First Modification Motion is attached to the RJN as **Exhibit B**.

4904-0109-6802.4 52011.00005

5

declaration [Mattson Crim. Docket No. 44-1] (the "First Mattson Declaration")[26] in which Mattson declared, among other things, that he "own[s] or control[s] residential propert[y] at . . . 1834 – 1836 Ocean Front, Del Mar, California 92014."[27] In its objection to the First Modification Motion [Mattson Crim. Docket No. 51] (the "First Objection"),[28] the government correctly noted that part of the Farragut Property and all of the Ocean Front Property are owned by KSMP—not Mattson.[29] The government further noted other issues regarding the ownership of the LaSalle Property (including the existence of a 20-year tenant in the LaSalle Property that asserts an ownership interest therein), none of which were disclosed in the First Mattson Declaration.[30]

On July 29, 2025, the District Court issued the *Order Denying Motion to Modify Pretrial Asset Restraint* [Mattson Crim. Docket No. 68] (the "First Asset Restraint Order"),[31] denying the First Modification Motion on the grounds that Mattson failed to present sufficient evidence as required by applicable law, but without prejudice to Mattson renewing his motion. The District Court also made clear that any such renewed motion "should address the title issues raised by the government" insofar as the government presented evidence that KSMP (and not Mattson) held title to the Farragut Property and Ocean Front Property.[32]

On July 30, 2025, Mattson filed *Defendant Kenneth W. Mattson's Emergency Ex Parte Motion for a Hearing on Defendant's Motion to Modify Pre-Trial Asset Restraint* [Mattson Crim. Docket No. 70] (the "Second Modification Motion"),[33] seeking the same relief as was sought in the First Modification Motion on an emergency basis "on the grounds that he will likely be subject to

---

[26] A true and correct copy of the First Mattson Declaration is attached to the RJN as **Exhibit C**.

[27] First Mattson Declaration at ¶ 1(b).

[28] A true and correct copy of the First Objection is attached to the RJN as **Exhibit D**.

[29] *See* First Objection at 6:1 – 9.

[30] *Id*. at 6:17 – 8:5. KSMP and the Committee are currently investigating ownership issues surrounding the LaSalle Property. For example, KSMP has learned that the tenant of the LaSalle Property has made substantial payments to KSMP, not Mrs. Mattson, and that KSMP has likely been paying all expenses related to the LaSalle Property.

[31] A true and correct copy of the First Asset Restraint Order is attached to the RJN as **Exhibit F**.

[32] First Asset Restraint Order at 5:9 – 18.

[33] A true and correct copy of the Second Modification Motion is attached to the RJN as **Exhibit G**.

involuntary bankruptcy proceedings on September 2, 2025," after which date "all properties he owns or controls will be administered by the bankruptcy estate and none may be available to him to exercise his rights to defend his criminal case."[34] In support of the Second Modification Motion, Mattson submitted the *Supplemental Declaration of Kenneth W. Mattson in Support of Defendant's Motion to Modify Pre-Trial Asset Restraint* [Mattson Crim. Docket No. 70-1] (the "<u>Second Mattson Declaration</u>").[35] In the Second Mattson Declaration, as in the First Mattson Declaration, Mattson stated that he purchased the Ocean Front Property in 2005 in his own name and transferred such property to KSMP "in connection with obtaining financing for the property."[36] Mattson then baldly stated that "[o]nce the loan was paid off, title should have reverted to me under the terms of the loan. When the loan was paid off, the title did not reflect any change in ownership."[37]

The government filed its opposition to the Second Modification Motion on August 6, 2025 [Mattson Crim. Docket No. 73] (the "<u>Second Objection</u>").[38] Among other things, the government noted that "Mattson cannot sell [the Subject Properties] to pay for his criminal defense . . . because (1) Mattson is subject, right now, to a bankruptcy court order that precludes such a sale, relief from which is unlikely, and (2) the properties do not belong to him, so they are not his to sell."[39] Mattson filed a reply [Mattson Crim. Docket No. 76] in support of the Second Modification Motion on August 8.[40]

---

[34] Second Modification Motion at 2:4 – 7.

[35] A true and correct copy of the Second Mattson Declaration is attached to the RJN as **Exhibit H**.

[36] Second Mattson Declaration at ¶ 22.

[37] *Id.* There was no documentary or other evidence provided to the Court (nor the Objecting Estate Fiduciaries) that this reversion existed anywhere other than in Mattson's mind, and in any event, no such title transfer was ever effectuated. KSMP is the owner of the Ocean Front Property and does not seek and will not consent to it being sold for the benefit of Ken Mattson in any manner, to fund his criminal defense or otherwise.

[38] A true and correct copy of the Second Objection is attached to the RJN as **Exhibit I**.

[39] Second Objection at 1:25 – 2:1.

[40] A true and correct copy of such reply is attached to the RJN as **Exhibit J**. Much of the text of the instant Motion, including this Court's alleged power to authorize an interlocutory sale and proposed "compromise," is lifted verbatim from such reply.

On August 13, 2025, the District Court issued the Second Asset Restraint Order, denying the Second Modification Motion. The Second Asset Restraint Order notes that "Mattson concedes that the bankruptcy court will have authority to bar him from selling properties after September 2 even if the proceeds of such sales might be used to fund his criminal defense" and, by effect of the Preservation Order, thus "implicitly concedes that the bankruptcy court has the same authority" prior to such date.[41] The District Court concluded as follows:

> Mattson cannot sell any of the properties in question without approval from the bankruptcy court. That is true now, just as Mattson concedes it will be true after September 2. Because Mattson has presented no indication that the bankruptcy court would approve sale of any of the properties even if this Court were to conclude that they are untainted assets, he has not made the required showing of a substantial claim under the Sixth Amendment. Accordingly, the Court denies Mattson's motion for a hearing on his renewed motion to modify pretrial asset restraint.[42]

## III.

## OBJECTION

### A. The Motion is Moot

The Court issued the Preservation Order pursuant to section 303(f) of the Bankruptcy Code, which authorizes a bankruptcy court to issue an order to restrict a putative debtor's ability to control or otherwise use its assets during the "gap period" between the filing of an involuntary petition and the entry of an order for relief. Thus, as a matter of law (and by its own terms), once the Order for Relief was entered on the Mattson Relief Date, the Preservation Order ceased to have any effect or applicability in the Mattson Individual Case. Because the Motion seeks relief from an order that is no longer in effect, it should be denied as moot.

This does not mean, however, that Mattson can now freely use or sell the Subject Properties and use the proceeds as he wishes. To the contrary—as a current chapter 11 debtor-in-possession (and likely soon to be chapter 7 debtor), "all legal or equitable interests of [Mattson] in property as

---

[41] Second Asset Restraint Order at 3:4 – 8.

[42] *Id*. at 4:17 – 5:1. In a footnote, the District Court also noted several other issues with the relief sought in the Second Modification Motion, including the lack of any evidence that Mattson has any ownership interest in the Ocean Front Property.

of the commencement of the case" and "[a]ll interests of [Mattson] and [Mattson's spouse] in community property as of the commencement of the case that is under the sole, equal or joint management and control of [Mattson]; or liable for an allowable claim against [Mattson]" is property of the estate (the "Mattson Estate").[43] Mattson's interests, if any, in a portion of the Farragut Property and the LaSalle Property[44] are now property of the Mattson Estate. Notwithstanding Mattson's evidence-free claims to the contrary, the Ocean Front Property belongs to KSMP and cannot be sold for the benefit of Mattson and/or his criminal defense counsel.[45]

B.   **The Motion Cannot be Granted as a Matter of Fact and Law**

Even if the Motion was not moot—or if the relief sought therein had been properly presented to the Court—it could not be granted as a matter of fact or law. Compensation of professional persons is governed by section 330 of the Bankruptcy Code, which requires (among other things) a showing of benefit to the estate.[46] To that end, the Motion is not even the proper posture for the relief Mattson seeks.

The Objecting Estate Fiduciaries are unaware of any case in which a bankruptcy court granted an individual debtor authority to sell assets belonging to that debtor's bankruptcy estate in order to use the proceeds of such sale to pay the debtor's personal criminal counsel. Mattson cites none, nor any provision of the Bankruptcy Code that would permit such extraordinary relief, because none exists. As set forth below, even if the Motion was not moot (it is) and the Motion was the correct means to obtain the relief he seeks (it is not), whether evaluated under section 327, 330, or 503 of the Bankruptcy Code, Mattson is not entitled to appropriate Mattson Estate property to compensate his personal criminal defense lawyers.

1.   *Estate Assets Cannot be Used to Fund Mattson's Criminal Defense Counsel*

---

[43]   11 U.S.C. § 541(a)(1) – (2).

[44]   As noted above, KSMP and the Committee are investigating whether all or a portion of the LaSalle Property is or should be property of the KSMP estate.

[45]   And, even if the Ocean Front Property belonged to Mattson and not to KSMP, it would be property of the Mattson Estate, just like the other Subject Properties, and could not be appropriated for Mattson's personal use.

[46]   11 U.S.C. § 330(a)(4)(A)(ii)(I).

Estate assets cannot be used to pay an individual debtor's criminal defense counsel.[47] While some bankruptcy cases *per se* prohibited a debtor's criminal counsel to be compensated from bankruptcy estate funds,[48] most courts follow a three-step reasoning process established by *In re Duque*[49]:

1. the request must be in the best interest of the estate based on a "threat [that is] actual and real, not some hypothetical or speculative benefit which may or may not be realized";[50]

2. the criminal counsel "must be for the estate and not for the personal benefit of the debtor's rights";[51] and

3. "potential violations of the debtor's constitutional rights posed by criminal investigations or prosecutions occurring after the filing are of concern to the criminal forum, not the bankruptcy court."[52]

Using these standards, "bankruptcy courts have rejected payment of criminal defense attorneys out of the estate. As one such court observed, courts have consistently concluded that a bankruptcy

---

[47] *See, e.g. In re Kearney*, 609 B.R. 383, 387 (Bankr. D. N.M. 2019) ("Almost all courts that have addressed the issue have held that criminal defense counsel does not benefit the estate.") (citing cases); *Wootton v. Ravkind* (*In re Dixon*), 143 B.R. 671, 678 (Bankr. N.D. Tex. 1992) ("Courts in this Circuit and elsewhere applying § 330 have generally refused to authorize the use of estate funds post-petition for payment of criminal counsel on the grounds that those expenses neither benefitted the estate, nor were actual and necessary to the estate.")

[48] *See, e.g., In re Delk*, 27 B.R. 86, 87 (Bankr. W.D. Okla. 1983); *In re Pajarito Am. Indian Art, Inc.*, 11 B.R. 807, 811 (Bankr. D. Ariz. 1981). *Cf. Official Comm. of Disputed Litig. Creds. v. McDonald Inv., Inc.*, 42 B.R. 981, 984 – 87 (N.D. Tex. 1984) and *In re Tashof*, 33 B.R. 225, 227 – 29 (Bankr. D. Md. 1983).

[49] *In re Duque,* 48 B.R. 965 (S.D. Fla. 1984); *see also Ferrara & Hantman v. Alvarez* (*In re Engel*), 124 F.3d 567, 575 (3d Cir. 1996); *In re Miell*, 2009 U.S. Dist. LEXIS 37357 (N.D. Iowa Aug. 19, 2009); *In re French*, 139 B.R. 485, 490 – 92 (Bankr. D. S.D. 1992); *In re Gherman*, 101 B.R. 367, 368 (Bankr. S.D. Fla. 1989); *In re United Church of the Ministers of God*, 84 B.R. 50, 55 – 56 (Bankr. E.D. Pa. 1988); *In re Southern Commodity Corp.*, 85 B.R. 892, 893 (Bankr. S.D. Fla. 1988); *In re Cmty. Home Fin. Servs.*, 2017 Bankr. LEXIS 1191, at *23 (Bankr. S.D. Miss. May 1, 2017); *In re Spurgeon*, 2008 Bankr. LEXIS 4188, at *2 – 7 (Bankr. E.D. Tenn. Sep. 18, 2008).

[50] 48 B.R. at 974 – 75.

[51] *Id.* at 975.

[52] *Id.*

debtor-in-possession cannot employ and use estate funds to pay criminal defense counsel in connection with the defense of criminal charges arising out of prebankruptcy activities."[53]

Citing to *Kearney*, Mattson claims that "[a] bankruptcy court must weigh a different set of factors in determining what is best for the estate"[54] and (without citation to any case) that "[w]hat is of paramount importance in this case, however, is Mr. Mattson's Sixth Amendment right to counsel."[55] *Kearney*, however, stands for the polar opposite proposition. Section II.E of *Kearney* is entitled "Debtor's Sixth Amendment Rights do not Trump the 'Benefit to the Estate' Requirement"[56] and that is precisely the conclusion the *Kearney* court reached.[57] Put simply, Mattson "is not deprived of any of his constitutional rights by [the Bankruptcy Code's] prohibition on using assets of the estate to fund his criminal defense."[58] Mattson's contention to the contrary "is not even superficially plausible."[59]

Judge Tigar aptly summarized the applicable law in the Second Asset Restraint Order:

> [T]he case law also supports the conclusion that a bankruptcy court is not required to allow liquidation of an estate's assets to fund a debtor's criminal defense. In a case cited by the government in its opposition but not addressed by Mattson in his reply, the Ninth Circuit considered a similar procedural posture, where a criminal defendant was subject to restraining orders by the Office of Thrift Supervision ("OTS") "to ensure that [his] assets would not be dissipated or hidden". *United States v. Spiegel*, 995 F.2d 138, 139 (9th Cir. 1993). The court affirmed the district court's refusal "to issue an order authorizing [the defendant] to use his own assets to pay attorneys' fees in

---

[53] *Miell*, 2009 U.S. Dist. LEXIS 23757, at *13 – 14 (cleaned up); *see also In re Stoecker*, 114 B.R. 965, 970 (Bankr. N.D. Ill. 1990) ("As a general rule, a debtor has no right to use estate assets to fund his criminal defense . . . Courts have rejected the argument that it was in the best interest of the estate to employ criminal counsel or to pay for the cost of services relating to a debtor's criminal defense.").

[54] In the first instance, the Objecting Estate Fiduciaries are unclear what "factors" can be derived from *Kearney*, as Mattson states; the citation to *Kearney* in the Motion does not contain a pin cite and the Objecting Estate Fiduciaries have not identified any such factors in the opinion.

[55] Motion at p. 3.

[56] *Kearney*, 609 B.R. at 388.

[57] *See also* Second Asset Restraint Order, 2025 U.S. Dist. LEXIS 157101, *6 ("a defendant's Sixth Amendment rights do not supersede the 'benefit to the estate' requirement that the bankruptcy court must consider") (cleaned up); *Dixon*, 143 B.R. at 679 ("Dixon's Sixth Amendment right does not entitle him to any greater rights in the Bankruptcy Court or any grater claims against the bankruptcy estate's assets.").

[58] *Official Comm. of Disputed Litig. Creds. v. McDonald Inv., Inc.*, 42 B.R. 981, 987 (N.D. Tex. 1984).

[59] *Id.*

advance and to pay counsel at their customary hourly rates, despite the OTS order to the contrary." *Id.* at 140 (citation modified). Analogizing the defendant's position to a defendant subject to a bankruptcy court order, the Ninth Circuit held that a district court could not "modify the OTS's order" even if that order "affect[ed] the exercise" of the defendant's constitutional right to counsel . . .

Even if this Court were not bound by *Spiegel*, the cases cited by Mattson are in accord. Although "Sixth Amendment issues are the concern of the court trying the criminal case, not the bankruptcy court," a defendant's Sixth Amendment rights do not "supersede[] the 'benefit to the estate' requirement" that the bankruptcy court must consider, and "[a]lmost all courts that have addressed the issue have held that criminal defense counsel does not benefit the estate." *In re Kearney*, 609 B.R. 383, 387-88 (Bankr. D.N.M. 2019). Paying criminal defense counsel would "benefit the debtor but not the estate," and the estate need not "be burdened with nonbeneficial expenses." *Id.* at 387, 389 . . .[60]

### 2. This Court Cannot Order an "Interlocutory Sale"

Mattson claims that the "Court may order an interlocutory sale of a property to 'stop the accruing of taxes, its fees, and HOA fees against its value' [or if] 'the property is subject to a mortgage or to taxes on which the owner is in default.'"[61] Mattson offers no explanation as to how this Court has the power to issue such a sale pursuant to 28 U.S.C. §§ 2001, 2002, and 2004 and Supplemental Fed. R. Civ. P. Rule G(7) of the Federal Rules of Civil Procedure, nor why a decision from an out-of-district criminal case supports the existence of such a power. Indeed, 28 U.S.C. §§ 2001, 2002, and 2004—***by their very terms***—do not apply to bankruptcy proceedings.[62] This Court need not consider this argument further.

*[Remainder of page intentionally left blank]*

---

[60] Second Asset Restraint Order, 2025 U.S. Dist. LEXIS 157101, at *5 – 7.

[61] Motion at p. 4 (citing *United States v. Dezfooli*, 2024 WL 4150750 (D. Nev. Sep. 10, 2024)).

[62] 28 U.S.C. § 2001(c) ("This section shall not apply to sales and proceedings under Title 11 . . ."); 28 U.S.C. § 2002 ("This section shall not apply to sales and proceedings under Title 11 . . ."); 28 U.S.C. § 2004 ("This section shall not apply to sales and proceedings under Title 11 . . ."). Similarly, Supplemental Rule G(7) of the Federal Rules of Civil Procedure, which would govern an interlocutory sale, expressly provides that any such sale "is governed by 28 U.S.C. §§ 2001, 2002, and 2004." Supplemental Rule G(7)(b)(iii).

# IV.
# **CONCLUSION**

For the reasons set forth above, the Objecting Estate Fiduciaries respectfully request that the Court deny the Motion, with prejudice.

Dated: September 10, 2025

PACHULSKI STANG ZIEHL & JONES LLP

By  */s/ Jason H. Rosell*
Jason H. Rosell

Attorneys for The Official Committee of Unsecured Creditors

Dated: September 10, 2025

KELLER BENVENUTTI KIM LLP

By  */s/ Dara Levinson Silveira*
Dara Levinson Silveira

Attorneys for the LFM Debtors

Dated: September 10, 2025

HOGAN LOVELLS US LLP

By  */s/ Erin N. Brady*
Erin N. Brady

Attorneys for KSMP