Jennifer C. Hayes (197252)
FINESTONE HAYES LLP
456 Montgomery Street, Suite 1300
San Francisco, CA 94104
Tel.:   (415) 616-0466
Fax:   (415) 398-2820
Email: jhayes@fhlawllp.com

Attorneys for Janina M. Hoskins,
Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

In re

KENNETH MATTSON,

Debtor.

Case No. 24-10714-CN
Chapter 7

**TRUSTEE'S NOTICE OF HEARING ON MOTION: (1) TO SELL REAL PROPERTY FREE AND CLEAR OF ENCUMBRANCE, SUBJECT TO OVERBIDS; (2) TO AUTHORIZE PAYMENT OF MORTGAGE, COMMISSIONS, AND OTHER EXPENSES; AND (3) FOR GOOD FAITH PURCHASER DETERMINATION**

<u>**INTEREST HOLDER AFFECTED BY THIS MOTION: UNITED STATES OF AMERICA**</u>

Date: April 10, 2026
Time: 11:00 a.m.
Ctrm: Via Zoom or In Person
       U.S. Bankruptcy Court
       1300 Clay St., 2nd Floor, Ctrm. 215
       Oakland, CA 94612.

**TO THE UNITED STATES OF AMERICA, ALL CREDITORS, THE OFFICE OF THE UNITED STATEST TRUSTEE, AND ALL INTERESTED PARTIES:**

TRUSTEE'S NOTICE OF MOTION TO SELL PROPERTY FREE AND CLEAR AND AUTHORIZING PAYMENTS                                                                                                         1

Case: 24-10714   Doc# 231   Filed: 03/12/26   Entered: 03/12/26 18:48:48   Page 1 of 6

**PLEASE TAKE NOTICE THAT a hearing is scheduled on April 10, 2026 at 11:00 a.m. via Zoom or in Person at the United States Bankruptcy Court, 1300 Clay Street, 2nd Floor, Courtroom 215, Oakland, California** on the Motion filed by Janina M. Hoskins (the "Trustee"), the duly appointed Chapter 7 trustee of the bankruptcy estate of Kenneth Mattson (the "Debtor") (1) to approve the sale of real property located at 62 Farragut Avenue #A, Piedmont, California 94610 (the "Property") pursuant to § 363(b), (f), and (m), subject to overbids; (2) to authorize payment of the mortgage, commissions, and other expenses related to the marketing and sale of the Property; and (3) to determine that the buyer(s) of the Property are for good faith purchaser(s) (the "Sale Motion"). The Motion is supported by the concurrently filed declaration of the Trustee ("Hoskins Declaration").

**PLEASE TAKE FURTHER NOTICE** that pursuant to B.L.R. 9014-1(c)(1), **any opposition to the requested relief shall be filed and served on the Trustee no later than 14 days before the actual scheduled hearing date,** *i.e.* **by no later than March 27, 2026**, and any reply shall be filed and served no later than 7 days before the actual scheduled hearing date, *i.e.* by no later than April 3, 2026.

**PLEASE TAKE FURTHER NOTICE** that counsel, parties, and other interested parties may attend in person in Courtroom 215 in Oakland, by Zoom video, or by Zoom telephone. Additional information on how to appear at the hearing is available on Judge Novack's Procedures page on the court's website, and information on how to attend the hearing by Zoom will be included with each calendar posted under Judge Novack's Calendar on the court's website, www.canb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE** that, if you would like a complete set of the moving papers, including the Motion, Hoskins Declaration, and any additional filed pleadings, please contact Jennifer C. Hayes at jhayes@fhlawllp.com.

A summary of the Motion is set forth below.

## I. BACKGROUND FACTS

1. This bankruptcy case was commenced as an involuntary Chapter 11 proceeding on November 22, 2024, by petitioning creditors LeFever Mattson and Windtree, LP, arising out of extensive allegations of prepetition misconduct by the Debtor in connection with real estate investment entities and investor funds. The Debtor allegedly engaged in years-long transactions involving the sale of undisclosed interests in limited liability companies and partnerships, as well as self-dealing property transfers, which resulted in substantial litigation exposure, investor claims, regulatory scrutiny and a federal criminal case.

2. Years prior to the commencement of the involuntary case, the Debtor acquired a fee interest in the Property, a single-family residence, which now belongs to the bankruptcy estate.

3. On September 12, 2017, a deed of trust in the sum of $5,600,000 was recorded against the Property in favor of BofI Federal Bank ("BofI") in the official records of Alameda County under Recorder's Serial Number 2017199139 (the "Mortgage"). BofI changed its name to Axos Bank. A loan modification agreement (the "Loan Modification Agreement") was entered into by and between Kenneth Mattson and Axos Bank, which amended the Mortgage. The Loan Modification Agreement was recorded in the official records of Alameda County on December 8, 2021, under Recorder's Serial Number 2021390655. LAFM Loan Owner, LLC

TRUSTEE'S NOTICE OF MOTION TO SELL PROPERTY FREE AND CLEAR AND AUTHORIZING PAYMENTS 2

(the "Lender") purchased the Mortgage from Axos Bank, and the loan was assigned to the Lender. The Lender financed the loan purchase, and Axos Bank maintains the collateral assignment of the Mortgage. On January 21, 2025, a Collateral Assignment of Deed of Trust was recorded in the official records of Alameda County under Recorder's Serial Number 2025010265 (the "Assignment"), pursuant to which the Mortgage and related loan documents were assigned to Lender.

4. On May 23, 2025, a lis pendens was recorded against the Piedmont Property in favor of the United States Government in the official records of Alameda County under Recorder's Serial Number 2025067539 (the "Lis Pendens").

5. On July 14, 2025, the Court approved a stipulation pursuant to which the Debtor consented to the entry of an order for relief. An order for relief was subsequently entered on September 5, 2025. Shortly thereafter, on September 15, 2025, the Debtor moved ex parte to convert the case to Chapter 7. After a hearing, the Court granted the motion to convert on September 22, 2025. The Trustee was thereafter appointed on September 25, 2025.

6. The Debtor's fee interest in the Property, a single-family residence, belongs to the bankruptcy estate.

7. The Lender holds an allowed secured claim against the Property in the *approximate*[1] sum of $5,000,000, comprised of outstanding principal in the sum of $4,146,907.14, plus pre- and post-petition interest at the non-default rate, and all reasonable documented fees and costs (including professional fees and servicing fees).

8. As set forth above, in addition, the United States of America recorded the Lis Pendens against the Property, based on its pending judicial forfeiture action against the Debtor, which was recorded on May 23, 2025, after the involuntary petitions were filed, but prior to entry of the order for relief.

9. On January 28, 2026, the Court entered an order approving the employment of Sotheby's International Realty and Village Associates Real Estate (together, the "Brokers") as the Trustee's real estate brokers.

10. The Brokers actively marketed the Property and presented the Trustee with offers. The Trustee reviewed and analyzed the offers and, as an exercise of her business judgment, selected what she believed to be the best and highest offer, made from prospective buyers Elisa Pandolfi and Brendan Mulligan (the "Buyers"). The Trustee presented a counteroffer to the Buyers, which they accepted. On March 9, 2026, the Trustee received the Buyers' deposit in the sum of $237,000. On March 10, 2026, the Buyers removed their sole contingency.

## II. KEY TERMS OF THE SALE AGREEMENT

11. The key documents that comprise the agreement for the purchase and sale of the Property are (1) the *California Residential Purchase Agreement and Joint Escrow Instruction and Addendum No. 1*; (2) the Trustee's *Counter-Offer*; and (3) the Buyers' *Contingency Removal No. Two* (together with the other related documents, the "Sale Agreement").

12. The proposed sale is to Elisa Pandolfi and Brendan Mulligan, *i.e.* the Buyers, for $7,900,000 with an initial deposit of $237,000, which has been received. As set forth above, the Buyers have removed all contingencies.

13. The Seller shall pay for a Natural Hazard Zone Disclosure Report provided by JCP-LGS Disclosures; smoke alarms, carbon monoxide detectors, and water heater bracing.

---

[1] The actual amount of the Lender's claim is subject to its payoff demand in accordance with the approved compromise.

TRUSTEE'S NOTICE OF MOTION TO SELL PROPERTY FREE AND CLEAR AND AUTHORIZING PAYMENTS    3

Seller shall also pay all of the County transfer taxes and fees and 50% of the city transfer taxes and fees. All other costs associated with the sale, other than the Buyers' 50% responsibility for the city transfer taxes and fees, shall be the sole responsibility of the Buyers.

14. Broker's commissions are a commission of 2.5% of the sale price, payable to the Trustee's Brokers, and an additional 2.5% shall be paid to the buyer's broker. The Trustee's Brokers have agreed to divide the 2.5% commission as follows: 65% to Sotheby's International and 35% to Village Associates Real Estate. *Id.* If there is no successful overbidder and sale price remains $7,900,000, the commission payable to the Trustee's Brokers totals $197,500, and the commission payable to the Buyers' broker totals an additional $197,500.

15. The sale is subject to overbids and approval by the Court.

16. The purpose of this sale is to realize the maximum value for the bankruptcy estate.

### III. LIEN CLAIMANTS

17. The preliminary title report (the "PTR") shows various obligations against the Property.

18. The PTR shows a voluntary lien held by the Lender, which holds the first deed of trust against the Property. Upon Court approval, the Trustee will cause the Lender to be paid out of the sale proceeds as set forth in detail below.

19. The PTR also shows the Lis Pendens in favor of the federal government.

### IV. PAYMENT OF MORTGAGE, BROKER'S COMMISSIONS, COSTS TO PREPARE THE PROPERTY FOR SALE, AND OTHER EXPENSES

20. The Trustee requests authority to pay the Lender out of escrow on its note and deed of trust, as well as its related legal expenses. The payoff on this claim, which the Trustee is informed and believe is in the approximately sum of $5,000,000, will be provided in advance of the hearing on the Sale Motion.

21. The Trustee requests authority to pay the real estate commissions of the Broker as well as any other ordinary costs of sale, including but not limited to all outstanding property taxes owing as of the sale closing date.

22. The Trustee requests authority to pay expenses of the Broker incurred in preparing the Property for sale, including property maintenance, locksmithing, and other actions to benefit the bankruptcy estate, including:
   a. Staging $18,100 (approximate)
   b. Pest Inspection $1,100 (approximate)
   c. Cleaning $2,500 (approximate)
   d. Landscape cleanup $2,820 (approximate)
   e. Junk removal $25,000 (estimate)

### V. PROPOSED TERMS OF OVERBID PROCEDURES

23. The proposed sale of the Property is subject to overbid.

24. To be a qualified overbidder, overbidder must agree to same or better terms of existing sale contract (including accepted counteroffers or other addenda) and waive all contingencies. Overbidder must provide a deposit of $240,000 via cashier's check or other good funds, to be delivered to counsel for the Seller (Janina M. Hoskins, solely in her capacity as Chapter 7 Trustee), Stephen D. Finestone/Jennifer C. Hayes, Finestone Hayes LLP, 456 Montgomery Street, Suite 1300, San Francisco, CA 94104 or to Seller's realtor, Anne Herrera. Overbidders must provide proof of funds and financial ability to complete this transaction, which

TRUSTEE'S NOTICE OF MOTION TO SELL PROPERTY FREE AND CLEAR AND AUTHORIZING PAYMENTS                                                                     4

shall be evaluated and determined in my sole and absolute discretion. Overbidders must provide proof of funds and financial ability to complete this transaction, which shall be evaluated and determined by Seller in her sole and absolute discretion.

25. Overbidders must provide a notice of their intent to participate in the auction, as well as delivery of their deposit, no later than 12:00 Pacific Time on April 6, 2026. In the event the Trustee receives a qualifying overbid, an auction will be held virtually via telephone, Zoom, Microsoft Teams, or similar platform at a date and time to be determined by the Trustee. The Buyers and any bidders will be notified of the date, time, and format of the auction, if any occurs.
   a. Minimum initial overbid of $8,000,000.
   b. Minimum overbid increments of $50,000 each.

26. The Trustee reserves the right, in her sole discretion, to refuse bids that do not, in her sole opinion, conform with the terms of the Agreement. The Trustee also, in her sole discretion, will determine the highest and/or best bid and whether a bid is equal to or better than the offer by the Buyers.

## VI. LEGAL ANALYSIS

A. The Proposed Sale Is a Sound Exercise of the Trustee's Business Judgment

1. Section 363 provides that a trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." § 363(b).

2. Courts generally hold that approval of a proposed sale of assets of a debtor under § 363 outside the ordinary course of business and prior to the confirmation of a plan of reorganization is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the trustee or debtor-in-possession.

3. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. As long as the sale appears to enhance a debtor's estate, court approval of a debtor's decision to sell should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.

4. Applying § 363, the proposed sale of the Property should be approved. As set forth above, the Trustee has determined that the best method of maximizing the value of this Property is through a prompt sale of the Property, following marketing of the Property by an experienced broker. The Agreement with the Buyers is for $7,900,000, which the Trustee finds to be fair and reasonable. In addition, the final sale price will be tested by an open and fair auction process—the best means, under the circumstances, for ensuring that the maximum price is being paid for the Property.

B. The Sale of the Property Free and Clear of Liens and Other Interests Is Authorized by § 363(f)

5. Section § 363(f) provides that the Trustee may sell property free and clear of any interest in such property if: (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

6. The Trustee seeks to sell the Property free and clear of the Lis Pendens, with the lien attaching to the net sale proceeds to the same extent, validity, and priority, if any, that it attaches to the Property. For purposes of the relief sought by the Trustee, "net sale proceeds"

shall mean all sums paid to the Trustee for the Property, less the mortgage, the carveout from the mortgage pursuant to the Trustee's approved compromise with the Lender, broker commissions, costs of staging, and all other regular costs of sale associated with the sale the Property (the "Net Sale Proceeds").

7. The Lis Pendens is in *bona fide* dispute, because the federal government's criminal case against the Debtor is still live, and no adjudication has been entered. Thus, the government's asserted forfeiture and/or restitution interest depends on factual determinations that have not yet occurred, there exists an objective basis for a dispute regarding the validity and extent of any present interest in the Property.

8. Applicable nonbankruptcy law permits sale of the Property free and clear of such interest, because the Lis Pendens would be eliminated if the Lender foreclosed on the Property. Here, a foreclosure sale held by the first deed of trust would transfer the Property free and clear of all junior claims, so the Property may be sold free and clear of the Lis Pendens pursuant to §363(f)(1).

9. Section 363(f)(2) provides that Trustee may sell property free and clear of any interest in such property if the interest holder consents. When a lienholder receives adequate notice of a motion to sell free and clear of its lien or interest and fails to object, that constitutes implied consent sufficient to satisfy § 363(f)(2). Implied consent is an alternative basis on which the Trustee seeks to sell the Property free and clear of the junior liens or any other interest, with such liens or interest to attach to the Net Sale Proceeds to the same extent, validity, and priority that they attached to the Property.

C. The Winning Bidder Should Be Afforded Protection Under § 363(m) as a Good-Faith Purchaser

10. Section 363(m) protects a good-faith purchaser's interest in property purchased from the debtor's estate notwithstanding that the sale conducted under § 363(b) is later reversed or modified on appeal.

11. The selection of the Buyers was the product of a good faith and arm's length offer and acceptance, which will be tested by an opportunity for overbids and an auction. The Trustee requests a finding that the Buyers or the winning bidder, as applicable, are a good-faith purchaser entitled to the protections of § 363(m). The Buyers, or the winning bidder, will file an appropriate declaration in support of this request once the identity of the buyer is certain.

D. Request for Waiver of Stay of Entry of Order

12. The Trustee requests that the order approving the proposed sale provides: "This Order is effective upon entry, and the stay otherwise imposed by Civil Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply."

Dated March 12, 2026    FINESTONE HAYES LLP

                        */s/ Jennifer C. Hayes*
                        Attorneys for Janina M. Hoskins,
                        Chapter 7 Trustee of the Kenneth Mattson
                        Bankruptcy Estate

TRUSTEE'S NOTICE OF MOTION TO SELL PROPERTY FREE AND CLEAR AND
AUTHORIZING PAYMENTS                                                                 6