Docusign Envelope ID: ED229740-A629-4CCC-90B1-A716CE06D05D

Jennifer C. Hayes (197252)
FINESTONE HAYES LLP
456 Montgomery Street, Suite 1300
San Francisco, CA 94104
Tel.:   (415) 616-0466
Fax:   (415) 398-2820
Email: jhayes@fhlawllp.com

Attorneys for Janina M. Hoskins,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SANTA ROSA DIVISION**

| | |
|---|---|
| In re<br><br>KENNETH MATTSON,<br><br>Debtor. | Case No. 24-10714-CN<br>Chapter 7<br><br>**DECLARATION OF MELISSA IRENE SEVERINI AND KEVIN DAVID CLARK IN SUPPORT OF 363(m) FINDING**<br><br>Date: April 10, 2025<br>Time: 11:00 a.m.<br>Ctrm: Via Zoom or In Person<br>　　 U.S. Bankruptcy Court<br>　　 1300 Clay St., 2nd Floor, Ctrm. 215<br>　　 Oakland, CA 94612 |

We, Melissa Irene Severini and Kevin David Clark, declare as follows:

1.      The following statements are based on our own personal knowledge and observation.  If called to testify on this matter, we could and would competently testify to the matters set forth in this Declaration.  We submit this Declaration in support of the good faith purchaser determination requested in connection with the Chapter 7 Trustee's *Motion: (1) to Sell Real Property Free and Clear of Encumbrance, Subject to Overbids; (2) Authorize Payment of Mortgage, Commissions, and Other Expenses; and (3) for Good Faith Purchaser Determination* (ECF 230, the "Motion") regarding 62 Farragut Avenue #A, Piedmont, California 94610 (the "Property").

DECLARATION OF BUYERS IN SUPPORT OF GOOD FAITH PURCHASER FINDING            1

2. We offered to purchase the Property pursuant to the overbid procedures set forth in the Motion. Attached as **Exhibit 1** to this Declaration in an authentic copy of the complete *California Residential Purchase Agreement and Joint Escrow Instruction* dated April 3, 2026 and the other related documents.

3. After complying with the bid procedures set forth in the Motion, including the timely submission of the required purchase offer and $240,000 deposit, we participated in the Zoom auction held by the Trustee on April 7, 2026 at 3:30 p.m. We were the winning overbidders at the auction, at a price of $8,400,000. We are purchasing the Property on an "as-is" basis, with absolutely no representations or warranties.

4. We do not have any relationship with the Trustee, the Debtor, or, to the best of our knowledge, any major creditors of the Debtor, or any of their officers, directors, employees, attorneys, or representatives.

5. Following the completion of the proposed sale, our relationship with the parties named in the above paragraph will not change.

6. No offers of employment or compensation have been made or will be offered to the Debtor or any affiliated individuals in connection with the proposed sale.

7. The only consideration transferred, contemplated, or promised to be transferred is as set forth above. No consideration will be given to any person other than the Trustee, solely in her role as the Chapter 7 trustee of the Debtor's bankruptcy estate.

8. Our offer to purchase the Property is made in good faith and at arm's length. We have not engaged in any fraud or collusion with the Trustee or any other bidder or other party. We have not made any attempt to take unfair advantage of the Trustee or any other bidder or other party.

DECLARATION OF BUYERS IN SUPPORT OF GOOD FAITH PURCHASER FINDING        2

Docusign Envelope ID: ED229740-A629-4CCC-90B1-A716CE06D05D

We declare under penalty of perjury that the above statements are true and with respect to those matters stated on information and belief, I believe them to be true. This declaration was executed in ___Alameda___ County, California, on April __7__, 2026.

DocuSigned by:

*Melissa Irene Severini*     4/9/2026

Melissa Irene Severini

DocuSigned by:

*Kevin David Clark*     4/9/2026

Kevin David Clark

DECLARATION OF BUYERS IN SUPPORT OF GOOD FAITH PURCHASER FINDING          3

# Exhibit 1





CALIFORNIA
ASSOCIATION
OF REALTORS®

# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
### (As required by the Civil Code)
### (C.A.R. Form AD, Revised 12/24)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code §§ 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

## SELLER'S AGENT

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## BUYER'S AGENT

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. This includes a Buyer's agent under a buyer-broker representation agreement with the Buyer. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## AGENT REPRESENTING BOTH SELLER AND BUYER

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

## SELLER AND BUYER RESPONSIBILITIES

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of §§ 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully.**

**Note: Real estate broker commissions are not set by law and are fully negotiable.**

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

Buyer/Seller/Landlord/Tenant _*Melissa Irene Severini*_____ *Melissa Irene Severini* Date 4/6/2026

Buyer/Seller/Landlord/Tenant _CDD836A7897F4F5... *Kevin David Clark*_____ *Kevin David Clark* Date 4/6/2026
                              096A4CB68438466...

Agent _____ *Compass* _____ DRE Lic. # _*01527235*_
                  Real Estate Broker (Firm)

By _*Erin Fleming*_____ *Erin Fleming* DRE Lic. # _*01898014*_ Date 4/4/2026
   DBFF3062FF0441... (Salesperson or Broker-Associate, if any)

**AD REVISED 12/24 (PAGE 1 OF 2)**

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 5 of 88

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**



f9e923ac-ee5f-46cf-9efa-72a007bae2dd

## CIVIL §§ 2079.13 - 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13**. As used in this section and §§ 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with § 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with § 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes a vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with § 1940) of Title 5, (3) a mobilehome, as defined in § 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in § 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of § 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in § 18007 of the Health and Safety Code, or a mobilehome as defined in § 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in § 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Single-family residential property" or "single-family residential real property" means any of the following: (1) Real property improved with one to four dwelling units, including a leasehold exceeding one year's duration. (2) A unit in a residential stock cooperative, condominium, or planned unit development. (3) A mobilehome or manufactured home when offered for sale or sold through a real estate broker pursuant to § 10131.6 of the Business and Professions Code. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of § 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(o)** "Buyer's agent" means an agent who represents a buyer in a real property transaction. **(p)** "Buyer-broker representation agreement" means a written contract between a buyer of real property and a buyer's agent by which the buyer's agent has been authorized by the buyer to provide services set forth in subdivision (a) of § 10131 of the Business and Professions Code for or on behalf of the buyer for which a real estate license is required pursuant to the terms of the contract.
**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in § 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in § 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable before execution of a buyer-broker representation agreement and execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to § 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
**2079.16** Reproduced on Page 1 of this AD form.
**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by § 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
**2079.18** (Repealed pursuant to AB-1289)
**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of § 2079.14 and § 2079.17 are complied with.
**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*
**AD REVISED 12/24 (PAGE 2 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

f9e923ac-ee5f-46cf-9efa-72a007bae2dd

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



**COMPASS**

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, Revised 12/25)

Date Prepared: _**04/03/2026**_

**1. OFFER:**
 **A. THIS IS AN OFFER FROM** _**Melissa Irene Severini, Kevin David Clark**_ ("Buyer").
 **B. THE PROPERTY** to be acquired is _**62 Farragut Ave, #A**_, situated in
 _**Piedmont**_ (City), _**ALAMEDA**_ (County), California, _**94610**_ (Zip Code),
 Assessor's Parcel No(s).___**051-4786-007-00**___("Property").
 **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
 **C. THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**
 **D.** Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.
**2. AGENCY:**
 **A. DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationship" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
 **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
 **Seller's Brokerage Firm** _**Village Associates Real Estate**_ License Number _**01301393**_
 Is the broker of (check one): ☒ the Seller; or ☐ both the Buyer and Seller (Dual Agent).
 **Seller's Agent** _**Alexis Thompson**_ License Number _**01849227**_
 Is (check one): ☒ the Seller's Agent (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).
 **Buyer's Brokerage Firm** _**Compass**_ License Number _**01527235**_
 Is the broker of (check one): ☒ the Buyer; or ☐ both the Buyer and Seller (Dual Agent).
 **Buyer's Agent** _**Erin Fleming**_ License Number _**01898014**_
 Is (check one): ☒ the Buyer's Agent (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).
 **C.** ☐ More than one Brokerage represents ☐ Seller, ☐ Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
 **D. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
**3. TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 17 pages. The Parties are advised to read all 17 pages.

| | Para # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| **A** | 5, 5B (cash) | **Purchase Price** | $ _**8,000,000.00**_ | ☒ All Cash |
| **B** | | **Close Of Escrow (COE)** | _____ Days after Acceptance OR on _____ (date) | |
| **C** | 32A | **Expiration of Offer** | 3 calendar days after all Buyer Signature(s) or _____ (date), at 5PM or _____ ☐ AM/☐ PM | |
| **D(1)** | 5A(1) | **Initial Deposit Amount** | $ _**240,000.00**_ ( _**3.00**_ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or _**1**_) business days after Acceptance by wire transfer **OR** ☐ _____ |
| **D(2)** | 5A(2) | ☐ **Increased Deposit** | See attached Increased Deposit Addendum (C.A.R. Form IDA) | |
| **E(1)** | 5C(1) | **Loan Amount(s):** First / Interest Rate / Points / If FHA or VA checked, Deliver list of lender required repairs | $ _____ (_____% of purchase price) Fixed rate or ☐ Initial adjustable rate • not to exceed _____% • Buyer to pay up to _____ points to obtain the rate above 17 (or _____) Days after Acceptance | Conventional or, if checked, ☐ FHA (Forms FVAC/HID attached) ☐ VA (Form FVAC attached) ☐ Seller Financing ☐ Other: _____ |
| **E(2)** | 5C(2) | Additional Financed Amount / Interest Rate / Points | $ _____ (_____% of purchase price) Fixed rate or ☐ Initial adjustable rate • not to exceed _____% • Buyer to pay up to _____ points to obtain the rate above | Conventional or, if checked, ☐ Seller Financing ☐ Other: _____ |
| **E(3)** | 7A | **Occupancy Type** | Primary, or if checked, ☐ Secondary ☐ Investment | |
| **F** | 5D | **Balance of Down Payment** | $ _**7,760,000.00**_ | |
| | | **PURCHASE PRICE TOTAL** | $ _**8,000,000.00**_ | |

© 2025, California Association of REALTORS®, Inc.

**RPA REVISED 12/25 (PAGE 1 OF 17)**

Buyer's Initials  MIS / KDC Seller's Initials  JMH



Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 7 of 88

Erin Fleming

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 17)**

bd9d94e0-8513-47f9-b8cf-e8fd0219a2f2

Property Address:_____ **62 Farragut Ave, #A, Piedmont, CA 94610** _____ Date:_____*04/03/2026*_____

| G | | SELLER PAYMENT TO COVER BUYER EXPENSES AND COSTS | | |
|---|---|---|---|---|
| G(1) | 5E | ☐ **Seller Credit to Buyer** | $ _____ | For closing costs |
| G(2) | | **ADDITIONAL SELLER CREDIT TERMS (does not include buyer broker compensation):** _____ _____ | | |
| G(3) | 18A | ☒ **Seller Payment to Compensate Buyer's Broker** | **Seller agrees to pay Buyer's Broker**, out of the transaction proceeds, __*2.5*__ % of the final purchase price AND, if applicable $ _____ OR, if checked ☐ $ _____. | |
| H(1) | 5B | **Verification of All Cash** (sufficient funds) | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(2) | 6A | **Verification of Down Payment and Closing Costs** | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(3) | 6B | **Verification of Loan Application** | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| I | | **Intentionally Left Blank** | | |
| J | 16 | **Final Verification of Condition** | 5 (or _____) Days prior to COE | |
| K | 23 | **Assignment Request** | 17 (or _____) Days after Acceptance | |
| L | | **CONTINGENCIES** | **TIME TO REMOVE CONTINGENCIES** | **CONTINGENCY REMOVED** |
| L(1) | 8A | **Loan(s)** | 17 (or _____) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | **Appraisal:** Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ _____ | 17 (or _____) Days after Acceptance | ☒ No appraisal contingency Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | **Investigation of Property** | 17 (or _____) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | **Informational Access to Property** 17 (or _____) Days after Acceptance Buyer's right to access the Property for informational purposes is **NOT** a contingency, does **NOT** create cancellation rights, and applies even if contingencies are removed. | | Any contingency in L(1)-L(8) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form CR-B) and checking the applicable box therein. Removal or Waiver at time of offer is against Agent advice. See **paragraph 8I**. |
| L(4) | 8D | **Insurance** | 17 (or _____) Days after Acceptance | |
| L(5) | 8E, 14A | **Review of Seller Documents** | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(6) | 8F, 13A | **Preliminary ("Title") Report** | 17 (or _____) Days after Acceptance or 5 Days after Delivery, whichever is later | |
| L(7) | 8G, 11M | **Common Interest Disclosures** Per Civil Code § 4525 or Agreement | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(8) | 8H, 9B(6) | **Review of leased or liened items** (E.g. solar panels or propane tanks) | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | ☒ **CR-B attached** |
| L(9) | 8K | **Sale of Buyer's Property**. Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ **C.A.R. Form COP attached** | | |
| M | | **Possession** | **Time for Performance** | **Additional Terms** |
| M(1) | | **Time of Possession** | Upon notice of recordation, OR ☐ 6 PM or ☐ _____ ☐ AM/☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7D | **Seller Occupied or Vacant units** | COE date or, if checked below, ☐ _____ days after COE (29 or fewer days) ☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | 4A, 7A | **Occupied units by tenants or anyone other than the Seller** | Subject to tenant rights, unless primary or secondary residence in **3E(3)**, or Otherwise Agreed (TOPA may be used) | See **7A** if TOPA is not attached. ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) attached. |
| N | | **Documents/Fees/Compliance** | **Time for Performance** | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or _____) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or _____) Days after Delivery | |
| N(3) | 11M(2) | Time to pay fees for ordering HOA Documents | 3 (or _____) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or _____) Days after Acceptance | |
| N(5) | 24 | Evidence of representative authority | 3 Days after Acceptance | |
| O | | **Intentionally Left Blank** | | |

**RPA REVISED 12/25 (PAGE 2 OF 17)**    Buyer's Initials ___ MIS ___ / ___ KDC ___    Seller's Initials ___ JMH ___ / _____

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 8 of 88

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 17)**

*Erin Fleming*



bd9d94e0-8513-47f9-b8cf-e8fd0219a2f2

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

Property Address: **62 Farragut Ave, #A, Piedmont, CA 94610**     Date: **04/03/2026**

| P | Items Included and Excluded | | |
|---|---|---|---|
| P(1) | 9 **Items Included - All items specified in Paragraph 9B are included and the following, if checked:** | | |

☒ Stove(s), oven(s), stove/oven combo(s);
☒ Refrigerator(s);
☒ Wine Refrigerator(s);
☒ Washer(s);
☒ Dryer(s);
☒ Dishwasher(s);
☒ Microwave(s);
**Additional Items Included:**
☒ _____ *All working appliances* _____.

☐ Video doorbell(s);
☐ Security camera equipment;
☐ Security system(s)/alarm(s), other than separate video doorbell and camera equipment;
☐ Smart home control devices;
☐ Wall mounted brackets for video or audio equipment;
☒ _____ *all working home security equipment* _____.
☐ _____.

☐ Above-ground pool(s) /☐ spa(s);
☑ Bathroom mirrors, unless excluded below;
☐ Electric car charging systems and stations;
☐ Potted trees/shrubs;
☐ _____.
☐ _____.

| P(2) | **Excluded Items:** ☐ _____ ; ☐ _____ ; ☐ _____ ; |
|---|---|

| Q | Allocation of Costs | | | |
|---|---|---|---|---|
| | **Para #** | **Item Description** | **Who Pays** (if Both is checked, cost to be split equally unless Otherwise Agreed) | **Additional Terms** |
| Q(1) | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | ☐ Buyer ☒ Seller ☐ Both _____ | ☐ Environmental<br>☐ Other _____ |
| | | | ☒ Provided by: _____ *JCP-LGS Disclosures* | |
| Q(2) | | Optional Wildfire Disclosure Report | ☐ Buyer ☐ Seller ☐ Both _____ | Provided by: _____ |
| Q(3) | | (A) _____ Report<br>(B) _____ Report | ☐ Buyer ☐ Seller ☐ Both _____<br>☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(4) | 10B(1) | Smoke alarms, CO detectors, water heater bracing | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(5) | 10A<br>10B(2) | Government Required Point of Sale **inspections**, **reports** | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(6) | 10B(2) | Government Required Point of Sale **corrective/remedial actions** | ☒ Buyer ☐ Seller ☐ Both _____ | |
| Q(7) | 19B | Escrow Fee | ☐ Buyer ☐ Seller ☐ Both _____ ☒ Each to pay their own fees<br>Escrow Holder: _____ *Old Republic Title Compacy-Michael Gatti* | |
| Q(8) | 13 | Owner's title insurance policy | ☒ Buyer ☐ Seller ☐ Both _____<br>Title Co. (If different from Escrow Holder): _____ *Old Republic Title* | |
| Q(9) | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| Q(10) | | County transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(11) | | City transfer tax, fees | ☐ Buyer ☐ Seller ☒ Both _____ *50/50* _____ | |
| Q(12) | 11M(2) | HOA fee for preparing disclosures | Seller | |
| Q(13) | | HOA certification fee | Buyer | |
| Q(14) | | HOA transfer fees | ☐ Buyer ☐ Seller ☐ Both _____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| Q(15) | | Private transfer fees | Seller, or if checked, ☐ Buyer ☐ Both _____ | |
| Q(16) | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(17) | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(18) | 10C | Home warranty plan chosen by Buyer. Coverage includes, but is not limited to: *Buyers Agent to purchase* _____ | ☒ Buyer ☐ Seller ☐ Both _____<br>☐ Buyer waives home warranty plan | If Seller or Both checked, Seller's cost not to exceed $_____.<br>Issued by: *First American Home Warranty* |
| R | **OTHER TERMS:** *Escrow will close the later of 15 days after the entry of the order by the bankruptcy court authoring the sale, or the first business day thereafter.* _____<br><br>Addendums #1 and #2, plus Trustee Declaration with Exhibit A are incorporated into this contract. _____ |

**RPA REVISED 12/25 (PAGE 3 OF 17)**     Buyer's Initials [MIS] / [KDC]     Seller's Initials [JMH] / _____

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 9 of 88

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 17)**

 *Erin Fleming*  EQUAL HOUSING OPPORTUNITY

bd9d94e0-8513-47f9-b8cf-e8fd0219a2f2

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

Property Address:_____**62 Farragut Ave, #A, Piedmont, CA 94610**_____ Date:_____*04/03/2026*_____

**4. PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)

**A. PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
☐ Mixed Use Purchase Addendum (C.A.R. Form MU-PA)       ☐ Other _____

**B. OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
☒ Addendum #_____*1*_____ (C.A.R. Form ADM)       ☐ Short Sale Addendum (C.A.R. Form SSA)
☐ Back Up Offer Addendum (C.A.R. Form BUO)       ☐ Court Confirmation Addendum (C.A.R. Form CCA)
☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)       ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
☒ Other _____*EBPAA*_____       ☐ Other _____

**C. BUYER AND SELLER ADVISORIES: (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)**
☑ Buyer's Investigation Advisory (C.A.R. Form BIA)       ☑ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
☑ Wire Fraud Advisory (C.A.R. Form WFA)       ☑ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
                                                                         (Parties may also receive a privacy disclosure from their own Agent.)
☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)       ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
☐ Trust Advisory (C.A.R. Form TA)       ☐ Probate Advisory (C.A.R. Form PA)
☐ REO Advisory (C.A.R. Form REO)       ☐ Other _____
☐ Other _____       ☐ Other _____

**5. ADDITIONAL TERMS AFFECTING PURCHASE PRICE**: Buyer represents that funds will be good when deposited with Escrow Holder.

**A. DEPOSIT:**
(1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.
(2) **RETENTION OF DEPOSIT: Paragraph 29, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney: (i) Before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code; and (ii) Regarding possible liability and remedies if Buyer fails to deliver the deposit.**

**B. ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

**C. LOAN(S):**
(1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.
(2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.
(3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.
(4) **FHA/VA: If FHA or VA is checked in paragraph 3E(1),** a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1),** Deliver to Seller written notice (C.A.R. Form RR or AEA) **(i)** of any lender requirements that Buyer requests Seller to pay for or otherwise correct or **(ii)** that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

**D. BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

**E. LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6. ADDITIONAL FINANCING TERMS:**

**A. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.

**B. VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

**C. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**RPA REVISED 12/25 (PAGE 4 OF 17)**       Buyer's Initials _____ / _____   Seller's Initials _____ / _____

Buyer's Initials: MIS / KDC   Seller's Initials: JMH / Initial

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 10 of 88

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 17)**

*Eric Fleming*

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

Property Address:_____ **62 Farragut Ave, #A, Piedmont, CA 94610** _____ Date:___ **04/03/2026** ___

**7. CLOSING AND POSSESSION:**

**A. OCCUPANCY:** If Buyer intends to occupy as a primary or secondary residence (see **paragraph 3E(3)**), and unless Otherwise Agreed, such as in C.A.R. Form TOPA: **(i)** the unit Buyer intends to occupy shall be vacant at the time possession is delivered to Buyer, and **(ii)** if the Property contains more than one unit, within **3 Days** after Acceptance Buyer shall give Seller written notice of which unit Buyer intends to occupy. Occupancy may impact available financing. **Seller shall disclose to Buyer if occupied by tenants or persons other than Seller, and attach C.A.R. Form TOPA in a counter offer if not part of Buyer's offer.**

**B. CONDITION OF PROPERTY ON CLOSING:** Unless Otherwise Agreed: **(i)** the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; **(iii)** Except as specified in **paragraph 9C**, Seller is not responsible to repair any holes left after the removal of any wall hangings (such as pictures and mirrors), brackets, nails or other fastening devices; and **(iv)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring Legal Action, as per this Agreement, to receive reasonable costs from Seller.

**C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

**D. SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed: The Parties are advised to **(i)** consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and **(ii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties. Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**E. At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

**F.** Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**8. CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

**A. LOAN(S):**

(1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR-B form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**

(2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Insurance contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Insurance contingency but not the loan contingency.

(3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.

(4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(5) **NO LOAN CONTINGENCY:** If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**B. APPRAISAL:**

(1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR-B form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.

(2) **NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.

(3) **FAIR APPRAISAL ACT NOTICE:**

(A) Any appraisal of the property is required to be unbiased, objective, and not influenced by improper or illegal considerations, including, but not limited to, any of the following: race, color, religion (including religious dress, grooming practices, or both), gender (including, but not limited to, pregnancy, childbirth, breastfeeding, and related conditions, and gender identity and gender expression), sexual orientation, marital status, medical condition, military or veteran status, national origin (including language use and possession of a driver's license issued to persons unable to provide their presence in the United States is authorized under federal law), source of income, ancestry, disability (mental and physical, including, but not limited to, HIV/AIDS status, cancer diagnosis, and genetic characteristics), genetic information, or age.

(B) If a buyer or seller believes that the appraisal has been influenced by any of the above factors, the seller or buyer can report this information to the lender or mortgage broker that retained the appraiser and may also file a complaint with the Bureau of Real Estate Appraisers at https://www2.brea.ca.gov/complaint/ or call (916) 552-9000 for further information on how to file a complaint.

**RPA REVISED 12/25 (PAGE 5 OF 17)**

Buyer's Initials ___MIS___ / ___KDC___   Seller's Initials ___JMH___ / _____

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 11 of 88

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 17)**

bd9d94e0-8513-47f9-b8cf-e8fd0219a2f2

Property Address:_____**62 Farragut Ave, #A, Piedmont, CA 94610**_____ Date:___*04/03/2026*___

**C. INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12**.

**D. INSURANCE:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's assessment of the availability and approval of the cost for any insurance policy desired under this Agreement.

**E. REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's review and approval of Seller's documents required in **paragraph 14A**.

**F. TITLE:**
(1) This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.
(2) Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**G. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(7)**, contingent upon Buyer's review and approval of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11M** ("CI Disclosures").

**H. BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY (IF APPLICABLE):** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(8)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(8)**, refuses or is unable to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**I. REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**J. REMOVAL OF CONTINGENCY OR CANCELLATION:**
(1) **For any contingency specified in paragraph 3L, 8, or elsewhere, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**
(2) For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after Delivery of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.
(3) If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**K. SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(9)**.

**9. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

**B. ITEMS INCLUDED IN SALE:**
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window) and any associated hardware and rods, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool heaters, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P**, **if currently existing at the time of Acceptance.**
**Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P(2)** or excluded by Seller in a counter offer.
(3) Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.
(4) Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.
(5) Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Seller shall de-list any devices from any personal accounts and shall cooperate with any transfer of services to Buyer. Buyer is advised to change all passwords and ensure the security of any smart home features.

**RPA REVISED 12/25 (PAGE 6 OF 17)**

Buyer's Initials _MLS_ / _KDC_  Seller's Initials _JMH_ / _____

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 12 of 88

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 17)**

Property Address: **62 Farragut Ave, #A, Piedmont, CA 94610**   Date: *04/03/2026*

(6) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller, within the time specified in **paragraph 3N(1)**, shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and **(ii)** Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

(7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6),** and **(ii)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

C. **ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2); (ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

10. **ALLOCATION OF COSTS:**
A. **INSPECTIONS, REPORTS, TESTS AND CERTIFICATES: Paragraphs 3Q(1), (2), (3), and (5)** only determine who is to pay for the inspection, report, test, certificate, or service mentioned; **it does not determine who is to pay for any work recommended or identified in any such document. Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).** Any reports in these paragraphs shall be Delivered in the time specified in **paragraph 3N(1).**
B. **GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**
(1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4)**. If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.
(2) **POINT OF SALE REQUIREMENTS:**
(A) Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by the Party specified in **paragraphs 3Q(5) and 3Q(6)** and any such repair, shall be completed prior to final verification of Property, unless Otherwise Agreed. Defensible space compliance shall be determined as agreed in C.A.R. Form FHDS. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.
(B) Buyer shall be provided, within the time specified in **paragraph 3N(1)**, unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.
(3) **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.
(4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.
C. **HOME WARRANTY:**
(1) Buyer shall choose the home warranty plan and any optional coverages. Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18)**. Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer and their cost.
(2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

11. **STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
A. **TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**
(1) Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).
(2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.

**RPA REVISED 12/25 (PAGE 7 OF 17)**   Buyer's Initials __MIS__ / __KDC__   Seller's Initials __JMH__ / _____

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 13 of 88

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 17)**

Property Address:_____ **62 Farragut Ave, #A, Piedmont, CA 94610** _____ Date:____ *04/03/2026* ____

(3) Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; or **(ii)** if exempt from the obligation to provide a TDS, complete either an Exempt Seller Disclosure (C.A.R. Form ESD) or Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer.

(4) In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

**B. LEAD DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").

(2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features on the Property of which Seller is aware that may make the home vulnerable to wildfire and flying embers; **(iii)** a list of possible low cost fire hardening retrofits identifying which ones Seller has completed; and **(iv)** a final inspection report regarding compliance with home fire hardening if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E. ELECTRICAL SYSTEM INSPECTION ADVICE DISCLOSURE:** For any transaction in which a TDS is required, Seller advises the Buyer as follows: "In a purchase of real property, it may be advisable to obtain an inspection by a qualified professional of the electrical system(s) of any buildings, including, but not limited to, the main service panel, the subpanel(s), and wiring. Substandard, recalled, or faulty wiring may cause a fire risk and may make it difficult to obtain property insurance. Limited electrical capacity may make it difficult to support future electrical additions to the building(s), such as solar generation, electric space heating, electric water heating, or electric vehicle charging equipment."

**F. WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1)**, **11B**, **11C**, **11D** and **11E** are prohibited by Law.

**G. RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(5)** OR **5 Days** after Delivery of any disclosures specified in **paragraphs 11A**, **B**, **C**, or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**H. TERMINATION RIGHTS:**

(1) **Statutory and Other Disclosures:** If any disclosure specified in **paragraphs 11A**, **B**, **C**, **D**, or **E**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.

(2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11G**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**I. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**J. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov**. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**RPA REVISED 12/25 (PAGE 8 OF 17)**

Buyer's Initials _MIS_ / _KDC_    Seller's Initials _JMH_ / _____

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 14 of 88

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 17)**

*Erik Fleming*

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

Property Address:_____*62 Farragut Ave, #A, Piedmont, CA 94610*_____ Date:___*04/03/2026*___

**L. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**M. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
(1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).
(2) If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR), unless Seller has otherwise Delivered to Buyer the most current version of any such document: **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**N. SOLAR POWER SYSTEMS:** For properties with any solar panels or solar power systems, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all known information about the solar panels or solar power system. Seller shall use the Solar Advisory and Questionnaire (C.A.R. Form SOLAR).

**O. BALCONIES, EXTERIOR STAIRWAYS AND OTHER ELEVATED ELEMENTS:** For properties with any building containing 3 or more dwelling units with elevated balconies, stairways or other elements, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer the Wooden Balcony and Stairs Addendum (C.A.R. Form WBSA) and comply with its terms.

**P. KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact insurer to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
**A.** Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").
**B.** Buyer Investigations include, but are not limited to:
(1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:
(A) A general home inspection.
(B) An inspection for lead-based paint and other lead-based paint hazards.
(C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).
(D) Any other specific inspections of the physical condition of the land and improvements.
(2) Investigation of any other matter affecting the Property, other than those that are specified as separate contingencies. Buyer Investigations do not include, among other things, an assessment of the availability and cost of general homeowner's insurance, flood insurance, and fire insurance. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.
**C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.
**D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3),** complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.
**E. Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**
**A. PRELIMINARY REPORT:** Buyer shall, within the time specified in **paragraph 3N(1),** be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

**RPA REVISED 12/25 (PAGE 9 OF 17)**

Buyer's Initials _____ MIS _____ / _____ KDC _____     Seller's Initials _____ JMH _____ / _____

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 15 of
88

*Eric Fleming*

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 17)**

bd9d94e0-8513-47f9-b8cf-e8fd0219a2f2

**B.** **CONDITION OF TITLE:** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C.** **DISCLOSURE TO BUYER:** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**D.** **FEDERAL REPORTING REQUIREMENT - GEOGRAPHIC TARGETING ORDER:** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

**E.** **SELLER DELIVERY OF INFORMATION:** Seller shall, within **7 Days** after request, give Escrow Holder necessary information to clear title.

**F.** **DEED AND VESTING:** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**G.** **TITLE INSURANCE POLICY:** Buyer shall receive an "ALTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between an ALTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR-B, CR-S or CC).**

**A.** **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible to provide to Buyer as specified in **paragraphs 7A, 9B(6), 10, 11A, 11B, 11C, 11D, 11I, 11L, 11M, 11N, 11O, 11P, 13A, 13C, 24, and, if applicable, C.A.R. Form SWPI**.

**B.** **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

(1) Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, Reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11**.

(2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

(3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR-B or CC). Buyer is advised not to remove contingencies related to review of documents until after the documents have been Delivered. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11H**.

(4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of contingency is Delivered to Seller before Seller cancels, Seller may not cancel this Agreement based on that contingency pursuant to **paragraph 14C(1)**.

**C.** **SELLER RIGHT TO CANCEL:**

(1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8H**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11G**; **(viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13D**; **(ix)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 24**; **(x)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraph 29**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

(3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 16 of 88

Property Address: **62 Farragut Ave, #A, Piedmont, CA 94610** Date: **04/03/2026**

**D. BUYER RIGHT TO CANCEL:**

(1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.

(2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.

(3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

**E. NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: **(i)** be in writing; **(ii)** be Signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, except for Close of Escrow which shall be Delivered under the terms of **paragraph 14G**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void. However, if the notice is for multiple items, the notice shall be valid for all contingencies and contractual actions for which the Delivery of the notice is within the time permitted in the Agreement and void as to the others. Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

**F. EFFECT OF REMOVAL OF CONTINGENCIES:**

(1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of Reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any Reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

(2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

**G. DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

**H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. **A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

**15. REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**16. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B**; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments to third parties, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**RPA REVISED 12/25 (PAGE 11 OF 17)**

Buyer's Initials _MIS_ / _KDC_ Seller's Initials _JMH_ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 17)**

bd9d94e0-8513-47f9-b8cf-e8fd0219a2f2

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

Property Address:_____ **62 Farragut Ave, #A, Piedmont, CA 94610** _____ Date:_____ *04/03/2026* _____

**18. BROKERS AND AGENTS:**

**A. COMPENSATION:**

(1) **Broker Compensation:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. The amount of compensation, if a percentage, will be based on the final purchase price. Buyer is advised that Buyer's Broker should not receive compensation from any source in excess of the amount in the buyer representation agreement. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

(2) **Third party beneficiary:** Seller acknowledges and agrees that Buyer's Broker is a third-party beneficiary of this Agreement and may pursue Seller for failure to pay the amount specified in this Agreement.

**B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A. ESCROW INSTRUCTION PARAGRAPHS: The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11I, 11M(2), 13 (except 13C), 14H, 17, 18A, 19, 23, 24, 25, 28, 32,** and **33.** The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

**B. ESCROW HOLDER GENERAL PROVISIONS:** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2)**. Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11**, or elsewhere in this Agreement.

**C. COPIES; STATEMENT OF INFORMATION; TAX WITHHOLDING INSTRUCTIONS:** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after Acceptance. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11I**, Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11I**.

**D. BROKER COMPENSATION:**

(1) **PAYMENT:** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A**. If a Copy of the separate compensation agreement(s), including if applicable **paragraph 3G(3)** of this Agreement, is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). Buyer's obligation to pay Buyer's Broker shall be offset by any amount that Seller pays Buyer's Broker. Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A**, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

(2) **COMPENSATION DISCLOSURE:** Escrow Holder shall provide to Buyer a closing statement or other written documentation disclosing the amount of compensation paid to Buyer's Broker. Escrow Holder shall provide to Seller a closing statement or other written documentation disclosing: **(i)** the amount of compensation paid to Seller's Broker; and **(ii)** if applicable pursuant to **paragraph 3G(3)** or other mutual instruction of the parties, the amount paid by Seller for Buyer's Broker compensation. Escrow Holder's obligation pursuant to **paragraph 19D**, is not intended to alter any preexisting practice of Escrow Holder to issue, as applicable, joint or separate closing statements. Escrow Holder's obligation pursuant to **paragraph 19D** is independent of, but may be satisfied by, any closing statement mandated by Buyer's lender.

**E. INVOICES:** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

**F. VERIFICATION OF DEPOSIT:** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraph 5A(1)** and C.A.R. Form IDA. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**G. DELIVERY OF AMENDMENTS:** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**RPA REVISED 12/25 (PAGE 12 OF 17)**

Buyer's Initials ___ MIS ___ / ___ KDC ___ Seller's Initials ___ JMH ___ / _____

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 18 of 88

*Eric Fleming*

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 17)**

bd9d94e0-8513-47f9-b8cf-e8fd0219a2f2

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

Property Address:_____ *62 Farragut Ave, #A, Piedmont, CA 94610* _____ Date:____*04/03/2026*____

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be input into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

**22. ATTORNEY FEES AND COSTS:** In any Legal Action between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A**.

**23. ASSIGNMENT/NOMINATION:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's wholly-owned entity or trust that exists at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first obtaining Seller's separate written consent to a specified assignee (C.A.R. Form AOAA). Buyer shall, within the time specified in **paragraph 3K**, Deliver to Seller any request to assign this Agreement. Seller shall not unreasonably withhold such consent. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Seller's withholding of consent shall be deemed reasonable if: **(i)** Buyer is to receive any monetary or other consideration for the assignment; **(ii)** Buyer makes any misrepresentation(s) to Seller about any aspect of the assignment; or **(iii)** Buyer Delivers an assignment request to Seller after the time specified in **paragraph 3K**. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is Buyer's wholly-owned entity or trust, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender stating assignee is preapproved or prequalified as specified in **paragraph 6B**. Should assignee fail to deliver such letter, Seller, after first giving assignee a Notice to Buyer to Perform, may terminate the assignment. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller. Parties shall provide any assignment agreement to Escrow Holder within **1 Day** after the assignment. Any nomination by Buyer shall be subject to the same procedures, requirements, and terms as an assignment, as specified in this paragraph.

**24. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraphs 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California; and **(ii)** shall Deliver to the other Party and Escrow Holder, within **3 Days** after Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5)), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**25. DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

A. **"Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

B. **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B**.

C. **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

D. **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

E. **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

F. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

G. **"Close Of Escrow",** including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

H. **"Copy"** means copy by any means including photocopy, facsimile and electronic.

I. **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) Consistent with California Civil Code § 11, after Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or Legal Holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or Legal Holiday ("Allowable Performance Day"), and ending at 11:59 pm. "Legal Holiday" shall mean any holiday or optional bank holiday under Civil Code §§ 7 and 7.1, any holiday under Government Code § 6700. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed or any day that the lender or Escrow Holder under this Agreement is closed, the COE shall occur on the next day the Recorder's office in that County, the lender, and the Escrow Holder is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

J. **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

**RPA REVISED 12/25 (PAGE 13 OF 17)**

Buyer's Initials MLS / KDC   Seller's Initials JMH / _____

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 19 of 88

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 17)**

K. **"Deliver", "Delivered" or "Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other). A document, or as applicable link to a document, shall be deemed to be "in possession" if it located in the in-box for the applicable Party or Authorized Agent; or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to the designated electronic delivery address specified in the Real Estate Broker Section, unless Otherwise Agreed in C.A.R. Form DEDA. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party (C.A.R. Form DEDA). Links could be, for example, to DropBox or Google Drive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and recipient opening, the document by link.

L. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Unless Otherwise Agreed, Buyer and Seller agree to the use of Electronic Signatures. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

M. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

N. **"Legal Action"** means a lawsuit or legal proceeding in arbitration or court.

O. **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33.**

P. **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

Q. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

R. **"Sign" or "Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

26. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

27. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. **If at least one but not all Parties initial, a counter offer is required until agreement is reached**. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By Signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

28. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller**.

# REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK
# PROCEED TO NEXT PAGE

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 20 of 88

bd9d94e0-8513-47f9-b8cf-e8fd0219a2f2

Property Address:_____ **62 Farragut Ave, #A, Piedmont, CA 94610** _____ Date:____*04/03/2026*____

**29. LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages)**:**

> **If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).**

**Buyer's Initials** _MIS_ / _KDC_      **Seller's Initials** _____/_____

**30. MEDIATION:**

A. The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Dispute Resolution Center for Real Estate **(www.consumermediation.org)** or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent**. Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences Legal Action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of Legal Action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

B. **ADDITIONAL MEDIATION TERMS: (i) Exclusions from this mediation agreement are specified in paragraph 31B; (ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and (iii) Agent's rights and obligations are further specified in paragraph 31D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.**

**31. ARBITRATION OF DISPUTES:**

A. **The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.**

B. **EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.**

C. **PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, provided the filing party concurrent with, or immediately after such filing makes a request to the court for a stay of litigation pending any applicable mediation or arbitration proceeding; or (iii) the filing of a mechanic's lien.**

D. **AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**

E. **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

> **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

**Buyer's Initials** _MIS_ / _KDC_      **Seller's Initials** _____/_____

**RPA REVISED 12/25 (PAGE 15 OF 17)**

Buyer's Initials _MIS_ / _KDC_   Seller's Initials _JMH_ / _____

*Erin Fleming*

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 17)**

bd9d94e0-8513-47f9-b8cf-e8fd0219a2f2

Property Address: __62 Farragut Ave, #A, Piedmont, CA 94610__   Date: __04/03/2026__

**32. OFFER**

**A. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**

**B. ☐ ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

    (1) **Non-Individual (entity) Buyers:** One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

    (2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____
_____.

    (3) **Contractual Identity of Buyer:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.
        (A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);
        (B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).

    (4) **Legally Authorized Signer:**
        (A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 24** for additional terms.
        (B) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

**C.** The RPA has 17 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. BUYER SIGNATURE(S):**
(Signature) By, _*Melissa Irene Severini*_   Date: 4/6/2026
Printed name of BUYER: _*Melissa Irene Severini*_
☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
(Signature) By, _*Kevin David Clark*_   Date: 4/6/2026
Printed name of BUYER: _*Kevin David Clark*_
☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**

**A. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.

**Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.** Seller shall return and include the entire agreement with any response.
☐ **Seller Counter Offer** (C.A.R. Form SCO or SMCO)
☐ **Back-Up Offer Addendum** (C.A.R. Form BUO)

**B. ☐ ENTITY SELLERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

    (1) **Non-Individual (entity) Sellers:** One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

    (2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____
_____.

    (3) **Contractual Identity of Seller:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.
        (A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);
        (B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).

    (4) **Legally Authorized Signer:**
        (A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 24** for additional terms.
        (B) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

**C.** The RPA has 17 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. SELLER SIGNATURE(S):**
(Signature) By, _*Janina M. Hoskins*_   Date: 4/9/2026
Printed name of SELLER: _*Janina M Hoskins, Chapter 7 Trustee*_
☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
(Signature) By, _____   Date: _____
Printed name of SELLER: _____
☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**RPA REVISED 12/25 (PAGE 16 OF 17)**

Erin Fleming

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 17)**

Property Address:_____ *62 Farragut Ave, #A, Piedmont, CA 94610*_____ Date:____*04/03/2026*____

**REAL ESTATE BROKERS SECTION**
1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
4. **Agents' Signatures and designated electronic delivery address:**

A. Buyer's Brokerage Firm _____ *Compass* _____ DRE Lic. # ____*01527235*____

By _*Erin Fleming*_ _____ *Erin Fleming* DRE Lic. # ____*01898014*____ Date ____4/4/2026____
    DBFF3062FF0441C...

By _____ DRE Lic. # _____ Date _____

Address _*6211 Medau Place, Suites 100 and 210*_ City _*Oakland*_ State _*CA*_ Zip _*94611*_

Email _*erinfleming@compass.com*_ Phone # _*(510) 827-6504*_

☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

**Designated Electronic Delivery Address(es): Email above or** _____

☐ **Attached DEDA:** If Parties elect to have an alternative Delivery method, such method may be indicated on C.A.R. Form DEDA.

B. Seller's Brokerage Firm _____ *Village Associates Real Estate* _____ DRE Lic. # ____*01301393*____

By _*Alexis Thompson*_ _____ *Alexis Thompson* DRE Lic. # ____*01849227*____ Date ____4/9/2026____

By _*Anne Herrera*_ _____ *Anne Herrera* DRE Lic. # ____*01413563*____ Date ____4/9/2026____
    54C0E5500DB5440...

Address _____ City _____ State _____ Zip _____

Email _*athompson@villageassociates.com*_ Phone # _*510-816-0706*_

☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

**Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent): Email above or** _____

☐ **Attached DEDA:** If Parties elect to have an alternative Delivery method, such method may be indicated on C.A.R. Form DEDA.

Buyer's Initials _*MIS*_ / _*KDC*_ Seller's Initials _*JMH*_ / _____

**ESCROW HOLDER ACKNOWLEDGMENT:**

Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____, and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____

Escrow Holder _____ Escrow # _____

By _____ Date _____

Address _____

Phone/Fax/E-mail _____

Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER:** _____/_____ Seller's Brokerage Firm presented this offer to Seller on _____.
                            Agent or Seller Initials                                                           Date

**OFFER NOT ACCEPTED:** _____/_____ No Counter Offer is being made. This offer was not accepted by Seller _____.
                          Seller's Initials                                                                        Date

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*
**RPA REVISED 12/25 (PAGE 17 OF 17)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 17 OF 17)**

bd9d94e0-8513-47f9-b8cf-e8fd0219a2f2

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



# FEDERAL REPORTING REQUIREMENT PURCHASE ADDENDUM
**(C.A.R. Form FRR-PA, 10/25)**

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement ("Agreement"), dated _____04/03/2026_____, on property known as _____62 Farragut Ave, #A, Piedmont, CA 94610_____, ("Property") in which _____Janina M Hoskins, Chapter 7 Trustee_____ is referred to as ("Seller") and _____Melissa Irene Severini, Kevin David Clark_____ is referred to as ("Buyer").

This addendum is to be used with a: **(i)** Residential Purchase Agreement (C.A.R. Form RPA); **(ii)** New Construction Purchase Agreement (C.A.R. Form NCPA); **(iii)** Vacant Land Purchase Agreement, if the Property will be improved with a residential dwelling with one to four units (C.A.R. Form VLPA); **(iv)** Residential Income Purchase Agreement (C.A.R. Form RIPA), where the income property contains one to four units; or **(v)** Residential Units Purchase Addendum (C.A.R. Form RU-PA), where the mixed-use property contains one to four residential units.

1. **FEDERAL REPORTING OBLIGATION:** Pursuant to rules issued by the Financial Crimes Enforcement Network ("FinCEN") of the U.S. Department of the Treasury ("Treasury"), a "Reporting Person" (typically the escrow or title company responsible for closing) is required to collect, and report to the Treasury, certain information about the Buyer and Seller in the sale of certain real property for the purpose of preventing money laundering. Originally scheduled to take effect December 1, 2025, the reporting requirements have been delayed to March 1, 2026. The Reporting Person may require the needed information from Buyer and Seller for applicable transactions for which an offer was accepted prior to March 1, 2026, if there is a possibility the transaction will close escrow on or after the March 1, 2026, implementation date even if scheduled to close escrow prior to that date.

2. **CONDITIONS FOR WHICH THE REPORTING OBLIGATIONS APPLY:** The collection and reporting obligations apply if: **(i)** the property being purchased is real property with one to four residential units or vacant land for which the transferee intends to build residential real property with one to four units, or shares in a cooperative housing corporation; **(ii)** the buyer is a legal entity or trust; and **(iii)** the buyer is making an "all-cash" purchase or financing the purchase through a bank or other institution that does not have an independent money laundering reporting obligation.

3. **REQUIRED REPORTING INFORMATION:** The following is a non-exclusive list of the "persons" from whom the Reporting Person is required to collect information as well as the type of information to be collected.
   A. **Buyers:** Entity Buyers, Beneficial Owners of Entity Buyers, Signing Parties of Entity Buyers, Trust Buyers, Entity Trustee of Trust Buyers, and Individual trustees and beneficial owners of Trust Buyers;
   B. **Sellers:** Individual sellers, Entity sellers, Trust Sellers, Individual and entity trustees of Trust Sellers;
   C. **Information to be collected:** Legal names, dates of birth, dates of execution of trusts, addresses, dbas, citizenship (for trustees or beneficial owners of trust buyers) taxpayer identification numbers ("TIN"), and, if applicable, account number and financial institution name from which payment is made.

4. **DELIVERY OF REQUIRED INFORMATION:**
   A. Buyer and Seller shall, within **7 Days** after receiving a request for FinCEN information from the Reporting Person for the transaction, deliver to the Reporting Person all necessary information to satisfy the reporting requirements.
   B. Buyer and Seller agree to make a good faith effort to acquire such information from any entity, beneficial owner, trustee or signing party that is not Buyer or Seller.

5. **CONSEQUENCES OF FAILURE TO PROVIDE REQUESTED INFORMATION:**
   A. The Reporting Person will not close escrow if the requested information is not provided in full, regardless of whether due from Buyer or Seller or another person on their behalf;
   B. Any Buyer or Seller who fails to provide the requested information for themselves may be in breach of contract.
   C. If the Reporting Person requires information from a related third party such as an entity, beneficial owner, signing party, or trustee, and the Reporting Person notifies a Buyer or Seller that the other has failed to provide such information, the performing Buyer or Seller may cancel after first giving the non-performing Buyer or Seller a notice to perform.

**By signing below, Buyer and Seller acknowledge that each has read, understands, has received a copy of, and agrees to the terms of this Federal Reporting Requirement Purchase Addendum.**

Buyer _Melissa Irene Severini_ _Melissa Irene Severini_ Date 4/6/2026
Buyer _Kevin David Clark_ _Kevin David Clark_ Date 4/6/2026
Seller _Janina M. Hoskins_ _Janina M Hoskins, Chapter 7 Trustee_ Date 4/9/2026
Seller _____ Date _____

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**FRR-PA 10/25 (PAGE 1 OF 1)**

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 24 of 88

**FEDERAL REPORTING REQUIREMENT PURCHASE ADDENDUM (FRR-PA PAGE 1 OF 1)**

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



**COMPASS**

CALIFORNIA
ASSOCIATION
OF REALTORS®

1. **BROKER AGENCY RELATIONSHIP WITH MULTIPLE PRINCIPALS:** A real estate broker ("Brokerage"), whether a corporation, partnership or sole proprietorship, may legally represent more than one buyer or seller. This multiple representation can occur through a sole proprietor Brokerage; or through a salesperson or broker acting under the Brokerage's license ("Associate Licensee"). Associate Licensees under a Brokerage's license may be working out of the same or different office locations, and may or may not know one another. Clients of the Brokerage may have similar goals and may compete against each other for the same property or the same pool of prospective buyers. Some buyers and sellers prefer to work with individual, sole proprietor brokerages, some with brokerages that have multiple licensees, and others with large brokerage companies that have multiple offices and may have a regional, statewide or a national or international presence. Each has its own advantages. It is important for buyers and sellers to understand how the Brokerage representation of multiple buyers or sellers may impact them under various situations.

   A. **MULTIPLE BUYERS:** Brokerage (individually or through any of its Associate Licensees) may work with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed by the Brokerage. Whether Brokerage is large or small, it is possible that one Associate-Licensee (agent 1) working with a buyer may not be aware that another Associate-Licensee (agent 2) is working with a different buyer who is interested in viewing or making an offer on the same property as agent 1's client, and vise-versa. Brokerage will not limit or restrict any buyer from making an offer on any specific property, whether or not the Brokerage represents other buyers interested in the same property.

   B. **MULTIPLE SELLERS:** Brokerage (individually or through its Associate Licensees) may have listings on many properties at the same time. As a result, Brokerage will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Brokerage and some may not. Brokerage will market all listed properties to all prospective buyers, whether or not Brokerage has other listed properties that may appeal to the same prospective buyers.

   C. **DUAL AGENCY IN A TRANSACTION:** California law allows a brokerage to represent both a buyer and a seller in a transaction (Civil Code § 2079 et seq.).

      (1) **Brokerage Dual Agency:** If one Associate-Licensee from the Brokerage is working with a buyer and another Associate-Licensee from the same Brokerage is working with a seller on the same transaction, the Brokerage is considered a dual agent with fiduciary duties to both buyer and seller. In that situation, each individual Associate Licensee working on the transaction is also considered a dual agent having the same knowledge and responsibility as the Brokerage.

      (2) **Single Agent Dual Agency:** Another form of dual agency occurs when an individual Associate-Licensee is working with both the buyer and seller in the same transaction. In that situation, both the Brokerage company and the individual Associate-Licensee are dual agents with fiduciary duties to each side of the transaction. There is no one approach to this situation. Some brokerages allow the single agent dual agent to continue to represent both parties, as that Associate-Licensee is the chosen agent of the principal. Some brokerages recommend that the broker or an office manager get involved if there is a dispute between the buyer and seller. Some brokerages will require that the broker or an office manager assist the Associate-Licensee with one principal or the other, even if the parties do not have a dispute. Whether one of these approaches, or another, is taken in a single agent dual agency will depend on the circumstances and the brokerage policy. Regardless of the approach, the Associate-Licensee and Brokerage shall conduct activity consistent with the terms in **paragraph 2C**.

2. **ACKNOWLEDGEMENT AND CONSENT:**
   A. **OFFERS ARE NOT NECESSARILY CONFIDENTIAL:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer to other interested buyers and agents unless all parties and their agent have signed a written confidentiality agreement, (C.A.R. Form NDA). In the absence of a signed NDA, Buyer consents to such disclosure. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy, and the instructions of the seller.

   B. **MULTIPLE BUYERS OR SELLERS:** If Seller is represented by Brokerage, Seller acknowledges that Brokerage may represent prospective buyers of Seller's property and consents to Brokerage acting as a dual agent for both Seller and buyer in that transaction. If Buyer is represented by Brokerage, Buyer acknowledges that Brokerage may represent sellers of property that Buyer is interested in acquiring and consents to Brokerage acting as a dual agent for both Buyer and seller with regard to that property.

   C. **DUAL AGENCY IN A TRANSACTION:** In the event of dual agency, Seller and Buyer agree that: **(i)** a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and **(ii)** except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties. Seller and Buyer should discuss with a dual agent the details and parameters of this requirement. Seller and/or Buyer consents to allowing Brokerage to act as a dual agent in a transaction.

Case: 24-10714  Doc# 246  Filed: 04/09/26  Entered: 04/09/26 18:29:36  Page 25 of 88

Erin Fleming-Pountney

b374856a-ba8d-4a86-8bd8-74b39af1e48e

**By signing below, Buyer and/or Seller acknowledge that each has received a copy of this Possible Representation of More Than One Buyer or Seller – Disclosure and Consent, and each has read, understands, and agrees to its terms and consents to the agency possibilities disclosed.**

Buyer _Melissa Irene Severini_ CDD836A7897F4F5... *Melissa Irene Severini* Date 4/6/2026

Buyer _Kevin David Clark_ 096A4CB68438466... *Kevin David Clark* Date 4/6/2026

Seller _____ *Janina M Hoskins, Chapter 7 Trustee* Date _____

Seller _____ Date _____

Buyer's Brokerage Firm _____ *Compass* DRE Lic # 01527235

By _Erin Fleming_ DBEF3062FF0441C... *Erin Fleming* DRE Lic # 01898014 Date 4/4/2026

Seller's Brokerage Firm _____ *Village Associates Real Estate* DRE Lic # 01301393

By _____ *Alexis Thompson* DRE Lic # 01849227 Date _____

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**PRBS REVISED 6/25 (PAGE 2 OF 2)**

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 26 of 88

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 2 OF 2)**

b374856a-ba8d-4a86-8bd8-74b39af1e48e

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



**COMPASS**

# FAIR HOUSING AND DISCRIMINATION ADVISORY
### (C.A.R. Form FHDA, Revised 12/24)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION: Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.**
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race (and race traits) | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any Arbitrary Characteristic or Intersectionality |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.
   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords/Housing Providers
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers
8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of **(i)** actual or unconscious bias, and **(ii)** potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent **(i)** an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or **(ii)** a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;
   E. Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

© 2024, California Association of REALTORS®, Inc.

**FHDA REVISED 12/24 (PAGE 1 OF 2)**

Erin Fleming

EQUAL HOUSING OPPORTUNITY

## FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)

11792789-32f1-4253-88a6-ddf5f8269976

**F.** Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

**G.** Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

**H.** Denying a home loan or homeowner's insurance;

**I.** Offering inferior terms, conditions, privileges, facilities or services;

**J.** Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

**K.** Harassing a person;

**L.** Taking an adverse action based on protected characteristics;

**M.** Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a tenant who uses a wheelchair to install, at their expense, a ramp over front or rear steps, or refusing to allow a tenant with a disability from installing, at their own expense, grab bars in a shower or bathtub);

**N.** Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):

  **(i)** Failing to allow that person to keep the service animal or emotional support animal in rental property,

  **(ii)** Charging that person higher rent or increased security deposit, or

  **(iii)** Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

**O.** Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**

**A.** Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/ neighborhood, property features, and price range and other considerations, to all prospects.

**B.** Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

**C.** Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

**D.** Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

**E.** Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

**A.** Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

**B.** State: **https://calcivilrights.ca.gov/housing/**

**C.** Local: local Fair Housing Council office (non-profit, free service)

**D.** DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

**E.** Local Association of REALTORS®.  List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**.

**F.** Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation.  Real estate licensees are not qualified to provide advice on the application of these exceptions.**

**A.** Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

**B.** An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;

**C.** An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences.  Other restrictions apply;

**D.** An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

**E.** Both FHA and FEHA do not apply to roommate situations.  See, *Fair Housing Council v Roommate.com LLC,* 666 F.3d 1216 (2019).

**F.** Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit  discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

**Buyer/Tenant and Seller/Housing Provider have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.**

Buyer/Tenant _Melissa Irene Severini_  *Melissa Irene Severini* Date 4/6/2026
CDD836A7897F4F5...

Buyer/Tenant _Kevin David Clark_  *Kevin David Clark* Date 4/6/2026
096A4CB68438466...

Seller/Housing provider _Janina M. Hoskins_  *Janina M Hoskins, Chapter 7 Trustee* Date 4/9/2026
52EE384D7932455...

Seller/Housing provider _____ Date _____

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.  THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.  This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**FHDA REVISED 12/24 (PAGE 2 OF 2)**

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 28 of 88

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

*Erin Fleming*

11792789-32f1-4253-88a6-ddf5f8269976

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



**CALIFORNIA ASSOCIATION OF REALTORS®**

# BUYER HOMEOWNERS' INSURANCE ADVISORY
**(C.A.R. Form BHIA, 6/24)**

1. **IMPORTANCE OF OBTAINING PROPERTY INSURANCE:** If the property you are purchasing is destroyed or damaged due to natural disaster or accident or some other event, insurance may be available to help with the cost of repair or rebuilding. In the absence of property insurance, the homeowner would be responsible for the full expense. If the property is purchased with a loan, or refinanced, the lender will require an insurance policy protecting its interest. Insurance policies can cover damage due to one or more of the following: fire, flood, earthquake and other causes. The policy or an insurance broker should be consulted to determine when coverage applies and whether a supplement or rider can be purchased to provide additional coverage or if a separate policy is necessary.

2. **PROPERTY INSURANCE AND PURCHASE CONTRACT TERMS:** Your real estate purchase contract may contain a contingency that gives you the right to legally cancel the agreement within a specified time if you are unable to obtain or afford property insurance. This cancellation right may be a specific contingency pertaining to insurance or may be part of an overall investigation contingency. If buyer waives or removes the applicable contingency before determining the availability and cost of property insurance, buyer is acting against the advice of broker. Additionally, if the property is part of an HOA, lenders may require and buyers will want to know that the HOA has adequate insurance to cover the areas for which the HOA is responsible.

3. **CALIFORNIA'S PROPERTY INSURANCE MARKET:** Some insurance carriers in California have stopped issuing new property insurance policies and others are limiting the number and location of new policies, due to rising replacement costs and an increase in natural disasters. These changes may affect both the availability and cost of insurance. However, over 50 insurance carriers are admitted to sell property insurance in California so it may be possible to obtain insurance even if some carriers will not write a new policy covering the property you intend to buy. An insurance broker may also be able to find a non-admitted insurance carrier offering to insure the property you intend to buy. Because locating an affordable insurance policy could take time and effort, buyers are advised to make all insurance inquiries as early in the home buying process as possible.

4. **INSURANCE CONDITIONS:** Many insurance carriers impose physical condition standards before issuing a policy, or reserve the right to cancel policies even after they are issued, if certain minimum standards are not confirmed in an inspection or otherwise. Physical conditions standards could include, but are not limited to, prohibition of "knob and tube" electrical wiring, requirements related to piping/plumbing materials, standards related to the age and/or quality of the roof or foundation, minimal safety standards related to handrails, tripping hazards, and defensible space requirements.

5. **RESOURCES:** The California Department of Insurance (DOI) maintains a website addressing Residential Home insurance. Resources on this State government webpage include: **(i)**Top Ten tips for Finding Residential Insurance; **(ii)** Residential Insurance Company Contact List; **(iii)** Home Insurance Finder; and **(iv)** information on other insurance issues. The webpage also includes information on how to contact the DOI, and suggestions on what to do if you cannot find insurance. The webpage and link to other documents is located at https://www.insurance.ca.gov/01-consumers/105-type/5-residential/index.cfm.

6. **BROKER RECOMMENDATION:** Buyer is advised to explore available property insurance options early in the home buying process and to consult with a qualified insurance professional of buyer's choosing to understand insurance availability and cost prior to removal of any related contingencies. Real estate brokers do not have expertise in this area.

**By signing below, Buyer acknowledges that Buyer has read, understands, and has received a copy of this Buyer Homeowners' Insurance Advisory.**

Buyer: *Melissa Irene Severini* _____ *Melissa Irene Severini* Date: 4/6/2026 _____

Buyer: *Kevin David Clark* _____ *Kevin David Clark* Date: 4/6/2026 _____

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**BHIA 6/24 (PAGE 1 OF 1)**

EQUAL HOUSING OPPORTUNITY

*Erin Fleming | Compass*

**BUYER HOMEOWNERS' INSURANCE ADVISORY (BHIA PAGE 1 OF 1)**

491ea421-0d19-42e1-b0b3-e330ba160f20

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



**CALIFORNIA ASSOCIATION OF REALTORS®**

**COMPASS**

# WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY
### (C.A.R. Form WFA, Reviewed 6/25)

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Housing Providers at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Housing Provider.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Housing Provider, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

## NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks.

The term "Housing Provider" also includes Landlord or Rental Property Owner.

**By signing below, Buyer/Tenant and Seller/Housing Provider acknowledge that each has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory, and each has read and understands its terms.**

Buyer/Tenant _Melissa Irene Severini_ _Melissa Irene Severini_ Date 4/6/2026

Buyer/Tenant _Kevin David Clark_ _Kevin David Clark_ Date 4/6/2026

Seller/Housing Provider _Janina M. Hoskins_ _Janina M Hoskins, Chapter 7 Trustee_ Date 4/9/2026

Seller/Housing Provider _____ Date _____

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**WFA REVIEWED 6/25 (PAGE 1 OF 1)**

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 30 of 88

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

*Erin Fleming*

23eacf77-048d-409d-acf5-8d0e81820f5e

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



**COMPASS**

# BUYER'S INVESTIGATION ADVISORY
**(C.A.R. Form BIA, Revised 6/25)**

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** Unless otherwise specified in the Agreement, the physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A Broker's inspection is a limited visual inspection (see C.A.R. Form AVID), and a Broker is not qualified to conduct the investigations listed below nor will Broker conduct the investigations checked below by Buyer. For these reasons, you should conduct thorough inspections, investigations, tests, surveys and other studies (Inspections and Investigations) of the Property personally and with appropriate professionals (see C.A.R. Form SBSA), who should provide written reports of their Inspections. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If any professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to other professionals, Broker does not guarantee their performance.

3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

   A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

   B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

   C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

   D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

   E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

   F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

   G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

   H. **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and insurance contingencies.

   I. **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the Property.

   J. **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Dead bolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

   K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

   L. **UTILITIES; SEWER; INTERNET:** Availability of gas, electric, water, sewer, garbage, internet and other services. The provider and quality of service may vary by location.

   M. **SOLAR POWER SYSTEM:** The existence of a solar power system; whether it is owned, leased, financed, or otherwise subject to obligations, such as a power purchase agreement or maintenance agreement; the condition of and costs associated with the system.

© 2025, California Association of REALTORS®, Inc.
**BIA REVISED 6/25 (PAGE 1 OF 2)**

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 31 of 88

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 1 OF 2)**

*Erin Fleming Settles*

db7c0491-5e35-4d2b-aac9-d022538e20d8

**N. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyer acknowledges that they have received a copy of this Buyer Investigation Advisory, and they have read and understand its terms. Buyer is encouraged to read it carefully.**

Buyer _Melissa Irene Severini_ _Melissa Irene Severini_ Date 4/6/2026

DocuSigned by: CDD836A7897F4F5...

Buyer _Kevin David Clark_ _Kevin David Clark_ Date 4/6/2026

096A4CB68438466...

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**BIA REVISED 6/25 (PAGE 2 OF 2)**

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 2 OF 2)**

db7c0491-5e35-4d2b-aac9-d022538e20d8

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7





# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
**(C.A.R. Form CCPA, Revised 12/22)**

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA"), as amended by California voters in 2020, grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business.  Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you.  PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities.  Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, the right to know what PI is sold or shared and to whom, the right to request that the business correct or delete your PI, the right to "opt out" or stop the transfer of your PI to others, and the right to limit the use of certain PI which is considered "sensitive."  You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction.  However, not all businesses that receive or share your PI are obligated to comply with the CCPA.  Moreover, businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary.  For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years.  If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa).  Additionally, the California Privacy Protection Agency is authorized to promulgate regulations which may further clarify requirements of the CCPA (cppa.ca.gov/regulations/).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant _Melissa Irene Severini_ _Melissa Irene Severini_ Date 4/6/2026

Buyer/Seller/Landlord/Tenant _Kevin David Clark_ _Kevin David Clark_ Date 4/6/2026

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.  THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.  It is not intended to identify the user as a REALTOR®.  REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**CCPA REVISED 12/22 (PAGE 1 OF 1)**

Case: 24-10714    Doc# 246    Filed: 04/09/26    Entered: 04/09/26 18:29:36    Page 33 of 88

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

*Erin Fleming | Compass*

4c0da577-637f-4d12-8d03-ebb4e5a67aca

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



**CALIFORNIA ASSOCIATION OF REALTORS®**

**COMPASS**

# ADDENDUM No. _____1_____
### (C.A.R. Form ADM, Revised 6/25)

The following terms and conditions are hereby incorporated in and made a part of the Purchase agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Other _____,
dated _*04/03/2026*_, on property known as *62 Farragut Ave, #A, Piedmont, CA 94610*
_____ ("Property/Premises"),
between _____*Melissa Irene Severini, Kevin David Clark*_____ ("Buyer/Tenant")
and _____*Janina M Hoskins, Chapter 7 Trustee*_____ ("Seller/Housing Provider").
The term "Housing Provider" also includes Landlord or Rental Property Owner.  Buyer/Tenant and Seller/Housing Provider are referred to as the "Parties."

**FORM USE NOTES: This form is intended to be used in Buyer-Seller or Tenant-Housing Provider transactions.  For all other situations requiring an addendum, use an Addendum – Generic (C.A.R. form ADM-GEN).**

- A change or addition to a previously provided Seller Property Questionnaire (SPQ), Real Estate Transfer Disclosure Statement (TDS), or other disclosure, may be made on an Amendment to Prior Disclosure (C.A.R. Form APD), and it may give the Buyer a right to rescind.
- To change the terms of already executed agreement, use the Amendment to Existing Agreement (C.A.R. form AEA).

*1. Buyer(s) agree to the terms of the sales contract, its counter offers, contingency removal and addendums attached to the Trustee's*

*Declaration Exhibit A.*

*2. Buyer deposit is fully refundable if court rejects sale*

**By signing below, Buyer and Seller acknowledge that each has received a copy of this Addendum, and each has read, understands, and agrees to its terms.**

Buyer/Tenant ___*Melissa Irene Severini*___ CDD836A789754F5... _____*Melissa Irene Severini*_ Date 4/6/2026

Buyer/Tenant ___*Kevin David Clark*___ 096A4CB68438466... _____*Kevin David Clark*_ Date 4/6/2026

Seller/Housing Provider ___*Janina M. Hoskins*___ 52EE384D7932455... _____*Janina M Hoskins, Chapter 7 Trustee*_ Date 4/9/2026

Seller/Housing Provider _____ Date _____

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.  THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.  This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**ADM REVISED 6/25 (PAGE 1 OF 1)**

Case: 24-10714   Doc# 246   Filed: 04/09/26   Entered: 04/09/26 18:29:36   Page 34 of 88

**ADDENDUM (ADM PAGE 1 OF 1)**

efed391a-1213-4dcd-87be-d27bee65160b

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

DocuSigned by:

*Melissa Irene Severini*

CDD836A7897F4F5...

4/6/2026

DocuSigned by:

*Kevin David Clark*

096A4CB68438466...

4/6/2026

Jennifer C. Hayes (197252)
FINESTONE HAYES LLP
456 Montgomery Street, Suite 1300
San Francisco, CA 94104
Tel.:    (415) 616-0466
Fax:    (415) 398-2820
Email: jhayes@fhlawllp.com

Attorneys for Janina M. Hoskins,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>KENNETH MATTSON,<br><br>Debtor. | Case No. 24-10714-CN<br>Chapter 7<br><br>**DECLARATION OF JANINA M. HOSKINS IN SUPPORT OF TRUSTEE'S MOTION: (1) TO SELL REAL PROPERTY FREE AND CLEAR OF ENCUMBRANCE, SUBJECT TO OVERBIDS; (2) TO AUTHORIZE PAYMENT OF MORTGAGE, COMMISSIONS, AND OTHER EXPENSES; AND (3) FOR GOOD FAITH PURCHASER DETERMINATION**<br><br>Date: April 10, 2026<br>Time: 11:00 a.m.<br>Ctrm: Via Zoom or In Person<br>         U.S. Bankruptcy Court<br>         1300 Clay St., 2nd Floor, Ctrm. 215<br>         Oakland, CA 94612. |

I, Janina M. Hoskins, declare as follows:

1.      I am the duly appointed Chapter 7 trustee (the "Trustee") of the bankruptcy estate of Kenneth W. Mattson (the "Debtor") in the above-captioned case.  The following statements are based on my own personal knowledge and observation, or upon information and belief based

HOSKINS DECLARATION IN SUPPORT OF TRUSTEE'S MOTION TO SELL PROPERTY FREE
AND CLEAR AND AUTHORIZING PAYMENTS                                                                1

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

upon my review of the court and business records in this case. If called to testify on this matter, I could and would competently testify to the matters set forth in this Declaration. I submit this Declaration in support of the concurrently filed *Chapter 7 Trustee's Motion: (1) to Sell Real Property Free and Clear of Encumbrance, Subject to Overbids; (2) Authorize Payment of Mortgage, Commissions, and Other Expenses; and (3) for Good Faith Purchaser Determination* (the "Motion").

## I.   BACKGROUND FACTS

2.   I am informed and believe that this bankruptcy case was commenced as an involuntary Chapter 11 proceeding on November 22, 2024, by petitioning creditors LeFever Mattson and Windtree, LP, arising out of extensive allegations of prepetition misconduct by the Debtor in connection with real estate investment entities and investor funds. ECF 1. The Debtor allegedly engaged in years-long transactions involving the sale of undisclosed interests in limited liability companies and partnerships, as well as self-dealing property transfers, which resulted in substantial litigation exposure, investor claims, regulatory scrutiny and a federal criminal case. *See*, *e.g.*, ECF 26.

3.   I am informed and believe that, years prior to the commencement of the involuntary case, the Debtor acquired a fee interest in 62 Farragut Avenue #A, Piedmont, California 94610 (the "Property"), a single-family residence, which now belongs to the bankruptcy estate. (ECF 185, Schedule A; ECF 215-1, Preliminary Title Report (the "PTR"), title vested as Debtor's "sole and separate property").

4.   I am informed and believe that, on or about September 12, 2017, a deed of trust in the sum of $5,600,000 was recorded against the Property in favor of BofI Federal Bank ("BofI") in the official records of Alameda County under Recorder's Serial Number 2017199139 (the "Mortgage"). (ECF 215-1, Hoskins Declaration in Support of 9019 Motion, Exhibit A, PTR ¶2,). I am informed and believe that BofI changed its name to Axos Bank. (ECF 215-1, Hoskins Declaration in Support of 9019 Motion, ¶2).

HOSKINS DECLARATION IN SUPPORT OF TRUSTEE'S MOTION TO SELL PROPERTY FREE AND CLEAR AND AUTHORIZING PAYMENTS                                          2

5.   I am informed and believe that a loan modification agreement (the "Loan Modification Agreement") was entered into by and between Kenneth Mattson and Axos Bank, which amended the Mortgage.  I am informed and believe that the Loan Modification Agreement was recorded in the official records of Alameda County on December 8, 2021, under Recorder's Serial Number 2021390655.  (ECF 215-1, Hoskins Declaration in Support of 9019 Motion, ¶2, Exhibit A, PTR).

6.   I am informed and believe that LAFM Loan Owner, LLC (the "Lender") purchased the Mortgage from Axos Bank, and the loan was assigned to the Lender.  (ECF 215-1, Hoskins Declaration in Support of 9019 Motion, ¶2).  I am informed and believe that the Lender financed the loan purchase, and Axos Bank maintains the collateral assignment of the Mortgage. (*Id.*).  I am informed and believe that, on or about January 21, 2025, a Collateral Assignment of Deed of Trust was recorded in the official records of Alameda County under Recorder's Serial Number 2025010265 (the "Assignment"), pursuant to which the Mortgage and related loan documents were assigned to Lender.   (ECF 215-1, Hoskins Declaration in Support of 9019 Motion ¶2, Exhibit A, PTR).

7.   I am informed and believe that, on or about May 23, 2025, a lis pendens was recorded against the Piedmont Property in favor of the United States Government in the official records of Alameda County under Recorder's Serial Number 2025067539 (the "Lis Pendens"). (*Id.* ECF 215-1, Hoskins Declaration in Support of 9019 Motion, Exhibit A, Exception 10).

8.   The Debtor's fee interest in the Property, a single-family residence, belongs to the bankruptcy estate.  (ECF 185, Schedule A; ECF 215-1, PTR, title vested as Debtor's "sole and separate property").

9.   I am informed and believe that the Lender holds an allowed secured claim against the Property in the approximate sum of $5,000,000, comprised of outstanding principal in the sum of $4,146,907.14, plus pre- and post-petition interest at the non-default rate, and all reasonable documented fees and costs (including professional fees and servicing fees).  (ECF

HOSKINS DECLARATION IN SUPPORT OF TRUSTEE'S MOTION TO SELL PROPERTY FREE AND CLEAR AND AUTHORIZING PAYMENTS                                                             3

215-1, Exhibit B; ECF 225, Order Approving 9019 Motion). The actual amount of the Lender's claim is subject the Lender's payoff demand and the Order Approving 9019 Motion.

10. I am informed and believe that the federal government recorded the Lis Pendens against the Property, based on its pending judicial forfeiture action against the Debtor, which was recorded on May 23, 2025, after the involuntary petitions were filed, but prior to entry of the order for relief. (ECF 2015-1, Exhibit A, Exception 10, the "Lis Pendens").

11. The Brokers actively marketed the Property and presented me with offers. I reviewed and analyzed the offers and, as an exercise of my reasonable business judgment, selected what I believe to be the best and highest offer, made from prospective buyers ███ ████████████████████ (the "Buyers"). I presented a counteroffer to the Buyers, which they accepted. On or about March 9, 2026, my brokers informed me that they had received the Buyers' deposit in the sum of $237,000. On or about March 10, 2026, my brokers informed me that the Buyers had removed their sole contingency.

## II. KEY TERMS OF THE SALE AGREEMENT

12. The key documents that comprise the agreement for the purchase and sale of the Property are (1) the *California Residential Purchase Agreement and Joint Escrow Instruction and Addendum No. 1*; (2) the Trustee's *Counter-Offer*; and (3) the Buyers' *Contingency Removal No. Two* (together with the other related documents, the "Sale Agreement"). Attached as **Exhibit A** to this Declaration is an authentic copy of the Sale Agreement.

13. The proposed sale is to ████████████████████████ (the "Buyers") for $7,900,000 with an initial deposit of $237,000, which has been received.

14. As set forth above, the Buyers have removed all contingencies.

15. Per the Sale Agreement, the bankruptcy estate as seller (the "Seller") shall pay for a Natural Hazard Zone Disclosure Report provided by JCP-LGS Disclosures; smoke alarms, carbon monoxide detectors, and water heater bracing. Seller shall also pay all of the County transfer taxes and fees and 50% of the city transfer taxes and fees. All other costs associated

HOSKINS DECLARATION IN SUPPORT OF TRUSTEE'S MOTION TO SELL PROPERTY FREE AND CLEAR AND AUTHORIZING PAYMENTS                                                      4

with the sale, other than the Buyers' 50% responsibility for the city transfer taxes and fees, shall be the sole responsibility of the Buyers.

16. The purpose of the sale of the Property is to realize the maximum value for the bankruptcy estate.

### III. LIEN CLAIMANTS

17. The preliminary title report shows various liens and obligations against the Property. ECF 215-1, PTR.

18. The PTR shows a voluntary lien is held by the Lender, which holds the first deed of trust against the Property. Upon Court approval, the Trustee will cause the Lender to be paid out of the sale proceeds as set forth in detail below.

19. The PTR also shows a lis pendens in favor of the federal government. (ECF 2015-1, Exhibit A, Exception 10).

### IV. PAYMENT OF MORTGAGE, BROKER'S COMMISSIONS, COSTS TO PREPARE THE PROPERTY FOR SALE, AND OTHER EXPENSES

20. I request authority to pay the Lender out of escrow on its note and deed of trust, as well as its related legal expenses, pursuant to the Lender's payoff demand and further to the Court's Order approving the compromise between the Lender and the estate.

21. I request authority to pay the real estate commissions of the Broker as well as any other ordinary costs of sale.

22. I request authority to cause to be paid out of escrow expenses incurred in preparing the Property for sale, including property maintenance, locksmithing, and other actions to benefit the bankruptcy estate. The approximate, estimated expenses are as follows, however, the actual amounts could be higher or lower:

   a. Staging $18,100 (approximate)

   b. Pest Inspection $1,100 (approximate)

   c. Cleaning $2,500 (approximate)

   d. Landscape cleanup $2,820 (approximate)

HOSKINS DECLARATION IN SUPPORT OF TRUSTEE'S MOTION TO SELL PROPERTY FREE AND CLEAR AND AUTHORIZING PAYMENTS

5

e. Junk removal $25,000 (estimate)

23. I request authority to dispose of any personal property left at the Property and to pay related expenses related to the removal of items left at the Property via 1-800-Got-Junk or the like. My estimate of the cost of such junk removal is $25,000 or less; however, the acutal amount could be higher, because the Property is large. I am informed and believe that the square footage of the Property is 11,840 square feet, and the Property needs to be conveyed free of all personal property items.

## V. PROPOSED TERMS OF OVERBID PROCEDURES

24. The proposed sale of the Property is subject to overbid.

25. To be a qualified overbidder, overbidder must agree to same or better terms of existing sale contract (including accepted counteroffers or other addenda) and waive all contingencies. Overbidder must provide a deposit of $240,000 via cashier's check or other good funds, to be delivered to counsel for the Seller (Janina M. Hoskins, solely in her capacity as Chapter 7 Trustee), Stephen D. Finestone/Jennifer C. Hayes, Finestone Hayes LLP, 456 Montgomery Street, Suite 1300, San Francisco, CA 94104 or to Seller's realtor, Anne Herrera. Overbidders must provide proof of funds and financial ability to complete this transaction, which shall be evaluated and determined in my sole and absolute discretion.

26. Overbidders must provide a notice of their intent to participate in the auction, as well as delivery of their deposit, no later than 12:00 Pacific Time on April 6, 2026. In the event the Trustee receives a qualifying overbid, an auction will be held virtually via telephone, Zoom, Microsoft Teams, or similar platform at a date and time to be determined by the Trustee. The Buyers and any bidders will be notified of the date, time, and format of the auction, if any occurs. Pursuant to the Sale Agreement, the minimum initial overbid is $8,000,000 and minimum overbid increments are $50,000 each.

27. I reserve the right, in my sole discretion, to refuse bids that do not, in my sole opinion, conform with the terms of the Agreement. I also, in my sole discretion, will determine the highest and/or best bid and whether a bid is equal to or better than the offer by the Buyers.

HOSKINS DECLARATION IN SUPPORT OF TRUSTEE'S MOTION TO SELL PROPERTY FREE AND CLEAR AND AUTHORIZING PAYMENTS                                                                6

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

28. Applying § 363 of the Bankruptcy Code, it is my opinion that the proposed sale of the Property should be approved. As set forth above, I have determined that the best method of maximizing the value of this Property is through a prompt sale of the Property, following marketing of the Property by an experienced broker. The Agreement with the Buyers is for $7,900,000, which I find to be fair and reasonable. In addition, the final sale price will be tested by an open and fair auction process—the best means, under the circumstances, for ensuring that the maximum price is being paid for the Property.

29. I seek to sell the Property free and clear of the Lis Pendens, with the lien attaching to the net sale proceeds to the same extent, validity, and priority, if any, that it attaches to the Property.

30. I am informed and believe that the Lis Pendens is in *bona fide* dispute, because the federal government's criminal case against the Debtor is still live, and no adjudication has been entered. Thus, the government's asserted forfeiture and/or restitution interest depends on factual determinations that have not yet occurred, and there exists an objective basis for a dispute regarding the validity and extent of any present interest in the Property. Attached as Exhibit B is an authentic copy of the docket in the criminal case as of March 12, 2026.

31. The selection of the Buyers was the product of a good faith and arm's length offer and acceptance, which will be tested by an opportunity for overbids and an auction.

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct. Executed in Goodyear, Arizona on March 12, 2026.

*Janina M. Hoskins*
_____
Janina M. Hoskins, Trustee

HOSKINS DECLARATION IN SUPPORT OF TRUSTEE'S MOTION TO SELL PROPERTY FREE AND CLEAR AND AUTHORIZING PAYMENTS 7

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

# Exhibit A



## Advisory Regarding Completing Documents Electronically

**PLEASE READ THE FOLLOWING IMPORTANT INFORMATION REGARDING SIGNING DOCUMENTS ELECTRONICALLY.**

**During a real estate listing and/or real estate sale transaction you may be asked to sign various documents electronically if you are willing to use that method. Because of the nature of electronic documents it is possible to skip from one signature line to the next, making it easy to ignore the language of the paragraph(s) to which the signatures or initials apply. Because of this feature of electronic signatures it is important that you read and understand the following recommendations:**

1. **PLEASE READ EACH DOCUMENT:** It is important that you read and understand each transaction document prior to initialing any paragraphs or pages or signing the document where indicated. You should take the time to thoroughly read through each document and make sure that you understand what you are signing, just as you should do if you were signing paper versions of these documents. You may have to scroll up or down to read a whole page.

2. **TAKE YOUR TIME:** There may be a temptation to just skip from one place indicated for your signature to the next. This is easy to do when signing documents in an electronic format. However, it is essential that you TAKE YOUR TIME. Review the entire document before initialing or signing.

3. **OPTIONAL SIGNATURES OR INITIALS:** If there is an indication that a signature or initial is optional, such as for Liquidated Damages or Arbitration paragraphs, take your time to consider whether you want to sign/initial that paragraph so as to make it a part of the contract.

4. **MORE THAN ONE SIGNER:** If more than one person is required to sign the following documents, it is essential that each party separately affix their signatures where indicated on each document.

5. **PRINT A COPY:** Before sending the documents after signature, print a copy; because once you send the documents they are gone making it difficult to obtain a copy of what you signed.

6. **QUESTIONS OR CONCERNS:** If you have any questions or concerns it is important that you call or email your real estate professional or if you need legal, tax or insurance advice, be certain to consult the appropriate professional(s).

I acknowledge receipt and I have carefully read this Advisory.

Seller/Buyer: ███████████████████ _____ Date: __3/4/2026_____

Seller/Buyer: ███████████████████ _____ Date: __3/4/2026_____

ESA                                                                                                                                    Rev. 10/15



**CALIFORNIA ASSOCIATION OF REALTORS®**

# ADDITIONAL AGENT ACKNOWLEDGEMENT

**C**O**MPASS**

(C.A.R. Form AAA, Revised 12/25)

This is an addendum to the Purchase Agreement, OR ☐ Residential Listing Agreement, ☒ Buyer Representation Agreement, ☐ Other _____ ("Agreement"), dated _____*03/04/2026*_____, on property known as _____*62 Farragut Avenue, #A, Piedmont, CA  94610*_____ between ███████████████████████████ ("Buyer/Tenant/Broker") and _____*Compass*_____ ("Seller/Housing  Provider/Broker"). The term Housing Provider also includes Landlord or Rental Property Owner.

1. Check **ONE** box **ONLY**. If both **1A** and **1B** apply, use separate AAA forms for each.
   - **A.** ☐ Multiple Associate-Licensees working with Seller/Housing Provider;
   - **OR** **B.** ☒ Multiple Associate-Licensees working with Buyer/Tenant;

2. **A.** The real estate licensees named below are all conducting real estate licensed activity under the same Broker:
   Real Estate Broker name: *Compass*
   If applicable, Team Name: _____
   **B.** The licensees below, and any licensee(s) listed in the Agreement (if not listed below), have entered into a separate written agreement to share responsibility and compensation for certain real estate licensed activity.  The licensees have also informed Broker of, or have given Broker a copy of, that separate written agreement.
   **C.** List ALL agents (list may include, but is not required to include, licensees named in the Agreement):
   Agent *Sarah Abel* DRE Lic # *00928803*
   Agent *Julie Gardner* DRE Lic # *01431765*
   Agent _____ DRE Lic # _____
   Agent _____ DRE Lic # _____
   Agent _____ DRE Lic # _____
   ☐ Additional Licensees: _____

3. All parties understand, acknowledge and agree that, wherever the name of any licensee above is indicated, in the Agreement or a related document, as a representative for the Buyer/Tenant or Seller/Housing Provider specified above, the other licensees shall also be deemed to be named.
   Note: If this form is only being used to modify a Buyer Representation Agreement, neither the Seller nor the Seller's Broker need to sign below. If this form is only being used to modify a Listing Agreement, neither the Buyer nor the Buyer's Broker need to sign below.

**By signing below, all parties acknowledge that each has received a copy of this Additional Agent Acknowledgement, and each has read, understands, and agrees to its terms.**

| | | |
|---|---|---|
| Buyer/Tenant ███████████ | ███████████ Date | 3/4/2026 |
| Buyer/Tenant ███████████ | ███████████ Date | 3/4/2026 |
| Seller/Housing Provider *Janina M. Hoskins* | *Janina M. Hoskins, Chapter 7 Trustee* Date | 3/6/2026 |
| Seller/Housing Provider | Date | |

Buyer's Brokerage Firm *Compass*  DRE Lic. #*01527235*
By *Julie Gardner* Julie Gardner  *Sarah Abel* DRE Lic. # *00928803*  Date 3/4/2026
Seller's Brokerage Firm *Village Associates*  Sotheby's Int'l Realty  DRE Lic. #*01301392*  3/4/2026
By *Anne Herrera* Anne Herrera  *Alexis Thompson* DRE Lic. # *01849227*  Date 3/6/2026
01413563

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*
**AAA REVISED 12/25 (PAGE 1 OF 1)**

**EQUAL HOUSING OPPORTUNITY**

## ADDITIONAL AGENT ACKNOWLEDGEMENT (AAA PAGE 1 OF 1)

Compass - San Francisco - Beach Street, 891 Beach Street San Francisco CA 94109      Phone: (415) 660-9955      Fax:      Elisa Pandolfi &
Sarah Abel      Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
### (As required by the Civil Code)
### (C.A.R. Form AD, Revised 12/24)

**COMPASS**

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code §§ 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

## SELLER'S AGENT

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:
   (a)   Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)   A duty of honest and fair dealing and good faith.
   (c)   A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## BUYER'S AGENT

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. This includes a Buyer's agent under a buyer-broker representation agreement with the Buyer. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:
   (a)   Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)   A duty of honest and fair dealing and good faith.
   (c)   A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## AGENT REPRESENTING BOTH SELLER AND BUYER

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a)   A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b)   Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

## SELLER AND BUYER RESPONSIBILITIES

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of §§ 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully.**

**Note: Real estate broker commissions are not set by law and are fully negotiable.**

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant     Date 3/4/2026

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant     Date 3/4/2026

Agent    DocuSigned by:     Compass     DRE Lic. # *01527235*

By   *Julie Gardner*   Real Estate Broker (Firm)   *Sarah Abel* DRE Lic. # *00928803*   Date 3/4/2026

(Salesperson or Broker-Associate, if any)     01431765     3/4/2026

**AD REVISED 12/24 (PAGE 1 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Compass - San Francisco - Beach Street - 801 Beach Street San Francisco CA 94109   Phone: (415) 660-9955   Fax:   Elisa Pandolfi & Sarah Abel   Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

Case: 24-10714   Doc# 236-1   Filed: 04/09/26   Entered: 04/09/26 12:18:46   Page 45 of 0883

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

CIVIL §§ 2079.13 - 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13.** As used in this section and §§ 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with § 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with § 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes a vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with § 1940) of Title 5, (3) a mobilehome, as defined in § 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in § 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of § 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in § 18007 of the Health and Safety Code, or a mobilehome as defined in § 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in § 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Single-family residential property" or "single-family residential real property" means any of the following: (1) Real property improved with one to four dwelling units, including a leasehold exceeding one year's duration. (2) A unit in a residential stock cooperative, condominium, or planned unit development. (3) A mobilehome or manufactured home when offered for sale or sold through a real estate broker pursuant to § 10131.6 of the Business and Professions Code. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of § 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(o)** "Buyer's agent" means an agent who represents a buyer in a real property transaction. **(p)** "Buyer-broker representation agreement" means a written contract between a buyer of real property and a buyer's agent by which the buyer's agent has been authorized by the buyer to provide services set forth in subdivision (a) of § 10131 of the Business and Professions Code for or on behalf of the buyer for which a real estate license is required pursuant to the terms of the contract.

**2079.14. (a)** A copy of the disclosure form specified in § 2079.16 shall be provided in a real property transaction as follows: (1) The seller's agent, if any, shall provide the disclosure form to the seller before entering into a listing agreement. (2) The buyer's agent shall provide the disclosure to the buyer as soon as practicable before the execution of a buyer-broker representation agreement and execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer. **(b)** The agent providing the disclosure form specified in § 2079.16 shall obtain a signed acknowledgement of receipt from the buyer or seller except as provided in § 2079.15.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to § 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller. **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)

Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)

Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by § 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

**2079.18** (Repealed pursuant to AB-1289)

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of § 2079.14 and § 2079.17 are complied with.

**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

**2079.23 (a)** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship. **(b)** A lender or an auction company retained by a lender to control aspects of a transaction of real property subject to this part, including validating the sales price, shall not require, as a condition of receiving the lender's approval of the transaction, the homeowner or listing agent to defend or indemnify the lender or auction company from any liability alleged to result from the actions of the lender or auction company. Any clause, provision, covenant, or agreement purporting to impose an obligation to defend or indemnify a lender or an auction company in violation of this subdivision is against public policy, void, and unenforceable.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**AD REVISED 12/24 (PAGE 2 OF 2)**


EQUAL HOUSING OPPORTUNITY

DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

Case: 24-10714   Doc# 236-11 Filed: 04/30/2026 Entered: 04/30/2026 12:04:03 Page 46 of
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com   Elisa Pandolfi &
0883

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, Revised 12/25)

**COMPASS**

**Date Prepared:** *March 4, 2026*

**1. OFFER:**
   **A. THIS IS AN OFFER FROM** ███████████████████ ("Buyer").
   **B. THE PROPERTY** to be acquired is _____ *62 Farragut Avenue, #A* _____, situated in
   _____ *Piedmont* _____ (City), _____ *Alameda* _____ (County), California, _____ *94610* _____ (Zip Code),
   Assessor's Parcel No(s). _____ *051-4786-007-00* _____ ("Property").
   **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
   **C. THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**
   **D.** Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

**2. AGENCY:**
   **A. DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationship" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
   **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
   **Seller's Brokerage Firm** _____ *Village Associates* _____ License Number _____ *01301392*
   Is the broker of (check one): [X] the Seller; or [ ] both the Buyer and Seller (Dual Agent).
   **Seller's Agent** _____ *Alexis Thompson* _____ License Number _____ *01849227*
   Is (check one): [X] the Seller's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
   **Buyer's Brokerage Firm** _____ *Compass* _____ License Number _____ *01527235*
   Is the broker of (check one): [X] the Buyer; or [ ] both the Buyer and Seller (Dual Agent).
   **Buyer's Agent** _____ *Sarah Abel* _____ License Number _____ *00928803*
   Is (check one): [X] the Buyer's Agent (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
   **C.** [ ] More than one Brokerage represents [ ] Seller, [ ] Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
   **D. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 17 pages. The Parties are advised to read all 17 pages.

| | Para # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| A | 5, 5B (cash) | **Purchase Price** | $ *7,900,000.00* | [X] All Cash |
| B | | **Close Of Escrow (COE)** | [X] *60* Days after Acceptance OR on [ ] _____ (date) | |
| C | 32A | **Expiration of Offer** | 3 calendar days after all Buyer Signature(s) or *March 6, 2026* (date), at 5PM or *10:00* [ ] AM/ [X] PM | |
| D(1) | 5A(1) | **Initial Deposit Amount** | $ *237,000.00* ( *3.00* % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or *1* ) business days after Acceptance by wire transfer OR [ ] _____ |
| D(2) | 5A(2) | [ ] **Increased Deposit** | See attached Increased Deposit Addendum (C.A.R. Form IDA) | |
| E(1) | 5C(1) | **Loan Amount(s):** First / Interest Rate / Points / If FHA or VA checked, Deliver list of lender required repairs | $ _____ ( _____ % of purchase price) Fixed rate or [ ] Initial adjustable rate • not to exceed _____ % • Buyer to pay up to _____ points to obtain the rate above / 17 (or _____ ) Days after Acceptance | Conventional or, if checked, [ ] FHA (Forms FVAC/HID attached) [ ] VA (Form FVAC attached) [ ] Seller Financing [ ] Other: _____ |
| E(2) | 5C(2) | Additional Financed Amount / Interest Rate / Points | $ _____ ( _____ % of purchase price) Fixed rate or [ ] Initial adjustable rate • not to exceed _____ % • Buyer to pay up to _____ points to obtain rate above | Conventional or, if checked, [ ] Seller Financing [ ] Other: |
| E(3) | 7A | **Occupancy Type** | Primary, or if checked, [ ] Secondary [ ] Investment | |
| F | 5D | **Balance of Down Payment** | $ *7,663,000.00* | |
| | | **PURCHASE PRICE TOTAL** | $ *7,900,000.00* | |

© 2025, California Association of REALTORS®, Inc.

**RPA REVISED 12/25 (PAGE 1 OF 17)**

Buyer's Initials ███ / ███     Seller's Initials  / _____

 EQUAL HOUSING OPPORTUNITY

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 17)**

Compass - San Francisco - Beach Street, 891 Beach Street San Francisco CA 94109     Phone: (415) 660-9955     Fax:     Elisa Pandolfi & Sarah Abel     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

Case: 24-10714     Doc# 236-1     Filed: 04/01/2026     Entered: 04/01/2026 12:46:03     Page 47 of 88

Property Address: *62 Farragut Avenue, #A, Piedmont, CA  94610*   Date: *March 4, 2026*

| G | SELLER PAYMENT TO COVER BUYER EXPENSES AND COSTS | | |
|---|---|---|---|
| G(1) | 5E | ☐ Seller Credit to Buyer | $ _____ | For closing costs |
| G(2) | | ADDITIONAL SELLER CREDIT TERMS (does not include buyer broker compensation): _____ _____ | | |
| G(3) | 18A | ☒ Seller Payment to Compensate Buyer's Broker | **Seller agrees to pay Buyer's Broker,** out of transaction proceeds, __2.500__ % of the final purchase price AND, if applicable $ _____ OR, if checked ☐ $_____ . | |

| H(1) | 5B | **Verification of All Cash** (sufficient funds) | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
|---|---|---|---|---|
| H(2) | 6A | **Verification of Down Payment and Closing Costs** | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(3) | 6B | **Verification of Loan Application** | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |

| I | | Intentionally Left Blank | |
|---|---|---|---|
| J | 16 | **Final Verification of Condition** | 5 (or _____) Days prior to COE | |
| K | 23 | **Assignment Request** | 17 (or _____) Days after Acceptance | |

| L | | CONTINGENCIES | TIME TO REMOVE CONTINGENCIES | CONTINGENCY REMOVED |
|---|---|---|---|---|
| L(1) | 8A | **Loan(s)** | 17 (or _____) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | **Appraisal:** Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ _____ | 17 (or _____) Days after Acceptance | ☒ No appraisal contingency  Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | **Investigation of Property** | 17 (or __10__) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | **Informational Access to Property** 17 (or __10__) Days after Acceptance  Buyer's right to access the Property for informational purposes is **NOT** a contingency, does **NOT** create cancellation rights, and applies even if contingencies are removed. | | Any contingency in L(1)-L(8) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form CR-B) and checking the applicable box therein.  Removal or Waiver at time of offer is against Agent advice. See **paragraph 8I.** |
| L(4) | 8D | **Insurance** | 17 (or _____) Days after Acceptance | |
| L(5) | 8E, 14A | **Review of Seller Documents** | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(6) | 8F, 13A | **Preliminary ("Title") Report** | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(7) | 8G, 11M | **Common Interest Disclosures** Per Civil Code § 4525 or Agreement | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | ☒ CR-B attached |
| L(8) | 8H, 9B(6) | **Review of leased or liened items** (E.g. solar panels or propane tanks) | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(9) | 8K | **Sale of Buyer's Property** Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ **C.A.R. Form COP attached** | | |

| M | | Possession | Time for Performance | Additional Terms |
|---|---|---|---|---|
| M(1) | | **Time of Possession** | Upon notice of recordation, OR ☐ 6 PM or _____ ☐ AM/ ☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7D | **Seller Occupied or Vacant units** | COE date or, if checked below, ☐ _____ days after COE (29 or fewer days) ☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | 4A, 7A | **Occupied units by tenants or anyone other than the Seller** | Subject to tenant rights, unless primary or secondary residence in **3E(3)**, or Otherwise Agreed (TOPA may be used) | See **7A** if TOPA is not attached. ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) attached. |

| N | | Documents/Fees/Compliance | Time for Performance | |
|---|---|---|---|---|
| N(1) | 14A | Seller Delivery of Documents | 7 (or _____) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or _____) Days after Delivery | |
| N(3) | 11M(2) | Time to pay fees for ordering HOA Documents | 3 (or _____) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or _____) Days after Acceptance | |
| N(5) | 24 | Evidence of representative authority | 3 Days after Acceptance | |

| O | | Intentionally Left Blank | |
|---|---|---|---|

**RPA REVISED 12/25 (PAGE 2 OF 17)**    Buyer's Initials [Initial] ▓ / [Initial] ▓    Seller's Initials [Initial] JMH / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com  Elisa Pandolfi

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

Property Address: *62 Farragut Avenue, #A, Piedmont, CA  94610*  Date: *March 4, 2026*

| P | Items Included and Excluded | | |
|---|---|---|---|
| **P(1)** | 9 | **Items Included** - All items specified in Paragraph 9B are included and the following, if checked: | |

| | | |
|---|---|---|
| [X] Stove(s), oven(s), stove/oven combo(s); <br> [X] Refrigerator(s); <br> [ ] Wine Refrigerator(s); <br> [X] Washer(s); <br> [X] Dryer(s); <br> [X] Dishwasher(s); <br> [X] Microwave(s); <br> **Additional Items Included:** <br> [X] *All Working Appliances* . | [ ] Video doorbell(s); <br> [ ] Security camera equipment; <br> [ ] Security system(s)/alarm(s), other than separate video doorbell and camera equipment; <br> [ ] Smart home control devices; <br> [ ] Wall mounted brackets for video or audio equipment; <br> [X] *All working home security equip.* . <br> [ ] _____ . | [ ] Above-ground pool(s) / [ ] spa(s); <br> [X] Bathroom mirrors, unless excluded below; <br> [ ] Electric car charging systems and stations; <br> [ ] Potted trees/shrubs; <br> [ ] _____ <br> [ ] _____ |

| **P(2)** | **Excluded Items:** [ ] _____ ; | [ ] _____ ; | [ ] _____ ; |
|---|---|---|---|

| Q | Allocation of Costs | | |
|---|---|---|---|

| | Para # | Item Description | Who Pays (if Both is checked, cost to be split equally unless Otherwise Agreed) | Additional Terms |
|---|---|---|---|---|
| **Q(1)** | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | [ ] Buyer [X] Seller [ ] Both _____ <br><br> [ ] Provided by: *JCP-LGS Disclosures* | [ ] Environmental <br> [ ] Other _____ |
| **Q(2)** | | Optional Wildfire Disclosure Report <br> *Click here for Additional Report* | [ ] Buyer [ ] Seller [ ] Both _____ <br> Provided by: *Click here to select Wildfire Service Provider* | |
| **Q(3)** | | (A) _____ Report <br> (B) _____ Report | [ ] Buyer [ ] Seller [ ] Both _____ <br> [ ] Buyer [ ] Seller [ ] Both _____ | |
| **Q(4)** | 10B(1) | Smoke alarms, CO detectors, water heater bracing | [ ] Buyer [X] Seller [ ] Both _____ | |
| **Q(5)** | 10A 10B(2) | Government Required Point of Sale **inspections, reports** | [ ] Buyer [X] Seller [ ] Both _____ | |
| **Q(6)** | 10B(2) | Government Required Point of Sale **corrective/remedial actions** | [X] Buyer [ ] Seller [ ] Both _____ | |
| **Q(7)** | 19B | Escrow Fee | [ ] Buyer [ ] Seller [ ] Both _____ [X] Each to pay their own fees <br> Escrow Holder: *Old Republic Title Company - Michael Gatti* | |
| **Q(8)** | 13 | Owner's title insurance policy | [X] Buyer [ ] Seller [ ] Both _____ <br> Title Co. (If different from Escrow Holder): *Old Republic Title Company* | |
| **Q(9)** | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| **Q(10)** | | County transfer tax, fees | [ ] Buyer [X] Seller [ ] Both _____ | |
| **Q(11)** | | City transfer tax, fees | [ ] Buyer [ ] Seller [X] Both *50/50* ____ | |
| **Q(12)** | 11M(2) | HOA fee for preparing disclosures | Seller | |
| **Q(13)** | | HOA certification fee | Buyer | |
| **Q(14)** | | HOA transfer fees | [ ] Buyer [ ] Seller [ ] Both _____ | Unless Otherwise Agreed,  Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee.  Applies if separately billed or itemized with cost in transfer fee. |
| **Q(15)** | | Private transfer fees | Seller, or if checked, [ ] Buyer [ ] Both _____ | |
| **Q(16)** | | _____ fees or costs | [ ] Buyer [ ] Seller [ ] Both _____ | |
| **Q(17)** | | _____ fees or costs | [ ] Buyer [ ] Seller [ ] Both _____ | |
| **Q(18)** | 10C | Home warranty plan chosen by Buyer. Coverage includes, but is not limited to: *Buyers Agent to purchase* ____ <br> _____ | [X] Buyer [ ] Seller [ ] Both _____ <br> Issued by: *\*Fidelity National Home Warranty* <br> [ ] Buyer waives home warranty plan | If Seller or Both checked, Seller's cost not to exceed $ *1,000.00* . |

| R | OTHER TERMS: _____ |
|---|---|
| | _____ |

**RPA REVISED 12/25 (PAGE 3 OF 17)**  Buyer's Initials [ ] / [ ]  Seller's Initials  / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 17)**

Case: 24-10714    Doc# 236-1 Filed: 04/30/2026 Entered: 04/30/2026 12:31:45:03 Page 49 of
0883

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com   Elisa Randolf &

Property Address: *62 Farragut Avenue, #A, Piedmont, CA 94610*      Date: *March 4, 2026*

**4. PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)

  **A. PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:

- ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
- ☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
- ☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
- ☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
- ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
- ☐ Mixed Use Purchase Addendum (C.A.R. Form MU-PA)    ☐ Other _____

  **B. OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:

- ☒ Addendum # _____*1*_____ (C.A.R. Form ADM)    ☐ Short Sale Addendum (C.A.R. Form SSA)
- ☐ Back Up Offer Addendum (C.A.R. Form BUO)    ☐ Court Confirmation Addendum (C.A.R. Form CCA)
- ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
- ☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)    ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
- ☒ Other *EBPAA*    ☒ Other *Addendum One*

  **C. BUYER AND SELLER ADVISORIES: (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)**

- ☒ Buyer's Investigation Advisory (C.A.R. Form BIA)    ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
- ☒ Wire Fraud Advisory (C.A.R. Form WFA)    ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
       (Parties may also receive a privacy disclosure from their own Agent.)
- ☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)    ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
- ☐ Trust Advisory (C.A.R. Form TA)    ☐ Probate Advisory (C.A.R. Form PA)
- ☐ REO Advisory (C.A.R. Form REO)    ☐ Other _____
- ☐ Other _____    ☐ Other _____

**5. ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

  **A. DEPOSIT:**

    (1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.

    (2) **RETENTION OF DEPOSIT: Paragraph 29, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney: (i) Before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code; and (ii) Regarding possible liability and remedies if Buyer fails to deliver the deposit.**

  **B. ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

  **C. LOAN(S):**

    (1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.

    (2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.

    (3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.

    (4) **FHA/VA:** If FHA or VA is checked in **paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) **(i)** of any lender requirements that Buyer requests Seller to pay for or otherwise correct or **(ii)** that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

  **D. BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

  **E. LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6. ADDITIONAL FINANCING TERMS:**

  **A. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.

  **B. VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

  **C. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date **(paragraph 3B)** even if based upon alternate financing. Buyer's inability to obtain financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

---

**RPA REVISED 12/25 (PAGE 4 OF 17)**      Buyer's Initials [____] / [____]    Seller's Initials  *JMH* / [____]   

Case: 24-10714   Doc# 230-11 Filed: 04/09/2026 Entered: 04/09/2026 12:04:05 Page 50 of 0883

Property Address: *82 Farragut Avenue, #A, Piedmont, CA 94610*     Date: *March 4, 2026*

**7. CLOSING AND POSSESSION:**

**A. OCCUPANCY:** If Buyer intends to occupy as a primary or secondary residence (see **paragraph 3E(3)**), and unless Otherwise Agreed, such as in C.A.R. Form TOPA: **(i)** the unit Buyer intends to occupy shall be vacant at the time possession is delivered to Buyer, and **(ii)** if the Property contains more than one unit, within **3 Days** after Acceptance Buyer shall give Seller written notice of which unit Buyer intends to occupy. Occupancy may impact available financing. **Seller shall disclose to Buyer if occupied by tenants or persons other than Seller, and attach C.A.R. Form TOPA in a counter offer if not part of Buyer's offer.**

**B. CONDITION OF PROPERTY ON CLOSING:**
Unless Otherwise Agreed: **(i)** the Property shall be delivered "**As-Is**" in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; **(iii)** Except as specified in **paragraph 9C**, Seller is not responsible to repair any holes left after the removal of any wall hangings (such as pictures and mirrors), brackets, nails or other fastening devices; and **(iv)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring Legal Action, as per this Agreement, to receive reasonable costs from Seller.

**C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

**D. SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed: The Parties are advised to **(i)** consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and **(ii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties. Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**E. At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

**F.** Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**8. CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

**A. LOAN(S):**
(1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR-B form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**
(2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Insurance contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Insurance contingency but not the loan contingency.
(3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.
(4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
(5) **NO LOAN CONTINGENCY:** If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**B. APPRAISAL:**
(1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR-B form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.
(2) **NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.
(3) **FAIR APPRAISAL ACT NOTICE:**
(A) Any appraisal of the property is required to be unbiased, objective, and not influenced by improper or illegal considerations, including, but not limited to, any of the following: race, color, religion (including religious dress, grooming practices, or both), gender (including, but not limited to, pregnancy, childbirth, breastfeeding, and related conditions, and gender identity and gender expression), sexual orientation, marital status, medical condition, military or veteran status, national origin (including language use and possession of a driver's license issued to persons unable to provide their presence in the United States is authorized under federal law), source of income, ancestry, disability (mental and physical, including, but not limited to, HIV/AIDS status, cancer diagnosis, and genetic characteristics), genetic information, or age.
(B) If a buyer or seller believes that the appraisal has been influenced by any of the above factors, the seller or buyer can report this information to the lender or mortgage broker that retained the appraiser and may also file a complaint with the Bureau of Real Estate Appraisers at https://www2.brea.ca.gov/complaint/ or call (916) 552-9000 for further information on how to file a complaint.

RPA REVISED 12/25 (PAGE 5 OF 17)

Buyer's Initials _____ / _____    Seller's Initials  *JMH* / _____

EQUAL HOUSING OPPORTUNITY

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 17)**

Case: 24-10714 Doc# 230-1 Filed 04/03/2026 Entered 04/03/2026 31:29:46 Page 51 of 101

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com   Elisa Pandolfi &

0883

**C.**   **INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12.**

**D.**   **INSURANCE:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's assessment of the availability and approval of the cost for any insurance policy desired under this Agreement.

**E.**   **REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's review and approval of Seller's documents required in **paragraph 14A.**

**F.**   **TITLE:**

    (1)   This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.

    (2)   Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**G.**   **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(7)**, contingent upon Buyer's review and approval of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11M** ("CI Disclosures").

**H.**   **BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY (IF APPLICABLE):** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(8)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(8)**, refuses or is unable to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**I.**   **REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**J.**   **REMOVAL OF CONTINGENCY OR CANCELLATION:**

    (1)   **For any contingency specified in paragraph 3L, 8, or elsewhere, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**

    (2)   For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after Delivery of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.

    (3)   If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**K.**   **SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(9).**

**9.**   **ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A.**   **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

**B.**   **ITEMS INCLUDED IN SALE:**

    (1)   All EXISTING fixtures and fittings that are attached to the Property;

    (2)   EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window) and any associated hardware and rods, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool heaters, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**

         **Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P(2)** or excluded by Seller in a counter offer.

    (3)   Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.

    (4)   Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.

    (5)   Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Seller shall de-list any devices from any personal accounts and shall cooperate with any transfer of services to Buyer. Buyer is advised to change all passwords and ensure the security of any smart home features.

| | Initial | | Initial | | | Initial |
|---|---|---|---|---|---|---|
| Buyer's Initials | | / | | Seller's Initials | *JMH* / | |

**RPA REVISED 12/25 (PAGE 6 OF 17)**



Case: 24-10714   Doc# 296-11 Filed: 04/09/2026 Entered: 04/09/2026 18:29:05   Page 52 of 88  0883

 

(6) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller, within the time specified in **paragraph 3N(1),** shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and **(ii)** Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

(7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6),** and **(ii)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

C. **ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2); (ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

10. **ALLOCATION OF COSTS:**

A. **INSPECTIONS, REPORTS, TESTS AND CERTIFICATES: Paragraphs 3Q(1), (2), (3), and (5)** only determine who is to pay for the inspection, report, test, certificate, or service mentioned; **it does not determine who is to pay for any work recommended or identified in any such document. Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).** Any reports in these paragraphs shall be Delivered in the time specified in **paragraph 3N(1).**

B. **GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**

(1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4).** If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.

(2) **POINT OF SALE REQUIREMENTS:**

(A) Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by the Party specified in **paragraphs 3Q(5) and 3Q(6)** and any such repair, shall be completed prior to final verification of Property, unless Otherwise Agreed. Defensible space compliance shall be determined as agreed in C.A.R. Form FHDS. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.

(B) Buyer shall be provided, within the time specified in **paragraph 3N(1),** unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

(3) **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.

(4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

C. **HOME WARRANTY:**

(1) Buyer shall choose the home warranty plan and any optional coverages. Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18).** Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer and their cost.

(2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

11. **STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A. **TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1),** Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).

(2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.

**RPA REVISED 12/25 (PAGE 7 OF 17)**

Buyer's Initials [____] / [____]    Seller's Initials _JMH_ / _____



EQUAL HOUSING OPPORTUNITY

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com Elisa Landon &

(3) Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; or **(ii)** if exempt from the obligation to provide a TDS, complete either an Exempt Seller Disclosure (C.A.R. Form ESD) or Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer.

(4) In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

**B.  LEAD DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").

(2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C.  HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features on the Property of which Seller is aware that may make the home vulnerable to wildfire and flying embers; **(iii)** a list of possible low cost fire hardening retrofits identifying which ones Seller has completed; and **(iv)** a final inspection report regarding compliance with home fire hardening if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D.  DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E.  ELECTRICAL SYSTEM INSPECTION ADVICE DISCLOSURE:** For any transaction in which a TDS is required, Seller advises the Buyer as follows: "In a purchase of real property, it may be advisable to obtain an inspection by a qualified professional of the electrical system(s) of any buildings, including, but not limited to, the main service panel, the subpanel(s), and wiring. Substandard, recalled, or faulty wiring may cause a fire risk and may make it difficult to obtain property insurance. Limited electrical capacity may make it difficult to support future electrical additions to the building(s), such as solar generation, electric space heating, electric water heating, or electric vehicle charging equipment."

**F.  WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1)**, **11B**, **11C**, **11D** and **11E** are prohibited by Law.

**G.  RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(5)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11A, B, C,** or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**H.  TERMINATION RIGHTS:**

(1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A, B, C, D,** or **E**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.

(2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11G**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**I.  WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**J.  MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K.  NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period.  Agents do not have expertise in this area.)

**RPA REVISED 12/25 (PAGE 8 OF 17)**

Buyer's Initials  / _____   Seller's Initials  / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com   Elisa Pandolfi &

**L. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**M. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
  (1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).
  (2) If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR), unless Seller has otherwise Delivered to Buyer the most current version of any such document: **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**N. SOLAR POWER SYSTEMS:** For properties with any solar panels or solar power systems, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all known information about the solar panels or solar power system. Seller shall use the Solar Advisory and Questionnaire (C.A.R. Form SOLAR).

**O. BALCONIES, EXTERIOR STAIRWAYS AND OTHER ELEVATED ELEMENTS:** For properties with any building containing 3 or more dwelling units with elevated balconies, stairways or other elements, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer the Wooden Balcony and Stairs Addendum (C.A.R. Form WBSA) and comply with its terms.

**P. KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact insurer to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

## 12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:

**A.** Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

**B.** Buyer Investigations include, but are not limited to:
  (1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:
    (A) A general home inspection.
    (B) An inspection for lead-based paint and other lead-based paint hazards.
    (C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).
    (D) Any other specific inspections of the physical condition of the land and improvements.
  (2) Investigation of any other matter affecting the Property, other than those that are specified as separate contingencies. Buyer Investigations do not include, among other things, an assessment of the availability and cost of general homeowner's insurance, flood insurance, and fire insurance. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.

**C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

**E. Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

## 13. TITLE AND VESTING:

**A. PRELIMINARY REPORT:** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

Initial | Initial | Initial

**RPA REVISED 12/25 (PAGE 9 OF 17)**          Buyer's Initials  /           Seller's Initials _JMH_ / _____

EQUAL HOUSING OPPORTUNITY

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 17)**

Case: 24-10714    Doc# 236-1  Filed: 04/09/2026  Entered: 04/09/2026 18:24:03  Page 55 of
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com          Elisa Pandolfi &
0883

**B.** **CONDITION OF TITLE:** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C.** **DISCLOSURE TO BUYER:** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**D.** **FEDERAL REPORTING REQUIREMENT - GEOGRAPHIC TARGETING ORDER:** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

**E.** **SELLER DELIVERY OF INFORMATION:** Seller shall, within **7 Days** after request, give Escrow Holder necessary information to clear title.

**F.** **DEED AND VESTING:** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**G.** **TITLE INSURANCE POLICY:** Buyer shall receive an "ALTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between an ALTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14.** **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR-B, CR-S or CC).**

**A.** **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible to provide to Buyer as specified in **paragraphs 7A, 9B(6), 10, 11A, 11B, 11C, 11D, 11I, 11L, 11M, 11N, 11O, 11P, 13A, 13C, 24, and, if applicable, C.A.R. Form SWPI.**

**B.** **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

(1) Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, Reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11.**

(2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

(3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR-B or CC). Buyer is advised not to remove contingencies related to review of documents until after the documents have been Delivered. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11H.**

(4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of contingency is Delivered to Seller before Seller cancels, Seller may not cancel this Agreement based on that contingency pursuant to **paragraph 14C(1).**

**C.** **SELLER RIGHT TO CANCEL:**

(1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3); (iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A; (v)** Deliver a letter as required by **paragraph 6B; (vi)** In writing assume or accept leases or liens specified in **paragraph 8H; (vii)** Return Statutory and Other Disclosures as required by **paragraph 11G; (viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13D; (ix)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 24; (x)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraph 29;** or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

(3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

---

**RPA REVISED 12/25 (PAGE 10 OF 17)**

Buyer's Initials ___Initial [■] / ___Initial [■]        Seller's Initials ___Initial *JMH* / _____





EQUAL HOUSING OPPORTUNITY

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 17)**

Case: 24-16714   Doc# 296-1  Filed: 04/09/2026  Entered: 04/09/2026 08:09:45:03  Page: 56 of

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        Elisa Pandolfi &

0B83

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

Property Address: 62 Farragut Avenue, #A, Piedmont, CA  94610      Date: **March 4, 2026**

**D.** **BUYER RIGHT TO CANCEL:**
    **(1)** **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.
    **(2)** **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.
    **(3)** **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

**E.** **NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: **(i)** be in writing; **(ii)** be Signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, except for Close of Escrow which shall be Delivered under the terms of **paragraph 14G**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void. However, if the notice is for multiple items, the notice shall be valid for all contingencies and contractual actions for which the Delivery of the notice is within the time permitted in the Agreement and void as to the others. Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

**F.** **EFFECT OF REMOVAL OF CONTINGENCIES:**
    **(1)** **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of Reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any Reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.
    **(2)** **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

**G.** **DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

**H.** **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. **A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

**15. REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**16. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B**; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments to third parties, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

---

**RPA REVISED 12/25 (PAGE 11 OF 17)**

Buyer's Initials   Initial ▊ / Initial ▊    Seller's Initials   Initial _JMH_ / _____

  

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com    **Elisa Pandolfi &**

Case: 24-10714   Doc# 296-1  Filed: 04/09/2026   Entered: 04/09/2026 08:28:48:03  Page 57 of 73

0B83

Property Address: *62 Farragut Avenue, #A, Piedmont, CA  94610*  Date: *March 4, 2026*

## 18. BROKERS AND AGENTS:

**A. COMPENSATION:**

(1) **Broker Compensation:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. The amount of compensation, if a percentage, will be based on the final purchase price. Buyer is advised that Buyer's Broker should not receive compensation from any source in excess of the amount in the buyer representation agreement. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

(2) **Third party beneficiary:** Seller acknowledges and agrees that Buyer's Broker is a third-party beneficiary of this Agreement and may pursue Seller for failure to pay the amount specified in this Agreement.

**B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

## 19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:

**A. ESCROW INSTRUCTION PARAGRAPHS: The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11I, 11M(2), 13 (except 13C), 14H, 17, 18A, 19, 23, 24, 25, 28, 32,** and **33.** The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

**B. ESCROW HOLDER GENERAL PROVISIONS:** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2).** Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3**, **8**, **10**, **11**, or elsewhere in this Agreement.

**C. COPIES; STATEMENT OF INFORMATION; TAX WITHHOLDING INSTRUCTIONS:** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance.** Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11I**, Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11I**.

**D. BROKER COMPENSATION:**

(1) **PAYMENT:** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A.** If a Copy of the separate compensation agreement(s), including if applicable **paragraph 3G(3)** of this Agreement, is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). Buyer's obligation to pay Buyer's Broker shall be offset by any amount that Seller pays Buyer's Broker. Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A**, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

(2) **COMPENSATION DISCLOSURE:** Escrow Holder shall provide to Buyer a closing statement or other written documentation disclosing the amount of compensation paid to Buyer's Broker. Escrow Holder shall provide to Seller a closing statement or other written documentation disclosing: **(i)** the amount of compensation paid to Seller's Broker; and **(ii)** if applicable pursuant to **paragraph 3G(3)** or other mutual instruction of the parties, the amount paid by Seller for Buyer's Broker compensation. Escrow Holder's obligation pursuant to **paragraph 19D**, is not intended to alter any preexisting practice of Escrow Holder to issue, as applicable, joint or separate closing statements. Escrow Holder's obligation pursuant to **paragraph 19D** is independent of, but may be satisfied by, any closing statement mandated by Buyer's lender.

**E. INVOICES:** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

**F. VERIFICATION OF DEPOSIT:** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraph 5A(1) and** C.A.R. Form IDA. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**G. DELIVERY OF AMENDMENTS:** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

Initial _____ / Initial _____   Buyer's Initials _____ / _____   Seller's Initials _JMH_ / _____

**RPA REVISED 12/25 (PAGE 12 OF 17)**



EQUAL HOUSING OPPORTUNITY

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 17)**

Case: 24-10714   Doc# 236-1 Filed: 04/09/26 Entered: 04/09/26 12:49:03 Page 63 of 0883

Property Address: 62 Farragut Avenue, #A, Piedmont, CA 94610     Date: **March 4, 2026**

20. **SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

21. **MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be input into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

22. **ATTORNEY FEES AND COSTS:** In any Legal Action between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A.**

23. **ASSIGNMENT/NOMINATION:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's wholly-owned entity or trust that exists at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first obtaining Seller's separate written consent to a specified assignee (C.A.R. Form AOAA). Buyer shall, within the time specified in **paragraph 3K**, Deliver to Seller any request to assign this Agreement. Seller shall not unreasonably withhold such consent. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Seller's withholding of consent shall be deemed reasonable if: **(i)** Buyer is to receive any monetary or other consideration for the assignment; **(ii)** Buyer makes any misrepresentation(s) to Seller about any aspect of the assignment; or **(iii)** Buyer Delivers an assignment request to Seller after the time specified in **paragraph 3K**. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is Buyer's wholly-owned entity or trust, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender stating assignee is preapproved or prequalified as specified in **paragraph 6B**. Should assignee fail to deliver such letter, Seller, after first giving assignee a Notice to Buyer to Perform, may terminate the assignment. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller. Parties shall provide any assignment agreement to Escrow Holder within **1 Day** after the assignment. Any nomination by Buyer shall be subject to the same procedures, requirements, and terms as an assignment, as specified in this paragraph.

24. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraphs 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California; and **(ii)** shall Deliver to the other Party and Escrow Holder, within **3 Days** after Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5)), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

25. **DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:
    A. **"Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.
    B. **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B**.
    C. **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.
    D. **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.
    E. **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.
    F. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.
    G. **"Close Of Escrow"**, including **"COE"**, means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.
    H. **"Copy"** means copy by any means including photocopy, facsimile and electronic.
    I. **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) Consistent with California Civil Code § 11, after Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or Legal Holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or Legal Holiday ("Allowable Performance Day"), and ending at 11:59 pm. "Legal Holiday" shall mean any holiday or optional bank holiday under Civil Code §§ 7 and 7.1, any holiday under Government Code § 6700. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed or any day that the lender or Escrow Holder under this Agreement is closed, the COE shall occur on the next day the Recorder's office in that County, the lender, and the Escrow Holder is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.
    J. **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

Buyer's Initials _____ / _____     Seller's Initials *JMH* / _____

Case: 24-10714   Doc# 236-1 Filed: 04/09/26 Entered: 04/09/26 12:49:03 Page 59 of 0883

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    Elisa Pandolfi &

K. **"Deliver", "Delivered" or "Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other). A document, or as applicable link to a document, shall be deemed to be "in possession" if it is located in the in-box for the applicable Party or Authorized Agent; or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to the designated electronic delivery address specified in the Real Estate Broker Section, unless Otherwise Agreed in C.A.R. Form DEDA. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party (C.A.R. Form DEDA). Links could be, for example, to DropBox or Google Drive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and recipient opening, the document by link.

L. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Unless Otherwise Agreed, Buyer and Seller agree to the use of Electronic Signatures. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

M. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

N. **"Legal Action"** means a lawsuit or legal proceeding in arbitration or court.

O. **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33.**

P. **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

Q. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

R. **"Sign" or "Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

26. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

27. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. **If at least one but not all Parties initial, a counter offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By Signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

28. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

# REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK
# PROCEED TO NEXT PAGE

Initial ____ Initial ____ Initial ____

**RPA REVISED 12/25 (PAGE 14 OF 17)** Buyer's Initials _____ / _____ Seller's Initials _JMH_ / _____



Case: 24-10714 Doc# 236-1 Filed: 04/09/2026 Entered: 04/09/26 18:20:45:03 Page: 60 of
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com Elisa Pandolfi &
0B83

**29. LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages):
If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).

Buyer's Initials _____ / _____        Seller's Initials *JMH* / _____

**30. MEDIATION:**
A. The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Dispute Resolution Center for Real Estate **(www.consumermediation.org)** or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences Legal Action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of Legal Action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
B. **ADDITIONAL MEDIATION TERMS: (i) Exclusions from this mediation agreement are specified in paragraph 31B; (ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and (iii) Agent's rights and obligations are further specified in paragraph 31D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.**

**31. ARBITRATION OF DISPUTES:**
A. **The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.**
B. **EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.**
C. **PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, provided the filing party concurrent with, or immediately after such filing makes a request to the court for a stay of litigation pending any applicable mediation or arbitration proceeding; or (iii) the filing of a mechanic's lien.**
D. **AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**
E. **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

   **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

   Buyer's Initials _____ / _____        Seller's Initials _____ / _____

**RPA REVISED 12/25 (PAGE 15 OF 17)**

Buyer's Initials _____ / _____    Seller's Initials *JMH* / _____

EQUAL HOUSING OPPORTUNITY

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    Elisa Pandolfi &

Case: 24-10714   Doc# 230-1 Filed: 04/09/26 Entered: 04/09/26 18:04:03 Page 61 of 0B83



Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

Property Address: **62 Farragut Avenue, #A, Piedmont, CA 94610**      Date: **March 4, 2026**

## 32. OFFER

**A. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**

**B.** ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**
    (1) **Non-Individual (entity) Buyers:** One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
    (2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____
    _____ .
    (3) **Contractual Identity of Buyer:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.
        (A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);
        (B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).
    (4) **Legally Authorized Signer:**
        (A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 24** for additional terms.
        (B) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____ .

**C.** The RPA has 17 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. BUYER SIGNATURE(S):** ⎫ Signed by:

(Signature) By, _____ ███████████████ _____ Date: 3/4/2026
    Printed name of BUYER: _____
    ☐ Printed Name of Legally Authorized Signer: ██████████ Title, if applicable, _____
(Signature) By, _____ █████████████ _____ **Date:** 3/4/2026
    Printed name of BUYER: ██████████████
    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

## 33. ACCEPTANCE

**A. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.
**Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.**
Seller shall return and include the entire agreement with any response.
    ☒ **Seller Counter Offer** (C.A.R. Form SCO or SMCO)
    ☐ **Back-Up Offer Addendum** (C.A.R. Form BUO)

**B.** ☐ **ENTITY SELLERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**
    (1) **Non-Individual (entity) Sellers:** One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
    (2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____
    _____ .
    (3) **Contractual Identity of Seller:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.
        (A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);
        (B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).
    (4) **Legally Authorized Signer:**
        (A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 24** for additional terms.
        (B) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____ .

**C.** The RPA has 17 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. SELLER SIGNATURE(S):** ⎫ Signed by:

(Signature) By, _Janina M. Hoskins_ _____ Date: 3/6/2026
    Printed name of SELLER: 52FB8407992465 *Janina M. Hoskins, Chapter 7 Trustee*
    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
(Signature) By, _____ **Date:** _____
    Printed name of SELLER: _____
    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**RPA REVISED 12/25 (PAGE 16 OF 17)**



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 17)**

Case: 24-10714   Doc# 236-1 Filed: 04/09/26 Entered: 04/09/26 12:48:03 Page 62 of 88
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   Elisa Pandolfi &
0883

Property Address: **62 Farragut Avenue, #A, Piedmont, CA  94610** Date: **March 4, 2026**

**REAL ESTATE BROKERS SECTION**

1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
4. **Agents' Signatures and designated electronic delivery address:**

A. Buyer's Brokerage Firm *Compass* _____ DRE Lic. # *01527235* 3/4/2026

By _____ *Sarah Abel* DRE Lic. # *00928803* _____ Date 3/4/2026

By _____ Julie Gardner DRE Lic. #  01431765 _____ Date 3/4/2026

Address  6211 Medau Place _____ City Oakland _____ State CA  Zip 94611

Email  sarah@sarahabel.com _____ Phone #  4159907654

☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

**Designated Electronic Delivery Address(es): Email above or** _____

☐ **Attached DEDA:** If Parties elect to have an alternative Delivery method, such method may be indicated on C.A.R. Form DEDA.

B. Seller's Brokerage Firm *Village Associates*  Sotheby's Int'l Realty  DRE Lic. # *01301392*  00899496

By _____ *Alexis Thompson* DRE Lic. # *01849227* _____ Date 3/6/2026

By _____ Anne Herrera  DRE Lic. #  01413563 _____ Date 3/6/2026

Address _____ City _____ State _____ Zip _____

Email *athompson@villageassociates.com* _____ Phone # **(510)816-0706**

☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

**Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent): Email above or** _____

☐ **Attached DEDA:** If Parties elect to have an alternative Delivery method, such method may be indicated on C.A.R. Form DEDA.

Buyer's Initials ▓▓▓ / ▓▓▓  Seller's Initials  _JMH_ / _____

**ESCROW HOLDER ACKNOWLEDGMENT:**

Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____), Counter Offer numbers _____ and _____, and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____

Escrow Holder _____ Escrow # _____

By _____ Date _____

Address _____

Phone/Fax/E-mail *//*

Escrow Holder has the following license number # _____

☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER:** _____ / _____  Seller's Brokerage Firm presented this offer to Seller on _____ (date).
Agent or Seller Initials

**OFFER NOT ACCEPTED:** _____ / _____  No Counter Offer is being made. This offer was not accepted by Seller _____ (date).
Seller's Initials

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**RPA REVISED 12/25 (PAGE 17 OF 17)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 17 OF 17)**

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

# FEDERAL REPORTING REQUIREMENT PURCHASE ADDENDUM
## (C.A.R. Form FRR-PA, 10/25)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement ("Agreement"), dated **03/04/2026**, on property known as **62 Farragut Avenue, #A, Piedmont, CA 94610**, ("Property") in which **Janina M. Hoskins, Chapter 7 Trustee** is referred to as ("Seller") and _____ is referred to as ("Buyer").

This addendum is to be used with a: **(i)** Residential Purchase Agreement (C.A.R. Form RPA); **(ii)** New Construction Purchase Agreement (C.A.R. Form NCPA); **(iii)** Vacant Land Purchase Agreement, if the Property will be improved with a residential dwelling with one to four units (C.A.R. Form VLPA); **(iv)** Residential Income Purchase Agreement (C.A.R. Form RIPA), where the income property contains one to four units; or **(v)** Residential Units Purchase Addendum (C.A.R. Form RU-PA), where the mixed-use property contains one to four residential units.

1. **FEDERAL REPORTING OBLIGATION:** Pursuant to rules issued by the Financial Crimes Enforcement Network ("FinCEN") of the U.S. Department of the Treasury ("Treasury"), beginning December 1, 2025, a "Reporting Person" (typically the escrow or title company responsible for closing) is required to collect, and report to the Treasury, certain information about the Buyer and Seller in the sale of certain real property for the purpose of preventing money laundering. Originally scheduled to take effect December 1, 2025, the reporting requirements have been delayed to March 1, 2026.The Reporting Person may require the needed information from Buyer and Seller for applicable transactions for which an offer was accepted prior to March 1, 2026, if there is a possibility the transaction will close escrow on or after the March 1, 2026, implementation date even if scheduled to close escrow prior to that date.

2. **CONDITIONS FOR WHICH THE REPORTING OBLIGATIONS APPLY:** The collection and reporting obligations apply if: **(i)** the property being purchased is real property with one to four residential units or vacant land for which the transferee intends to build residential real property with one to four units, or shares in a cooperative housing corporation; **(ii)** the buyer is a legal entity or trust; and **(iii)** the buyer is making an "all-cash" purchase or financing the purchase through a bank or other institution that does not have an independent money laundering reporting obligation.

3. **REQUIRED REPORTING INFORMATION:** The following is a non-exclusive list of the "persons" from whom the Reporting Person is required to collect information as well as the type of information to be collected.
   A. **Buyers:** Entity Buyers, Beneficial Owners of Entity Buyers, Signing Parties of Entity Buyers, Trust Buyers, Entity Trustee of Trust Buyers, and Individual trustees and beneficial owners of Trust Buyers;
   B. **Sellers:** Individual sellers, Entity sellers, Trust Sellers, Individual and entity trustees of Trust Sellers;
   C. **Information to be collected:** Legal names, dates of birth, dates of execution of trusts, addresses, dbas, citizenship (for trustees or beneficial owners of trust buyers) taxpayer identification numbers ("TIN"), and, if applicable, account number and financial institution name from which payment is made.

4. **DELIVERY OF REQUIRED INFORMATION:**
   A. Buyer and Seller shall, within **7 Days** after receiving a request for FinCEN information from the Reporting Person for the transaction, deliver to the Reporting Person all necessary information to satisfy the reporting requirements.
   B. Buyer and Seller agree to make a good faith effort to acquire such information from any entity, beneficial owner, trustee or signing party that is not Buyer or Seller.

5. **CONSEQUENCES OF FAILURE TO PROVIDE REQUESTED INFORMATION:**
   A. The Reporting Person will not close escrow if the requested information is not provided in full, regardless of whether due from Buyer or Seller or another person on their behalf;
   B. Any Buyer or Seller who fails to provide the requested information for themselves may be in breach of contract.
   C. If the Reporting Person requires information from a related third party such as an entity, beneficial owner, signing party, or trustee, and the Reporting Person notifies a Buyer or Seller that the other has failed to provide such information, the performing Buyer or Seller may cancel after first giving the non-performing Buyer or Seller a notice to perform.

**By signing below, Buyer and Seller acknowledge that each has read, understands, has received a copy of, and agrees to the terms of this Federal Reporting Requirement Purchase Addendum.**

Buyer _____ Date 3/4/2026

Buyer _____ Date 3/4/2026

Seller _Janina M. Hoskins_ **Janina M. Hoskins, Chapter 7 Trustee** Date 3/6/2026

Seller _____ Date _____

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**FRR-PA 10/25 (PAGE 1 OF 1)**



Compass - San Francisco - Beach Street, 801 Beach Street San Francisco CA 94109    Phone: (415) 660-9955    Fax:    Elisa Pandolfi & Sarah Abel    Case: 24-10714    Doc# 286-1 Filed: 04/09/2026 Entered: 04/09/2026 12:13:46 Page 64 of 0883



# BUYER'S INVESTIGATION ADVISORY
### (C.A.R. Form BIA, Revised 6/25)

**COMPASS**

**CALIFORNIA ASSOCIATION OF REALTORS®**

1.  **IMPORTANCE OF PROPERTY INVESTIGATION:** Unless otherwise specified in the Agreement, the physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A Broker's inspection is a limited visual inspection (see C.A.R. Form AVID), and a Broker is not qualified to conduct the investigations listed below nor will Broker conduct the investigations checked below by Buyer. For these reasons, you should conduct thorough inspections, investigations, tests, surveys and other studies (Inspections and Investigations) of the Property personally and with appropriate professionals (see C.A.R. Form SBSA), who should provide written reports of their Inspections. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If any professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2.  **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to other professionals, Broker does not guarantee their performance.

3.  **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

    A.  **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

    B.  **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

    C.  **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

    D.  **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

    E.  **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

    F.  **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

    G.  **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

    H.  **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and insurance contingencies.

    I.  **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the Property.

    J.  **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Dead bolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

    K.  **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

    L.  **UTILITIES; SEWER; INTERNET:** Availability of gas, electric, water, sewer, garbage, internet and other services. The provider and quality of service may vary by location.

    M.  **SOLAR POWER SYSTEM:** The existence of a solar power system; whether it is owned, leased, financed, or otherwise subject to obligations, such as a power purchase agreement or maintenance agreement; the condition of and costs associated with the system.

© 2025, California Association of REALTORS®, Inc.

**BIA REVISED 6/25 (PAGE 1 OF 2)**

EQUAL HOUSING OPPORTUNITY

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 1 OF 2)**

Case: 24-10714   Doc# 246-11 Filed: 04/30/2025 Entered: 04/30/2025 12:18:48:03 Page 65 of 88

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

**N. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyer acknowledges that they have received a copy of this Buyer Investigation Advisory, and they have read and understand its terms. Buyer is encouraged to read it carefully.**



Buyer _____ Date 3/4/2026

Buyer _____ Date 3/4/2026

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**BIA REVISED 6/25 (PAGE 2 OF 2)**

Case: 24-10714    Doc# 230-1 Filed: 04/09/2026 Entered: 04/09/2026 12:49:03 Page 66 of 0883

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 2 OF 2)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    Elisa Pandolfi &

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
# OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 6/25)

1. **BROKER AGENCY RELATIONSHIP WITH MULTIPLE PRINCIPALS:** A real estate broker ("Brokerage"), whether a corporation, partnership or sole proprietorship, may legally represent more than one buyer or seller. This multiple representation can occur through a sole proprietor Brokerage; or through a salesperson or broker acting under the Brokerage's license ("Associate Licensee"). Associate Licensees under a Brokerage's license may be working out of the same or different office locations, and may or may not know one another. Clients of the Brokerage may have similar goals and may compete against each other for the same property or the same pool of prospective buyers. Some buyers and sellers prefer to work with individual, sole proprietor brokerages, some with brokerages that have multiple licensees, and others with large brokerage companies that have multiple offices and may have a regional, statewide or a national or international presence. Each has its own advantages. It is important for buyers and sellers to understand how the Brokerage representation of multiple buyers or sellers may impact them under various situations.

   A. **MULTIPLE BUYERS:** Brokerage (individually or through any of its Associate Licensees) may work with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed by the Brokerage. Whether Brokerage is large or small, it is possible that one Associate-Licensee (agent 1) working with a buyer may not be aware that another Associate-Licensee (agent 2) is working with a different buyer who is interested in viewing or making an offer on the same property as agent 1's client, and vise-versa. Brokerage will not limit or restrict any buyer from making an offer on any specific property, whether or not the Brokerage represents other buyers interested in the same property.

   B. **MULTIPLE SELLERS:** Brokerage (individually or through its Associate Licensees) may have listings on many properties at the same time. As a result, Brokerage will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Brokerage and some may not. Brokerage will market all listed properties to all prospective buyers, whether or not Brokerage has other listed properties that may appeal to the same prospective buyers.

   C. **DUAL AGENCY IN A TRANSACTION:** California law allows a brokerage to represent both a buyer and a seller in a transaction (Civil Code § 2079 et seq.).

      (1) **Brokerage Dual Agency:** If one Associate-Licensee from the Brokerage is working with a buyer and another Associate-Licensee from the same Brokerage is working with a seller on the same transaction, the Brokerage is considered a dual agent with fiduciary duties to both buyer and seller. In that situation, each individual Associate Licensee working on the transaction is also considered a dual agent having the same knowledge and responsibility as the Brokerage.

      (2) **Single Agent Dual Agency:** Another form of dual agency occurs when an individual Associate-Licensee is working with both the buyer and seller in the same transaction. In that situation, both the Brokerage company and the individual Associate-Licensee are dual agents with fiduciary duties to each side of the transaction. There is no one approach to this situation. Some brokerages allow the single agent dual agent to continue to represent both parties, as that Associate-Licensee is the chosen agent of the principal. Some brokerages recommend that the broker or an office manager get involved if there is a dispute between the buyer and seller. Some brokerages will require that the broker or an office manager assist the Associate-Licensee with one principal or the other, even if the parties do not have a dispute. Whether one of these approaches, or another, is taken in a single agent dual agency will depend on the circumstances and the brokerage policy. Regardless of the approach, the Associate-Licensee and Brokerage shall conduct activity consistent with the terms in **paragraph 2C**.

2. **ACKNOWLEDGEMENT AND CONSENT:**

   A. **OFFERS ARE NOT NECESSARILY CONFIDENTIAL:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer to other interested buyers and agents unless all parties and their agent have signed a written confidentiality agreement, (C.A.R. Form NDA). In the absence of a signed NDA, Buyer consents to such disclosure. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy, and the instructions of the seller.

   B. **MULTIPLE BUYERS OR SELLERS:** If Seller is represented by Brokerage, Seller acknowledges that Brokerage may represent prospective buyers of Seller's property and consents to Brokerage acting as a dual agent for both Seller and buyer in that transaction. If Buyer is represented by Brokerage, Buyer acknowledges that Brokerage may represent sellers of property that Buyer is interested in acquiring and consents to Brokerage acting as a dual agent for both Buyer and seller with regard to that property.

   C. **DUAL AGENCY IN A TRANSACTION:** In the event of dual agency, Seller and Buyer agree that: **(i)** a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and **(ii)** except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties. Seller and Buyer should discuss with a dual agent the details and parameters of this requirement. Seller and/or Buyer consents to allowing Brokerage to act as a dual agent in a transaction.

PRBS REVISED 6/25 (PAGE 1 OF 2)

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 2)**

Compass - San Francisco - Beach Street, 891 Beach Street San Francisco CA 94109    Phone: (415) 660-9955    Fax:    Elisa Pandolfi &
Sarah Abel    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

Case: 24-10714    Doc# 236-1 Filed: 04/09/2026 Entered: 04/09/2026 18:46:03 Page 67 of
0883

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

**By signing below, Buyer and/or Seller acknowledge that each has received a copy of this Possible Representation of More Than One Buyer or Seller –- Disclosure and Consent, and each has read, understands, and agrees to its terms and consents to the agency possibilities disclosed.**

Buyer _____ Signed by: ████████ ████ Date 3/4/2026

Buyer _____ ████████ ████ Date 3/4/2026

Seller _____ *Janina M. Hoskins, Chapter 7 Trustee* Date _____

Seller _____ Date _____

Buyer's Brokerage Firm *Compass*      DRE Lic # *01527235*

By *Sarah Abel*  ·  *Julie Gardner* Julie Gardner  DRE Lic # *00928803* Date 3/4/2026

01431765    3/4/2026

Seller's Brokerage Firm *Village Associates*      DRE Lic # *01301392*

By _____ DRE Lic # *01849227* Date _____

*Alexis Thompson*

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

PRBS REVISED 6/25 (PAGE 2 OF 2)



**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 2 OF 2)**

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

CALIFORNIA ASSOCIATION OF REALTORS®

# FAIR HOUSING AND DISCRIMINATION ADVISORY
## (C.A.R. Form FHDA, Revised 12/24)

COMPASS

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.

2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.

3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.

4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race (and race traits) | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any Arbitrary Characteristic or Intersectionality |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR § 2780

6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity by REALTORS®.

7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.

   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords/Housing Providers
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers

8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of **(i)** actual or unconscious bias, and **(ii)** potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent **(i)** an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or **(ii)** a house with a pool to a person with young children out of concern for the children's safety.

9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2024, California Association of REALTORS®, Inc.

**FHDA REVISED 12/24 (PAGE 1 OF 2)**

EQUAL HOUSING OPPORTUNITY

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**

Compass - San Francisco - Beach Street, 891 Beach Street San Francisco CA 94109          Phone: (415) 660-9955          Fax:          Elisa Pandolfi & Sarah Abel          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Case: 24-10714     Doc# 236-1  Filed: 04/30/2025  Entered: 04/30/2025 12:43:03  Page 69 of 88

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

E. Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

H. Denying a home loan or homeowner's insurance;

I. Offering inferior terms, conditions, privileges, facilities or services;

J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

K. Harassing a person;

L. Taking an adverse action based on protected characteristics;

M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a tenant who uses a wheelchair to install, at their expense, a ramp over front or rear steps, or refusing to allow a tenant with a disability from installing, at their own expense, grab bars in a shower or bathtub);

N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):

    (i) Failing to allow that person to keep the service animal or emotional support animal in rental property,

    (ii) Charging that person higher rent or increased security deposit, or

    (iii) Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

O. Retaliating for asserting rights under fair housing laws.

10. **EXAMPLES OF POSITIVE PRACTICES:**

A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.

B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

11. **FAIR HOUSING RESOURCES**: If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

B. State: **https://calcivilrights.ca.gov/housing/**

C. Local: local Fair Housing Council office (non-profit, free service)

D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**.

F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

12. **LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;

C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;

D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).

F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

**Buyer/Tenant and Seller/Housing Provider have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.**

| | Signed by: | | | Date | 3/4/2026 |
|---|---|---|---|---|---|
| Buyer/Tenant | | | | Date | 3/4/2026 |
| Buyer/Tenant | Signed by: | | | | |
| Seller/Housing Provider | *Janina M. Hoskins* | | *Janina M. Hoskins, Chapter 7 Trustee* | Date | 3/6/2026 |
| Seller/Housing Provider | | | | Date | |

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**FHDA REVISED 12/24 (PAGE 2 OF 2)**

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

Case: 24-10714 Doc# 286-1 Filed: 04/09/26 Entered: 04/09/26 18:46:03 Page 70 of 88

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



# BUYER HOMEOWNERS' INSURANCE ADVISORY    C⊘MPASS
### (C.A.R. Form BHIA, 6/24)

1.  **IMPORTANCE OF OBTAINING PROPERTY INSURANCE:** If the property you are purchasing is destroyed or damaged due to natural disaster or accident or some other event, insurance may be available to help with the cost of repair or rebuilding. In the absence of property insurance, the homeowner would be responsible for the full expense. If the property is purchased with a loan, or refinanced, the lender will require an insurance policy protecting its interest. Insurance policies can cover damage due to one or more of the following: fire, flood, earthquake and other causes. The policy or an insurance broker should be consulted to determine when coverage applies and whether a supplement or rider can be purchased to provide additional coverage or if a separate policy is necessary.

2.  **PROPERTY INSURANCE AND PURCHASE CONTRACT TERMS:** Your real estate purchase contract may contain a contingency that gives you the right to legally cancel the agreement within a specified time if you are unable to obtain or afford property insurance. This cancellation right may be a specific contingency pertaining to insurance or may be part of an overall investigation contingency. If buyer waives or removes the applicable contingency before determining the availability and cost of property insurance, buyer is acting against the advice of broker. Additionally, if the property is part of an HOA, lenders may require and buyers will want to know that the HOA has adequate insurance to cover the areas for which the HOA is responsible.

3.  **CALIFORNIA'S PROPERTY INSURANCE MARKET:** Some insurance carriers in California have stopped issuing new property insurance policies and others are limiting the number and location of new policies, due to rising replacement costs and an increase in natural disasters. These changes may affect both the availability and cost of insurance. However, over 50 insurance carriers are admitted to sell property insurance in California so it may be possible to obtain insurance even if some carriers will not write a new policy covering the property you intend to buy. An insurance broker may also be able to find a non-admitted insurance carrier offering to insure the property you intend to buy. Because locating an affordable insurance policy could take time and effort, buyers are advised to make all insurance inquiries as early in the home buying process as possible.

4.  **INSURANCE CONDITIONS:** Many insurance carriers impose physical condition standards before issuing a policy, or reserve the right to cancel policies even after they are issued, if certain minimum standards are not confirmed in an inspection or otherwise. Physical conditions standards could include, but are not limited to, prohibition of "knob and tube" electrical wiring, requirements related to piping/plumbing materials, standards related to the age and/or quality of the roof or foundation, minimal safety standards related to handrails, tripping hazards, and defensible space requirements.

5.  **RESOURCES:** The California Department of Insurance (DOI) maintains a website addressing Residential Home insurance. Resources on this State government webpage include: **(i)** Top Ten tips for Finding Residential Insurance; **(ii)** Residential Insurance Company Contact List; **(iii)** Home Insurance Finder; and **(iv)** information on other insurance issues. The webpage also includes information on how to contact the DOI, and suggestions on what to do if you cannot find insurance. The webpage and link to other documents is located at https://www.insurance.ca.gov/01-consumers/105-type/5-residential/index.cfm.

6.  **BROKER RECOMMENDATION:** Buyer is advised to explore available property insurance options early in the home buying process and to consult with a qualified insurance professional of buyer's choosing to understand insurance availability and cost prior to removal of any related contingencies. Real estate brokers do not have expertise in this area.

**By signing below, Buyer acknowledges that Buyer has read, understands, and has received a copy of this Buyer Homeowners' Insurance Advisory.**

| | | | |
|---|---|---|---|
| Buyer | ████████████ | Date | 3/4/2026 |
| Buyer | ████████████ | Date | 3/4/2026 |

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**BHIA 6/24 (PAGE 1 OF 1)**



### BUYER HOMEOWNERS' INSURANCE ADVISORY (BHIA PAGE 1 OF 1)

Case: 24-10714    Doc# 236-1    Filed: 04/01/26    Entered: 04/01/26 13:04:02    Page 137 of 883

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



**CALIFORNIA ASSOCIATION OF REALTORS®**

# WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY

**(C.A.R. Form WFA, Reviewed 6/25)**

**COMPASS**

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

### ACCORDINGLY, YOU ARE ADVISED:
1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Housing Providers at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Housing Provider.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Housing Provider, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks.**

The term "Housing Provider" also includes Landlord or Rental Property Owner.

**By signing below, Buyer/Tenant and Seller/Housing Provider acknowledge that each has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory, and each has read and understands its terms.**

Signed by:

Buyer/Tenant _____ Date 3/4/2026

Signed by:

Buyer/Tenant _____ Date 3/4/2026

Seller/Housing Provider *Janina M. Hoskins* *Janina M. Hoskins, Chapter 7 Trustee* Date 3/6/2026

Seller/Housing Provider _____ Date _____

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**WFA REVIEWED 6/25 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

Compass - San Francisco - Beach Street, 891 Beach Street San Francisco CA 94109          Phone: (415) 660-9955          Fax:          Elisa Pandolfi & Sarah Abel
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com



Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE

**COMPASS**

### (C.A.R. Form CCPA, Revised 12/22)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA"), as amended by California voters in 2020, grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, the right to know what PI is sold or shared and to whom, the right to request that the business correct or delete your PI, the right to "opt out" or stop the transfer of your PI to others, and the right to limit the use of certain PI which is considered "sensitive." You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Moreover, businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa). Additionally, the California Privacy Protection Agency is authorized to promulgate regulations which may further clarify requirements of the CCPA (cppa.ca.gov/regulations/).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant _____ Date __3/4/2026__

Buyer/Seller/Landlord/Tenant _____ Date __3/4/2026__

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**CCPA REVISED 12/22 (PAGE 1 OF 1)**

## CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)

Compass - San Francisco - Beach Street, 891 Beach Street San Francisco CA 94109          Phone: (415) 660-9955          Fax:                    Elisa Pandolfi &
Sarah Abel                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



# ADDENDUM No. *One*
### (C.A.R. Form ADM, Revised 6/25)

**COMPASS**

The following terms and conditions are hereby incorporated in and made a part of the Purchase agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Other _____,
dated _____ *March 4, 2026* _____ , on property known as _____ *62 Farragut Avenue, #A* _____ *Piedmont, CA  94610* ("Property/Premises"),
between _____ ("Buyer/Tenant")
and _____ *Janina M. Hoskins, Chapter 7 Trustee* _____ ("Seller/Housing Provider").
The term "Housing Provider" also includes Landlord or Rental Property Owner. Buyer/Tenant and Seller/Housing Provider are referred to as the "Parties."

**FORM USE NOTES: This form is intended to be used in Buyer-Seller or Tenant-Housing Provider transactions. For all other situations requiring an addendum, use an Addendum - Generic (C.A.R. form ADM-GEN).**

- A change or addition to a previously provided Seller Property Questionnaire (SPQ), Real Estate Transfer Disclosure Statement (TDS), or other disclosure, may be made on an Amendment to Prior Disclosure (C.A.R. Form APD), and it may give the Buyer a right to rescind.
- To change the terms of already executed agreement, use the Amendment to Existing Agreement (C.A.R. form AEA).

*1) Buyer deposit is fully refundable if court rejects sale.*
*2) Buyer to perform a verbal general property inspection for their own due diligence and information.*
*3) All other terms to remain the same.*

**By signing below, Buyer and Seller acknowledge that each has received a copy of this Addendum, and each has read, understands, and agrees to its terms.**

Buyer/Tenant _____ Date 3/4/2026
Buyer/Tenant _____ Date 3/4/2026
Seller/Housing Provider *Janina M. Hoskins*  *Janina M. Hoskins, Chapter 7 Trustee* Date 3/6/2026
Seller/Housing Provider _____ Date _____

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**ADM REVISED 6/25 (PAGE 1 OF 1)**



### ADDENDUM (ADM PAGE 1 OF 1)

Case: 24-10714   Doc# 246-1 Filed: 04/09/26  Entered: 04/09/26 18:46:03  Page 44 of 88

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



**BUYER CONTINGENCY REMOVAL No.** _One_

(C.A.R. Form CR-B, Revised 6/24)

**C⊘MPASS**

In accordance with the terms and conditions of the Purchase Agreement, OR ☐ Request For Repair (C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R. Form RRRR), ☐ Other _____ dated _03/04/2026_, ("Agreement"),
on property known as _____ 62 Farragut Avenue, #A, Piedmont, CA 94610 _____ ("Property"),
between _____ ("Buyer")
and _____ Janina M. Hoskins, Chapter 7 Trustee _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **BUYER REMOVAL OF BUYER CONTINGENCIES:** With respect to any contingency and cancellation right that Buyer removes, unless Otherwise Agreed in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and, expense, **if any**, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2. **Buyer removes ONLY the following individually checked Buyer contingencies:** (Paragraph numbers refer to C.A.R. Form RPA. Applicable paragraph numbers may be different for different forms.)
   **A.** ☐ Loan **(Paragraph 3L(1)** and **8A)**
   **B.** ☐ Appraisal **(Paragraph 3L(2)** and **8B)**
   **C.** Investigation of Property **(Paragraph 3L(3)**, **8C**, and **12)**
       (1) ☐ Entire Buyer's Investigation Contingency **(Paragraph 12)**
   OR (2) ☐ Only the part of the Investigation related to inspections concerning physical attributes of the Property **(Paragraph 12B(1))**
   OR (3) ☐ All Buyer Investigations other than the physical attributes **(Paragraph 12B(2))**
   OR (4) ☐ Entire Buyer's Investigation Contingency, EXCEPT: ☐ Other: _____
   **D.** ☐ Insurance **(paragraph 3L(4)** and **8D)**
   **E.** Review of Seller Documents:
       (1) ☐ Review of All Seller Documents **(Paragraph 3L(5)**, **8E**, **9B(6)**, **10A**, and **11)**
   OR (2) ☐ Review of All Seller Documents, EXCEPT:
           ☐ Government Reports **(Paragraph 10A)**;
           ☐ Statutory and other Disclosures **(Paragraph 11)**;
           ☐ Other: _____
   **F.** ☐ Preliminary ("Title") Report **(Paragraph 3L(6)**, **8F**, and **13**)
   **G.** ☐ Common Interest (HOA or OA) Disclosures **(Paragraph 3L(7)**, **8G** and **11L)**
   **H.** ☐ Review of leased or liened items **(Paragraph 3L(8)**, **8H**, and **9B(6))**
   **I.** Sale of Buyer's Property **(Paragraph 3L(9)** and **8K)**
       ☐ Entering into contract for Buyer's Property     ☐ Close of Escrow on Buyer's Property
   **J.** ☐ Other: _____

OR 3. ☒ **ALL Buyer contingencies are removed, EXCEPT:**
   ☐ Loan Contingency **(Paragraph 3L(1)** and **8A)**;
   ☐ Appraisal Contingency **(Paragraph 3L(2)** and **8B)**;
   ☐ Insurance **(Paragraph 3L(4)** and **8D)**
   ☐ Contingency for the Close of Buyer's Property **(Paragraph 3L(9)** and **8K)**;
   ☐ Condominium/Planned Development (HOA) Disclosures **(Paragraph 3L(7)**, **8G** and **11L)**;
   ☒ Other: _Buyer's Investigation Contingency_

OR 4. ☐ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

5. Once all contingencies are removed, whether or not Buyer has satisfied themselves regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

   **NOTE:** If this form is attached to a Request for Repairs (C.A.R. Form RR), Seller Response and Buyer Reply to Request for Repairs (C.A.R. Form RRRR), or another form or document such as an addendum (C.A.R. Form ADM) or Amendment to Existing Agreement (C.A.R. Form AEA) it is only valid if Buyer and Seller agree to the requests made on that form or document.

Buyer _____ Date 3/4/2026
       Signed by:
       938339ECD9604DF...
Buyer _____ Date 3/4/2026
       9AF2952925ED4AC...

          4/6/2026

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. _a subsidiary of the California Association of REALTORS®_

**CR-B REVISED 6/24 (PAGE 1 OF 1)**

**BUYER CONTINGENCY REMOVAL (CR-B PAGE 1 OF 1)**

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



# BUYER INVESTIGATION WAIVER
**(This form is intended for use between a buyer and buyer's broker.)**
(C.A.R. Form BIW, Revised 6/25)

Property Address: *62 Farragut Avenue, #A, Piedmont, CA 94610* ("Property").

This form does not alter the legal or contractual relationship between a buyer and seller.

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** Unless otherwise specified in the purchase agreement used, the physical condition of the land and any improvements being purchased is not guaranteed by either Seller or Brokers. For this reason, **(i)** you should conduct thorough inspections, investigations, tests, surveys and other studies ("Investigations") of the Property personally and with professionals of your own choosing who should provide written reports of their findings and recommendations, and **(ii)** you should not rely solely on reports provided by Seller or others. A general physical (home) inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If any professional recommends additional Investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional Investigations.

2. **BUYER RIGHTS AND DUTIES:** You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and to investigate and verify information and facts that you know or that are within your diligent attention and observation. If the purchase agreement gives you the right to investigate the Property the best way to protect yourself is to exercise this right. However, you must do so in accordance with the terms of, and time specified in, that agreement. It is extremely important for you to read all written reports/disclosures provided by professionals and to discuss the results of Investigations with the professionals who conducted the Investigations.

3. **WAIVERS:**

   A. **HOME INSPECTION WAIVER:** Broker recommends that Buyer obtain a home inspection, **even if Seller or Broker has provided Buyer with a copy of a home inspection report obtained by Seller or a previous buyer. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**
   _____ / _____ Buyer has decided not to obtain a general home inspection at this time. Unless Buyer makes a subsequent election in writing during Buyer's investigation period, if any, Buyer waives the right to obtain a general home inspection.

   B. **WOOD DESTROYING PEST INSPECTION WAIVER:** Broker recommends that Buyer obtain an inspection for wood destroying pests and organisms (whether paid for by Buyer or Seller). **IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**
   _____ / _____ Buyer has decided not to obtain an inspection for wood destroying pests and organisms at this time. Unless Buyer makes a subsequent election in writing during Buyer's investigation period, if any, Buyer waives the right to obtain an inspection for wood destroying pests and organisms.

   C. **OTHER:** Broker recommends that Buyer obtain an inspection for the following items: _____
   _____
   _____
   **IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**
   _____ / _____ Buyer has decided not to obtain the inspection(s) noted above at this time. Unless Buyer makes a subsequent election in writing during Buyer's investigation period, if any, Buyer waives the right to obtain such inspection(s).

4. **WAIVERS OF ADDITIONAL INVESTIGATIONS RECOMMENDED BY OTHER REPORTS:**

   A. Buyer has received the following Report(s) that recommend that Buyer obtain additional Investigations:
   ☐ General Home Inspection Report, prepared by _____ dated _____
   ☐ Wood Destroying Pest and Organism Report, prepared by *East Bay Structural* dated *02/25/2026*
   ☒ Other Inspection Report, prepared by *Willard Plumbing* dated *02/18/2026*
   ☐ Other Inspection Report, prepared by _____ dated _____
   ☐ Other Inspection Report, prepared by _____ dated _____

   B. Broker recommends that Buyer obtain those additional Investigations. **IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**
   _____ / _____ Buyer has decided not to obtain any of the additional inspections, investigations, or reports at this time and, unless Buyer makes a subsequent election in writing during Buyer's investigation period, if any, Buyer waives the right to obtain such additional inspections, investigations, or reports.

**Buyer represents and agrees that Buyer has independently considered the above, and all other Investigation options, has read all written reports provided by professionals and discussed the results with the professional who conducted the Investigation. Buyer further agrees that unless Buyer makes a subsequent election in writing during Buyer's Investigation period, if any, Buyer waives the right to conduct the Investigation(s) above.**

Buyer _____ Date 3/4/2026

Buyer _____ Date 3/4/2026

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**BIW Revised 6/25 (PAGE 1 OF 1)**



**BUYER INVESTIGATION WAIVER (BIW PAGE 1 OF 1)**

Compass - San Francisco - Beach Street, 891 Beach Street San Francisco CA 94109      Phone: (415) 660-9955      Fax:      Elisa Pandolfi & Sarah Abel
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# NON-CONTINGENT OFFER ADVISORY
### (C.A.R. Form NCOA, Revised 6/24)

**COMPASS**

1. **MARKET CONDITIONS:** Buyer has been informed, and is aware, that market conditions are cyclical and change over time. In a competitive or "hot" market with limited inventory, Buyers will sometimes consider making "non-contingent" or "contingent free" offers in an attempt to convince the Seller to accept their offer instead of another's. These types of offers have no contingencies: For a physical inspection of the property; For obtaining a loan; For a minimum appraisal value; For other investigations of the property; or for other matters which are commonly included in the Residential Purchase Agreements at other times.

2. **NON-CONTINGENT OFFERS:** Most residential purchase agreements contain contingencies allowing a Buyer a specified period of time to cancel a purchase: **(i)** if the Buyer cannot obtain a loan; **(ii)** if the property does not appraise at a certain value; **(iii)** if the Buyer is dissatisfied with the property's condition after an inspection; **(iv)** if an insurance policy cannot be obtained for an acceptable cost; or **(v)** for any other contingency within the purchase agreement. To make their offers more attractive, Buyers will sometimes write offers with few or no contingencies or offer to remove contingencies within a short period of time. In a "hot" market, sellers will sometimes insist that Buyers write offers with no contingencies. While making a "contingency free" offer may give the Buyer a better chance of getting a Seller to accept their offer, there are risks in writing such an offer. Broker recommends that Buyers do not write non-contingent offers and if you do so, you are acting against Broker's advice. Each contingency may stand alone and may not be a reason to use a different contingency (i.e. cannot use the loan contingency because of a low appraisal even if that is the reason the lender denies the loan). If you remove a specific contingency and try to cancel for that reason, you may legally be in default under the contract and could be required to pay damages or forfeit your deposit to Seller. However, if you do write a non-contingent offer these are some of the contractual rights you may be giving up:

   A. **LOAN CONTINGENCY:** A loan contingency allows you to cancel the contract, without penalty, if during the contingency period, you cannot obtain the loan specified in the agreement. Without this contingency, you cannot cancel if the loan is declined, whether through your fault or the fault of your lender.

   B. **APPRAISAL CONTINGENCY:** An appraisal contingency allows you to cancel the contract, without penalty, if during the contingency period, your lender's (or your own) appraiser does not believe the property is worth what you have agreed to pay for it. If you give up your appraisal contingency, and the property does not appraise at the specified price, your lender may not loan the full amount needed for the purchase or may not loan any amount at all because of a low appraisal. The Seller is not obligated to reduce the purchase price to match the appraised value.

   C. **INVESTIGATION CONTINGENCY:** An investigation contingency allows you to examine the property, and matters pertaining to it. If you give up your investigation contingency, you could lose the right to cancel based on information you later discover, which is why it is important to conduct an investigation early. However, even if you make an offer without an investigation contingency or you remove that contingency, the Seller may still be obligated to disclose to you material facts about the property. In some cases, once you receive that information the law gives you an independent right to cancel for a limited period of time.

   D. **INSURANCE CONTINGENCY:** An insurance contingency allows you to determine the availability and cost of insurance for the property. With rising replacement costs and increased natural disasters, insurance is becoming harder and more expensive to find. The ability to acquire insurance may affect your willingness to own the property and may affect your lender's ability to give you a loan, however the insurance contingency is not necessarily part of the investigation or loan contingency. You should investigate this early in the process.

3. **BROKER RECOMMENDATIONS:**

   A. Broker recommends that you do not write a non-contingent offer, even if you are planning on paying all cash for the property. If you intend to write a non-contingent offer, Broker recommends that, prior to writing the offer, you: **(i)** review all available Seller reports, disclosures, information and documents; **(ii)** have an appropriate professional inspect the property (even if it is being sold "as is" in its present condition); and **(iii)** carefully assess your financial position and risk with your attorney, accountant or financial advisor.

   B. There is inherent risk in writing a non-contingent offer. Only you, after careful consultation and deliberation with a qualified California real estate attorney, accountant, or financial advisor can decide how much risk you are willing to take. IT IS YOUR DECISION ALONE AND CANNOT BE MADE BY YOUR BROKER OR REAL ESTATE AGENT

**Buyer acknowledges that Buyer has read, understands and has received a copy of this Non-Contingent Offer Advisory.**

Signed by:

Buyer _____ _____ Date 3/4/2026

Buyer _____ _____ Date 3/4/2026

9AF2952925ED4AC...

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**NCOA REVISED 6/24 (PAGE 1 OF 1)**



EQUAL HOUSING OPPORTUNITY

### NON-CONTINGENT OFFER ADVISORY (NCOA PAGE 1 OF 1)

Compass - San Francisco - Beach Street, 301 Beach Street San Francisco CA 94105    Phone: (415) 660-9955    Fax:    Elisa Pandolfi & Sarah Abel    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

Case: 24-10714    Doc# 230-1 Filed: 04/21/26    Entered: 04/21/26 12:38:03    Page 77 of 88

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

**Alameda County, California – CITY OF PIEDMONT**     **Revised 9/2021**

## PIEDMONT PURCHASE AGREEMENT ADDENDUM

*This form is intended for use with the California Association of REALTORS® forms RPA "Residential Purchase Agreement" and/or RIPA "Residential Income Purchase Agreement".*

**This Addendum is intended for use in the City of Piedmont. Please also review the separate Alameda County or city specific Ordinances and Regulations for property in the area you are either selling or buying. Disclosure documents and forms may contain references, including web site addresses and internet links (hyper-links), to additional important material that is not printed on the document itself. Buyers and Sellers should investigate those links if they are not entirely satisfied with the document as it is presented to them.**

The information in this Addendum has been compiled by the Oakland/Berkeley Association of REALTORS® and the Bay East Association of REALTORS® as a service to its members and is effective as of September 2021. This Addendum is not intended to be nor should it be considered to be an accurate reflection of all of the legal requirements that may be imposed by the governmental and quasi-governmental entities referenced in this Addendum either as of the date the document was created or at any time thereafter. Real Estate Brokers and their Sales Associates do not have the requisite training or skills to determine the legal sufficiency of this Addendum or the legal requirements that may be imposed upon the Property. If Seller or Buyer has any questions or concerns regarding their legal rights and obligations then they should consult with their own qualified California real estate attorney.

This is an Addendum to that Purchase Agreement dated ___3/4/2026___ by and between

___*Janina M. Hoskins, Chapter 7 Trustee.*___(Seller) and

_____████████████████_____(Buyer) for that

Property commonly known as _____*62 Farragut Avenue*_____, ___*Piedmont*___, CA.

(Property), Except as specified herein, all other terms and conditions remain unchanged.

**1. PRIVATE SEWER LATERAL COMPLIANCE:** The East Bay Municipal Utility District ("EBMUD") Wastewater Control Ordinance requires property owners in certain areas of the EBMUD wastewater service area to obtain a compliance certificate that shows their private sewer laterals ("PSL's") are without defects and have proper connections. The ordinance requires property owners to test and, if needed, repair or replace their private sewer laterals when selling their property. *(For further details, see the Alameda County Disclosures and Disclaimers Advisory)*

    **A. ☐ PROPERTY EXEMPT: Seller states that the property is EXEMPT** because PSL on an affected property meets requirements set forth by EBMUD and Seller has/shall provide(d) evidence to Buyer, prior to final verification of condition.

    **B. ☒ PROPERTY NOT EXEMPT**: the following party shall be responsible for compliance (**Check 1 or 2 below**)

        **1. ☐ IN COMPLIANCE:** Seller will provide Buyer with a Certificate of Compliance, prior to final verification of condition.

        **2. ☐ COMPLIANCE BEFORE CLOSE OF ESCROW:** Seller shall complete all required inspections and required repairs, and provide Buyer with a Certificate of Compliance, prior to the final verification of condition.

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

3. ☒ **COMPLIANCE AFTER THE CLOSE OF ESCROW:**  If compliance is to take place after the Close of Escrow, then check either Seller or Buyer in each of the four paragraphs below:

**A.** ☐   Seller  ☒ Buyer *(check one)* agrees to be responsible for obtaining the Certificate of Compliance within 180 days of the Close of Escrow.

**B.** ☐   Seller  ☒ Buyer *(check one)* shall be responsible to pay the required EBMUD fee for this extension.  The responsible party agrees promptly upon Acceptance of the Purchase Agreement to apply to EBMUD for a Time Extension Certificate, which shall be deliver to escrow prior to Close of Escrow.

**C.** ☐ Seller  ☒ Buyer *(check one)* shall be responsible to post the deposit into escrow as is required by EBMUD for any Time Extension for compliance after Close of Escrow.  Note: If the Certificate of Completion is not obtained within 180 days of the Close of Escrow, this deposit may be subject to forfeit and the property owner may be subject to enforcement action by EBMUD. Fee as of June 2019 is $4,500, but is subject to change by EBMUD at any time.

**D.** ☐ Seller  ☒ Buyer (**check one**) to receive refund of the deposit once Certificate of Compliance is obtained.

**C.** ☐ **CONDOMINIUM:** Condominiums are also required to comply with the private sewer lateral program. Condominiums and other Common Interest Developments with a Homeowners' Association ("HOA") were generally excluded from bringing PSLs into compliance, whether using individual or shared sewer laterals, and had until July 12, 2021 to comply BUT ONLY if the HOA was built before July 12, 2019 and the HOA is legally responsible for maintaining the sewer laterals (the HOA has not filed an appropriate notification of non-responsibility). HOAs built after July 12, 2019, have a 24-month deferral period from date of completion to be in compliance, There are several exceptions. Brokers have no expertise on this topic. For more information go to http://www.eastbaypsl.com/eastbaypsl/extension.html

Generally, the HOA is responsible for the PSL compliance, if it is not then ☐ Seller ☐ Buyer (check one) shall be responsible.

2. **BUILDING PERMIT STATUS:**  Buyer and Seller are aware that all Municipalities have the right to withhold the issuance of any additional building permits on a property until all previous permits have received a final inspection sign-off.  Currently, the City of Piedmont is the only Municipality that is strictly enforcing this regulation.

**A.** ☒   Buyer has received a copy of the Piedmont Permit History Search ordered by Seller.

**B.** ☐ **In Compliance:  ( If checked**) Seller warrants that all previous building permits issued for the Property have received final inspections.

**C.** ☐ **Not in Compliance - Responsibility for Compliance: (If checked**) The Property is not yet in compliance with the City of Piedmont Municipal Code. (**Check either 1 or 2 below**)

1. ☐ Prior to Close of Escrow, Seller shall final all previously issued Building Permits that are required to be finalized by the City of Piedmont.

2. ☐ Buyer accepts all responsibility for Permit Compliance.

[Initial] [Initial]

3. **HOME ENERGY ASSESSMENT DISCLOSURE:** The City of Piedmont requires that Sellers who must complete a Real Estate Transfer Disclosure Statement ("TDS), shall Deliver to prospective Buyers information about the energy use and costs of residential (1 to 4 units) offered for sale prior to the Close of Escrow.  The Home Energy Assessment Disclosure can be met by obtaining either a Home Energy Score or a Home Energy Audit prepared no more than five years prior to the date the Property is advertised or listed

Case: 24-10714   Doc# 246-1 Filed 04/09/26 Entered 04/09/26 18:46:03 Page 79 of 88

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

for sale.  Disclosure of this information should be made when Buyer is in receipt of the Piedmont Permit History Search described in section 2 of the addendum above.

    **A.** ☐ Buyer has received a Home Energy Audit or Home Energy Score.

    B. ☐ Prior to Close of Escrow, Seller shall Deliver a Home Energy Audit or Home Energy Score to Buyer.

 
Initial   Initial

    **C.** ☒ **PROPERTY AND/OR SELLER EXEMPT:** Residence was constructed within ten years prior to the date of advertising or listing for sale and/or Seller is exempt from completing a TDS.

Buyer accepts responsibility for point of sale ordinance in Piedmont for Home Energy Audit or Home Energy Score.  For further information about the Home Energy Audit or Home Energy Score requirement, review City of Piedmont Ordinance 751 N.S and/or contact the City of Piedmont Planning & Building Department at (510) 420-3050

4. <u>**SIDEWALK REPAIR ORDINANCE:**</u>  Buyer and Seller are aware that pursuant to City of Piedmont Code §18.26, the following requirements apply to the construction and/or repair of sidewalks and driveways within the City of Piedmont:  a) When the real property is developed for any use; b) In conjunction with the issuance of any permit or aggregate of permits, within the year preceding the date of application, in the amount of $5,000.00 or more on the real property; c) In conjunction with the sale of the real property. **(Check either A or B below)**

    **A.** ☒ **In Compliance:**  Seller warrants property is already in compliance

    **B.** ☐ **Not in Compliance – Responsibility for Repairs:** (**Check either 1 or 2 below**):

        1. ☐ Repairs shall be the paid by Seller

        2. ☐ Repairs shall be the paid by Buyer

5. <u>**WATER CONSERVING PLUMBING FIXTURES**</u>**:**

California Law requires owners of single-family residential property built before 1994 to install water conserving plumbing fixtures by 2017. Additionally, if any such Property is altered or improved, then water conserving plumbing fixtures must be installed as a condition of final permit approval (Cal. Civil Code Section 1101.4). Although California law does not make compliance with this statute a point of sale requirement (condition of sale), this Addendum shall establish which of the undersigned Parties is responsible for compliance with this law.  **(Check either A or B below)** .

A.    ☐ Seller Responsible: Seller either (a) has complied with retrofitting the Property with compliant water conserving plumbing fixtures; or (b) prior to the Close of Escrow, shall pay for the retrofit of all non-compliant water conserving plumbing fixtures with compliant fixtures of quality comparable to existing fixtures.

B.    ☒ Buyer Responsible: Buyer shall be responsible and pay for all expenses in retrofitting all non-compliant water conserving plumbing fixtures with compliant fixtures after the Close of Escrow, or as specified in the Permit Work paragraph below.

6. <u>**POOL/SPA SAFETY DEVICES**</u>

To prevent drowning of children four (4) years of age and under, California law requires owners of single-family residential property with a pool and/or spa to install at least 2 of 7 safety devices. Home inspection reports used in the sale of single-family residence must disclose if the Property has any pool and/or spa safety devices. If the Property is altered or improved, then at least two (2) safety devices must be installed as a condition for final permit approval (Cal. Health & Safety Code Section 115925).  Although California law does not make compliance with this statute a point of sale requirement (condition of sale), this Addendum shall establish which of the undersigned Parties is responsible for compliance with this law. **(Check either A**

Case: 24-10714   Doc# 246-1 Filed 04/03/26 Entered 04/03/26 18:46:03 Page 80 of 83

**or B below)** .

    A.    ☐ Seller Responsible: Seller either (a) has complied with retrofitting the Property with at least two (2) drowning prevention devices; or (b) prior to the Close of Escrow, shall pay for and retrofit the Property with two (2) drowning prevention devices as required by state law.

    B.    ☒ Buyer Responsible: Buyer shall be responsible and pay for all expense in retrofitting the Property with two (2) drowning prevention devices as required by state law after the Close of Escrow, or as specified in the Permit Work paragraph below.

7. **PERMIT WORK PRIOR TO CLOSE OF ESCROW**

The Parties understand, acknowledge and agree that, in the event there is an agreement that the Seller will perform any repairs prior to the Close of Escrow that constitute alterations or improvements at the Property will require the issuance and finalization of a permit, the governing agency will require that the Property be retrofitted with compliant water conserving plumbing fixtures as a condition of finalizing the permit and/or at least two (2) drowning prevention devices; in the event, **the Party designated above shall be responsible for the expense of such retrofitting regardless of who is paying for the work necessitating the permit.**

*NOTE: (a) the interpretation as to what constitutes an alteration or improvement may differ in different jurisdictions and (b) real estate licensees cannot predict what interpretation will be used at any point in time by any permit issuing entity.*

**Other Ordinances**: **All jurisdictions have ordinances that may affect the use, value, development or enjoyment of any property. You are advised to visit the appropriate website or offices of the appropriate jurisdiction to determine whether the Property is in an area regulated by such ordinances.**

SOURCES OF INFORMATION:

**City of Piedmont**: http://www.ci.piedmont.ca.us/
120 Vista Avenue, Piedmont, CA Tel: 510/420-3040
**Police** http://www.ci.piedmont.ca.us/ Tel: 510/420-3000

**Other areas in Alameda and Contra Costa counties**: http://www.co.contra-costa.ca.us/ or http://www.co.alameda.ca.us/.
See office addresses on website.

**East Bay Municipal Utility District (EBMUD): http://**www.ebmud.com

**THE UNDERSIGNED AGREE TO ALL OF THE TERMS AND CONDITIONS ABOVE AND ACKNOWLEDGE RECEIPT OF ALL FOUR (4) PAGES OF THIS DOCUMENT**

Signed by:
_____     Dated: ____3/4/2026____
Buyer  —9AF2952925ED4AC…

Signed by:
_____     Dated: ____3/4/2026____
Buyer  —938339FCD9604DE…

DocuSigned by:
*Janina M. Hoskins*
_____     Dated: __2/21/2026__
Seller  —87B634G4G44F  *Janina M. Hoskins, Chapter 7 Trustee.*

_____     Dated: _____
Seller

Page **4** of 4

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7





## SELLER COUNTER OFFER No. __1__

### May not be used as a multiple counter offer.
(C.A.R. Form SCO, Revised 12/25)

Date ___03/05/2026___

This is a counter offer to the Purchase Agreement, OR ☐ Buyer Counter Offer No.____ , ☐ Other _____ ("Offer"),
dated _03/04/2026_ , on property known as _____ **62 Farragut Avenue #A, Piedmont, CA 94610** _____ ("Property"),
between _____ ("Buyer")
and _____ **Janina M. Hoskins, Chapter 7 Trustee** _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. The Liquidated Damages and Arbitration of Disputes paragraphs in the Offer each require initials by all Parties. If either of those paragraphs is not initialed by all Parties, that paragraph is excluded from the final agreement unless specifically referenced for inclusion in **paragraph 1D** below or in another Counter Offer or addendum.
   B. Unless Otherwise Agreed or altered in another Counter Offer, the down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but the dollar amount of any initial and increased deposit and Seller credits shall remain unchanged from the original Offer.
   C. Unless Otherwise Agreed or altered in another Counter Offer, if, in the original offer, the appraisal contingency amount is lower than the original offered price (e.g., the optional box is checked in the third column in **paragraph 3L(2)** of the RPA), then the dollar amount of any difference ("Appraisal Gap") shall remain unchanged and shall be deducted from the final contract price to create the final appraisal contingency amount. (For example, if the purchase price in the offer is $1,000,000, and Buyer reduces the appraisal contingency value to $950,000, the "Appraisal Gap" is $50,000. If the purchase price is increased to $1,200,000 as a result of this counter offer, the appraisal contingency value shall be adjusted to $1,150,000 ($1,200,000 less $50,000). If the property appraises below $1,150,000, Buyer may exercise Buyer's appraisal contingency right to cancel this Agreement.)
   D. **OTHER TERMS:** *See Text Overflow Addendum (C.A.R. Form TOA) paragraph 1*
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

   E. The following attached documents are incorporated into this Seller Counter Offer when Signed and Delivered by both Parties (and if both parties do not Sign and Deliver all attached addenda, then any acceptance of this Seller Counter Offer is not valid):
   ☐ Addendum No. _____ (C.A.R. Form ADM)
   ☐ Back Up Offer Addendum (C.A.R. Form BUO)
   ☐ Seller License to Remain in Possession Addendum (C.A.R. Form SIP) (occupancy up to 29 days)
   ☐ Seller Purchase of Replacement Property (C.A.R. Form SPRP)
   ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA)
   ☐ Residential Lease After Sale (C.A.R. Form RLAS) (occupancy for 30 or more days)
   ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
   ☐ Other _____ ☐ Other _____

2. **EXPIRATION:** This Seller Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00 PM on the third Day after the date this Seller Counter Offer is Signed in **paragraph 4** (if more than one signature, then the last signature date)(or by _5:00_ ☐ AM/ ☒ PM on _03/06/2026_ (date)) **(i)** it is Signed in **paragraph 5** by Buyer and **(ii)** a Copy of the Signed Seller Counter Offer is Delivered to Seller or Seller's Authorized Agent.
   B. OR If Seller withdraws this Seller Counter Offer anytime prior to Buyer's Acceptance by communicating withdrawal to Buyer or Buyer's Agent (C.A.R. Form WOO may be used).
   C. OR If Seller accepts another offer prior to Buyer's Acceptance of this Seller Counter Offer.

3. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to accept any other offer received, prior to Acceptance of this Counter Offer by Buyer as specified in **2A** and **5**. In such event, Seller is advised to withdraw this Seller Counter Offer before accepting another offer.

4. **OFFER: SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS COUNTER OFFER, ANY PREVIOUS OFFER OR COUNTER OFFER CAN NO LONGER BE ACCEPTED. THIS COUNTER OFFER IS VALID REGARDLESS OF WHETHER ANY PREVIOUS OFFER OR COUNTER OFFER EXPIRED BY ITS TERMS.** The terms and conditions of those documents are incorporated into this Seller Counter Offer unless Otherwise Agreed.

Seller ___*Janina M. Hoskins*___ *Janina M. Hoskins, Chapter 7 Trustee* Date ___3/5/2026___
52EE384D7932455...
Seller _____ Date _____

SCO Revised 12/25 (PAGE 1 OF 2)

### SELLER COUNTER OFFER (SCO PAGE 1 OF 2)

Case: 24-10714   Doc# 246-1 Filed: 04/09/26 Entered: 04/09/26 18:46:03 Page 82 of 88

5.  **ACCEPTANCE: I/WE** accept the above Seller Counter Offer **(If checked ☐ SUBJECT TO THE ATTACHED BUYER COUNTER OFFER No.** and acknowledge receipt of a Copy.

Signed by

Buyer _____ _____ Date 3/6/2026

Buyer _____ _____ Date 3/6/2026

9AF2952925ED4AC...

6.  **LATE ACCEPTANCE:** If the date of Buyer's signature in **paragraph 5** is after the expiration specified in **paragraph 2A**, Buyer's acceptance is only binding if Seller agrees to the late acceptance by signing below and Delivering a Copy before 5:00 PM on the third Day after the date this Seller Counter Offer is Signed in **paragraph 5**. All time periods in the Agreement shall begin upon the Delivery of this Late Acceptance.

**I/We (Seller), ratify the acceptance and agree to all terms of this Seller Counter Offer.**

Seller _____ *Janina M. Hoskins, Chapter 7 Trustee* Date _____

Seller _____ Date _____

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**SCO Revised 12/25 (PAGE 2 OF 2)**



EQUAL HOUSING
OPPORTUNITY

**SELLER COUNTER OFFER (SCO PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com     **62A Farragut**

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



**CALIFORNIA ASSOCIATION OF REALTORS®**

# TEXT OVERFLOW ADDENDUM No. ___1___
### (C.A.R. Form TOA, Revised 6/23)

This addendum is given in connection with the property known as _____ *62 Farragut Avenue #A, Piedmont, CA 94610* _____

_____ ("Property"),

in which _____ is referred to as ("Buyer/Tenant")

and _____ *Janina M. Hoskins, Chapter 7 Trustee* _____ is referred to as ("Seller/Housing Provider").

*1) SCO, Paragraph 1D, Other Terms:*

*In reference to the California Residential Purchase Agreement and Joint Escrow Instructions (the "Offer") dated March 4, 2026, Addendum No. One, and Piedmont Purchase Agreement Addendum made by Elisa Pandolfi and Brendan Mulligan (together, the "Buyer") to purchase the real property commonly known as 62 Farragut Avenue, #A, Piedmont, California 94610, further described as Alameda County Assessor's Parcel No. 051-4786-007-00 (the "Property"), the following Counter-Offer is submitted:*

*1.The Offer and this Counteroffer shall be known collectively as the "Agreement."*

*2.Seller is Janina M. Hoskins (the "Seller") solely in her capacity as Chapter 7 Trustee of the Chapter 7 Bankruptcy Estate of Kenneth Mattson, Case No. 24-10714-CN (the "Bankruptcy Estate"), U.S. Bankruptcy Court, Northern District of California (the "Bankruptcy Court").*

*3.Re #2D and all other related paragraphs re "Possible Representation of More than One Buyer or Seller – Disclosure and Consent": these are hereby deleted in their entirety. Pursuant to applicable bankruptcy law, an agent may not represent both the Buyer and the seller with respect to the same Agreement.*

*4.Re #3B&N(5), #7 and all other related paragraphs: Buyer is aware that Seller is a bankruptcy trustee selling on behalf of the Bankruptcy Estate and that the sale is subject to approval by the Bankruptcy Court. "Approval" as used in this Counteroffer means entry of an order by the Bankruptcy Court approving the sale, including such approval as is necessary to sell the Property free and clear of existing liens and encumbrances and any other order, if any, necessary to convey title. Closing date shall be the later of the 15 days after entry of an order by the Bankruptcy Court authorizing the sale, or the first business day thereafter, unless the closing date is extended by written agreement signed by Seller and Buyer.*

*5.Re #3L, #5, #6, #8, #14, #16 and all other related paragraphs: Buyer expressly understands that no pleadings shall be filed with the Bankruptcy Court for approval of the sale contemplated in the Agreement until Buyer has removed any and all contingencies. Contingencies shall be removed no later than 4:00 p.m. prevailing Pacific Time on March 12, 2026.*

*Continued... See Next Page*

**The foregoing terms and conditions are hereby incorporated in and made a part of the paragraph(s) referred to in the document to which this TOA is attached. The undersigned acknowledge receipt of a copy of this TOA.**

Buyer/Tenant _____ Date  3/6/2026

Buyer/Tenant _____ Date  3/6/2026

Seller/Housing Provider  *Janina M. Hoskins* _____ Date  3/5/2026
*Janina M. Hoskins, Chapter 7 Trustee*

Seller/Housing Provider _____ Date _____

®2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**TOA REVISED 6/23 (PAGE 1 OF 1)**



### TEXT OVERFLOW ADDENDUM (TOA PAGE 1 OF 1)

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



**CALIFORNIA ASSOCIATION OF REALTORS®**

# TEXT OVERFLOW ADDENDUM No. ____2____
### (C.A.R. Form TOA, Revised 6/23)

This addendum is given in connection with the property known as _____ *62 Farragut Avenue #A, Piedmont, CA  94610* _____
_____ ("Property"),
in which _____ is referred to as ("Buyer/Tenant") — **Initial**
and _____ *Janina M. Hoskins, Chapter 7 Trustee* _____ is referred to as ("Seller/Housing Provider").

*6.Re #3P&R, #9 and all other related paragraphs: No personal property shall be conveyed at the close of escrow.  Seller is not in possession of any permits, warranties, codes, or any other like items and such items shall not be delivered by Buyer to Buyer. However, the fixtures identified in #3P(1) that already exist at the Property as of the Agreement shall be conveyed as part of the Property.*

— **Initial**

*7.Re #3Q, #10, and all other related paragraphs (Allocation of Costs, etc.).  Government required point of sale inspections and reports shall not be paid for by Seller (#3(Q)(5)).  Costs, if any, associated with compliance with minimum mandatory government retrofits, inspections, reports, and any other required work before or after close of escrow will not be paid by Seller.  Buyer is hereby advised to seek information from a reliable source regarding state and local mandates and whether there are point-of-sale requirements for ownership.*

*8.Re #11, #12, #15, #16, #20, the Piedmont Purchase Agreement Addendum and all other related paragraphs as they apply to Seller only:  Pursuant to California Civil Code Section 1102.2, Seller is selling and Buyer is purchasing the Property in its present "as is" condition without representations or warranties of any kind.  Buyer is not relying on Seller or Seller's agents as to the condition or safety of the Property and/or any improvements thereon, including but not limited to electrical, plumbing, heating, sewer, roof, air conditioning, foundations, soils and geology, lot size, boundary locations, or suitability of the Property and/or its improvements for any particular purpose, or that any components of the Property are in working order, or that improvements are structurally sound and/or in compliance with any city, county, state, and/or federal statutes, codes, or ordinances.  Seller will not be obligated to make any changes, alterations, or repairs to the Property.  Any reports or corrective work required by the Buyer shall be the sole responsibility of the Buyer.  The closing of the transaction shall constitute acknowledgment by Buyer that the premises are accepted without representation or warranty of any kind and in their present "as is" condition based solely on Buyer's own inspections and investigations.   Seller does not warrant existing structures as to habitability or suitability for occupancy.  Buyer assumes responsibility to check with the appropriate planning authority(ies) regarding Buyer's intended use of the Property, necessary permits to complete construction, and all other code and compliance issues and agrees to holder Seller and Seller's agents harmless as to Buyer's intended use.*

*9.Re #18 and all other related paragraphs: this provision is hereby deleted in its entirety.  All compensation payable under this Agreement, regardless of commissions presented in any Multiple Listing Service or otherwise, are subject to approval by Continued... See Next Page*

**The foregoing terms and conditions are hereby incorporated in and made a part of the paragraph(s) referred to in the document to which this TOA is attached. The undersigned acknowledge receipt of a copy of this TOA.**

Buyer/Tenant _____ Date ____3/6/2026____

Buyer/Tenant _____ Date ____3/6/2026____

Seller/Housing Provider __*Janina M. Hoskins*__ Date ____3/5/2026____
*Janina M. Hoskins, Chapter 7 Trustee*

Seller/Housing Provider _____ Date _____

®2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**TOA REVISED 6/23 (PAGE 1 OF 1)**

## TEXT OVERFLOW ADDENDUM (TOA PAGE 1 OF 1)

Sotheby's International Realty, 117 Greenwich St. San Francisco CA 94111                Phone: (415) 601-3353        Fax:                                62A Farragut
Anne Herrera                        Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Case: 24-10714   Doc# 246-1 Filed: 04/09/26 Entered: 04/09/26 18:04:03 Page 85 of 88

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



**CALIFORNIA ASSOCIATION OF REALTORS®**

## TEXT OVERFLOW ADDENDUM No. _____3_____
### (C.A.R. Form TOA, Revised 6/23)

This addendum is given in connection with the property known as _____*62 Farragut Avenue #A, Piedmont, CA 94610*_____ ("Property"),

in which _____ is referred to as ("Buyer/Tenant")

and _____*Janina M. Hoskins, Chapter 7 Trustee*_____ is referred to as ("Seller/Housing Provider").

*the Bankruptcy Court.*

*10. Re #30, #31 (Mediation and Arbitration of Disputes) and all other related paragraphs: these provisions are deleted in their entirety. Jurisdiction over any dispute regarding this Agreement shall be vested exclusively in the Bankruptcy Court for the Bankruptcy Estate.*

*11. Sale is subject to overbidding: Final overbidding terms (date and time) will be provided to Buyer and potentially interested overbidders once Buyer's contingency is removed and a hearing date is obtained.*

*a. To be a qualified overbidder, overbidder must agree to same or better terms of existing sale contract (i.e. the Agreement, including accepted counteroffers or other addenda) and waive all contingencies. Overbidder must provide a deposit of $240,000 via cashier's check or other good funds, to be delivered to counsel for the Seller, Jennifer C. Hayes, Finestone Hayes LLP, 456 Montgomery Street, Suite 1300, San Francisco, CA 94104 or to Seller's realtors. Overbidders must provide proof of funds and financial ability to complete the transaction, which shall be evaluated and determined by Seller in her sole and absolute discretion.*

*b. Open outcry auction to be set once the contingencies are removed and Seller has obtained a hearing date for Bankruptcy Court approval of the sale.*

*c. Auction format will be remote via telephone, conference call, Zoom, Microsoft Teams, or the like.*

*d. Minimum initial overbid of $8,000,000.*

*e. Minimum overbid increments of $50,000.*

*RIGHT TO ACCEPT OTHER OFFERS: Pursuant to paragraph 11 above, Seller reserves the right to accept any other offers. Acceptance of shall not be effective until a copy of this Counteroffer, dated and signed by Buyer, is received by Seller, by her agents (together, the "Agents") Alexis Thompson of Village Associates, or Anne Herrera of Sotheby's International Realty.*

*OTHER TERMS: All other terms to remain the same.*

The foregoing terms and conditions are hereby incorporated in and made a part of the paragraph(s) referred to in the document to which this TOA is attached. The undersigned acknowledge receipt of a copy of this TOA.

Buyer/Tenant _____ Date __3/6/2026__

Buyer/Tenant _____ Date __3/6/2026__

Seller/Housing Provider __*Janina M. Hoskins*__ Date __3/5/2026__
*Janina M. Hoskins, Chapter 7 Trustee*

Seller/Housing Provider _____ Date _____

®2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

TOA REVISED 6/23 (PAGE 1 OF 1)



### TEXT OVERFLOW ADDENDUM (TOA PAGE 1 OF 1)

Sotheby's International Realty, 117 Greenwich St. San Francisco CA 94111    Phone: (415) 601-3353    Fax:    62A Farragut
Anne Herrera    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

Case: 24-10714    Doc# 246-1 Filed: 04/09/26 Entered: 04/09/26 18:46:03 Page 86 of 88

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7

Docusign Envelope ID: 156EE765-AD51-400B-B115-A6EEB6E87468

**CALIFORNIA ASSOCIATION OF REALTORS®**

**BUYER CONTINGENCY REMOVAL No.** *Two* **COMPASS**
(C.A.R. Form CR-B, Revised 6/24)

In accordance with the terms and conditions of the Purchase Agreement, OR ☐ Request For Repair (C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R. Form RRRR), ☐ Other _____
dated _03/04/2026_, ("Agreement"),
on property known as _____ *62 Farragut Avenue, #A, Piedmont, CA  94610* _____ ("Property"),
between _____ ("Buyer")
and _____ *Janina M. Hoskins, Chapter / Trustee* _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **BUYER REMOVAL OF BUYER CONTINGENCIES:** With respect to any contingency and cancellation right that Buyer removes, unless Otherwise Agreed in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and, expense, **if any**, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2. **Buyer removes ONLY the following individually checked Buyer contingencies:** (Paragraph numbers refer to C.A.R. Form RPA. Applicable paragraph numbers may be different for different forms.)
   A. ☐ Loan **(Paragraph 3L(1)** and **8A)**
   B. ☐ Appraisal **(Paragraph 3L(2)** and **8B)**
   C. Investigation of Property **(Paragraph 3L(3), 8C,** and **12)**
      (1) ☐ Entire Buyer's Investigation Contingency **(Paragraph 12)**
      OR (2) ☐ Only the part of the Investigation related to inspections concerning physical attributes of the Property **(Paragraph 12B(1))**
      OR (3) ☐ All Buyer Investigations other than the physical attributes **(Paragraph 12B(2))**
      OR (4) ☐ Entire Buyer's Investigation Contingency, EXCEPT: ☐ Other: _____
   D. ☐ Insurance **(paragraph 3L(4)** and **8D)**
   E. Review of Seller Documents:
      (1) ☐ Review of All Seller Documents **(Paragraph 3L(5), 8E, 9B(6), 10A,** and **11)**
      OR (2) ☐ Review of All Seller Documents, EXCEPT:
         ☐ Government Reports **(Paragraph 10A)**;
         ☐ Statutory and other Disclosures **(Paragraph 11)**;
         ☐ Other: _____
   F. ☐ Preliminary ("Title") Report **(Paragraph 3L(6), 8F,** and **13)**
   G. ☐ Common Interest (HOA or OA) Disclosures **(Paragraph 3L(7), 8G** and **11L)**
   H. ☐ Review of leased or liened items **(Paragraph 3L(8), 8H,** and **9B(6))**
   I. Sale of Buyer's Property **(Paragraph 3L(9)** and **8K)**
      ☐ Entering into contract for Buyer's Property     ☐ Close of Escrow on Buyer's Property
   J. ☐ Other: _____
OR 3. ☐ **ALL Buyer contingencies are removed, EXCEPT:**
   ☐ Loan Contingency **(Paragraph 3L(1)** and **8A)**;
   ☐ Appraisal Contingency **(Paragraph 3L(2)** and **8B)**;
   ☐ Insurance **(Paragraph 3L(4)** and **8D)**
   ☐ Contingency for the Close of Buyer's Property **(Paragraph 3L(9)** and **8K)**;
   ☐ Condominium/Planned Development (HOA) Disclosures **(Paragraph 3L(7), 8G** and **11L)**;
   ☐ Other: _____
OR 4. ☒ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**
5. Once all contingencies are removed, whether or not Buyer has satisfied themselves regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

   NOTE: If this form is attached to a Request for Repairs (C.A.R. Form RR), Seller Response and Buyer Reply to Request for Repairs (C.A.R. Form RRRR), or another form or document such as an addendum (C.A.R. Form ADM) or Amendment to Existing Agreement (C.A.R. Form AEA) it is only valid if Buyer and Seller agree to the requests made on that form or document.

**Buyer** ░░░░░░░░░░░░░ ░░░░░░░░ Date 3/9/2026
**Buyer** ░░░░░░░░░░░░░ ░░░░░░░░ Date 3/9/2026
░░░ 9AF-29529J2BEDAAC...

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**CR-B REVISED 6/24 (PAGE 1 OF 1)**

**BUYER CONTINGENCY REMOVAL (CR-B PAGE 1 OF 1)**

Compass – San Francisco – Beach Street, 891 Beach Street San Francisco CA 94109                Phone: (415) 660-9955          Fax:                    Elisa Pandolfi & Sarah Abel                                Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Docusign Envelope ID: 48D10D1D-C3CA-8C6B-82A8-735701AF61C7



**CALIFORNIA ASSOCIATION OF REALTORS®**

# ADDENDUM No. _2_
### (C.A.R. Form ADM, Revised 6/25)



**Sotheby's INTERNATIONAL REALTY**

The following terms and conditions are hereby incorporated in and made a part of the Purchase agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Other _____,
dated _____ *April 3, 2026* _____ , on property known as _____ *62 Farragut Avenue #A* _____
_____ *Piedmont, CA 94610* _____ ("Property/Premises"),
between _____ *Melissa Irene Severini, Kevin David Clark* _____ ("Buyer/Tenant")
and _____ *Janina M. Hoskins, Chapter 7 Trustee* _____ ("Seller/Housing Provider").
The term "Housing Provider" also includes Landlord or Rental Property Owner. Buyer/Tenant and Seller/Housing Provider are referred to as the "Parties."

**FORM USE NOTES: This form is intended to be used in Buyer-Seller or Tenant-Housing Provider transactions. For all other situations requiring an addendum, use an Addendum - Generic (C.A.R. form ADM-GEN).**

- A change or addition to a previously provided Seller Property Questionnaire (SPQ), Real Estate Transfer Disclosure Statement (TDS), or other disclosure, may be made on an Amendment to Prior Disclosure (C.A.R. Form APD), and it may give the Buyer a right to rescind.
- To change the terms of already executed agreement, use the Amendment to Existing Agreement (C.A.R. form AEA).

*1) Purchase price is $8,400,000 (eight million four hundred thousand dollars).*
*2) $12,000 (twelve thousand dollars) as an increased 3% deposit will be wired or delivered to escrow by April 10.*
*3) All other terms remain the same.*

**By signing below, Buyer and Seller acknowledge that each has received a copy of this Addendum, and each has read, understands, and agrees to its terms.**

Buyer/Tenant *Melissa Irene Severini*    *Melissa Irene Severini* Date 4/8/2026
CDD836A7897F4...
Buyer/Tenant *Kevin David Clark*    *Kevin David Clark* Date 4/8/2026
096A4CB68438466...
Seller/Housing Provider *Janina M. Hoskins*    *Janina M. Hoskins, Chapter 7 Trustee* Date 4/9/2026
52EE384D7932455...
Seller/Housing Provider _____ Date _____

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*
**ADM REVISED 6/25 (PAGE 1 OF 1)**


EQUAL HOUSING OPPORTUNITY

### ADDENDUM (ADM PAGE 1 OF 1)